**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**EMERGENCY MOTION OF THE DEBTORS**
**FOR ENTRY OF EMERGENCY, INTERIM, AND FINAL ORDERS**
**(I) ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING**
**RESTRICTIONS ON CERTAIN TRANSFERS OF AND DECLARATIONS**
**OF WORTHLESSNESS WITH RESPECT TO INTERESTS IN THE**
**DEBTORS AS OF THE PETITION DATE; (II) DIRECTING THAT**
**ANY VIOLATIONS OF THE PROCEDURES ARE VOID *AB INITIO*;**
**(III) SCHEDULING A FINAL HEARING TO CONSIDER APPROVAL**
**OF THE MOTION ON A FINAL BASIS; AND (IV) GRANTING RELATED RELIEF**

Impac Mortgage Holdings, Inc. ("Impac") and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors"), under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"),[2] in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of orders (substantially in the form attached hereto as **Exhibit A** on an emergency basis (the "Emergency Order"), in the further proposed form attached hereto as **Exhibit B** on an interim basis (the "Interim Order"), and in the further proposed form attached hereto as **Exhibit C** on a final basis (the "Final Order," and together with the Emergency Order and the Interim Order, the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Unless otherwise specified herein, all references to "§" or "section" herein are to sections of the Bankruptcy Code. All references to the "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to the "Local Rules" are to provisions of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

"Orders")):   (i) establishing certain notification and hearing procedures (the "Procedures") to protect the potential value of the Debtors' consolidated net operating loss carryforwards ("NOLs") and certain other tax attributes for federal and state tax purposes (collectively, the "Tax Attributes") and approving restrictions on certain transfers of and/or declarations of worthlessness with respect to interests in the Debtors, including direct and indirect ownership of the Common Stock (as defined below) and any Options (within the meaning of applicable Treasury Regulations and as defined below) to acquire such stock, as of the Petition Date (defined below); (ii) directing that any purchase, sale, or other transfer of, or declaration of worthlessness with respect to, Common Stock in violation of the Procedures shall be null and void *ab initio*; (iii) scheduling an emergency hearing (to the extent necessary), an interim hearing, and a final hearing within thirty (30) days of the commencement of these Chapter 11 Cases to consider approval of the Motion on a final basis; and (iv) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors possess certain Tax Attributes, including estimated federal NOLs of at least $850 million and California NOLs of at least $600 million, as of December 31, 2025, based on the Debtors' audited financial statements, which estimates remain substantially similar as of the Petition Date.  Separately, the Debtors have filed the *Motion of Debtors for Entry of an Order (I) Approving the Debtors' Assumption of the Restructuring Support Agreement, (II) Authorizing the Debtors to Perform their Obligations Thereunder, and (III) Granting Related Relief* (the "RSA Motion"), seeking approval of the Debtors' prepetition Restructuring Support Agreement (the "RSA"), among the Debtors and the Debtors' key borrowed-money stakeholders.[3]  Pursuant to the RSA, it is a condition-precedent to the Plan Sponsor's obligations under the RSA that the Debtors preserve the Tax Attributes as required in Section 7.01(b) of the RSA.  The RSA Parties have already agreed not to take any actions that would impair the value of the NOLs.  *See* RSA §§ 5.01

---

[3] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the RSA.

and 7.01. The Debtors file this Motion so that other stakeholders who are not parties to the RSA likewise do not take actions that would jeopardize this significant asset. Therefore, the Tax Attributes are valuable assets of the Debtors' estates and form an essential foundation of the Debtors' chapter 11 plan (the "Plan"), which maximizes value for all stakeholders. Specifically, the Debtors' going-forward business plan depends in part on the preservation of, and ability to utilize, the Tax Attributes. Given the Debtors' modest market capitalization of approximately $2.9 million, as compared to at least $850 million in federal NOLs and at least $600 million in California NOLs, the risk of loss or impairment of these Tax Attributes is real. As discussed below, the Debtors' Tax Attributes may become subject to significant limitation if an "ownership change" occurs. By this Motion, the Debtors seek to implement certain Procedures and restrictions to minimize the risk that an "ownership change" occurs before the conclusion of these Chapter 11 Cases, which would irreparably harm the value of the Debtors' estates.

## I.      JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief requested herein are: §§ 105, 362, and 541, Bankruptcy Rules 3002 and 9014, and Local Rules 2002-2 and 9013-1(m).

## II.     BACKGROUND

### A.      The Chapter 11 Cases

5.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108.

6.      No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

7.      Additional information regarding the Debtors, including their business and the events leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed concurrently herewith.

**B.      The Debtors' Tax Attributes**

8.      As noted above, the Debtors possess certain Tax Attributes, including estimated federal NOLs of at least $850 million and California NOLs of at least $600 million, as of December 31, 2025, based on the Debtors' audited financial statements, which estimates remain substantially similar as of the Petition Date.  The Tax Attributes are valuable assets of the Debtors' estates, and their preservation is vital to the Plan.  Put simply, this Motion seeks to help preserve the Debtors' ability to obtain the benefit of qualifying for the L5 Exception (as defined below).  If the Debtors are unable to preserve the potential benefit of the L5 Exception (as further described below), the Debtors would lose one of their most valuable assets, an asset on which the Plan is premised and the RSA is conditioned.

9.      A company generates NOLs if the operating expenses it has incurred exceed the revenues it has earned in a single tax year.  The Internal Revenue Code of 1986, as amended (the "Tax Code"), generally permits a corporation to carry forward (to the extent not carried back) its NOLs and tax credits to reduce future taxable income and/or associated future tax liability.  *See, e.g.*, 26 U.S.C. § 172.  Accordingly, absent any intervening limitations, the Tax Attributes may be valuable assets insofar as they could substantially reduce the Debtors' or any successor purchaser's U.S. federal and/or state income tax liability for current and future periods, including during the pendency of these Chapter 11 Cases and in connection with the implementation of the Plan.  The

Tax Attributes are available to reduce the Debtors' or any successor purchaser's federal and/or state income tax liability through the taxable year that includes the effective date of a chapter 11 plan and potentially thereafter. The Tax Attributes, therefore, could translate into future tax savings that enhance the value of the Debtors' estates for the benefit of the stakeholders who have executed the RSA and other parties in interest who will receive payments under the Plan.

10.     The Debtors' ability to utilize the Tax Attributes to reduce future tax liability is subject to certain potential statutory limitations. Sections 382 and 383 of the Tax Code limit a corporation's ability to utilize its NOLs, tax credits, and certain other tax benefits to offset future income or tax liability once that corporation has undergone an "ownership change" within the meaning of § 382 of the Tax Code (an "Ownership Change").

11.     Pursuant to § 382 of the Tax Code, an Ownership Change generally occurs when the percentage of a corporation's equity held by one or more of its "5-percent shareholders" (each, as that term is used in § 382 of the Tax Code, a "5-Percent Shareholder") increases by more than fifty (50) percentage points above the lowest percentage of the corporation's equity owned by such shareholder(s) at any time during the relevant testing period (usually three (3) years). *See* 26 U.S.C. § 382(g). Another way an Ownership Change can occur is if a "50% shareholder" claims a worthless stock deduction under section 165 of the Tax Code, since the party claiming the deduction is treated for tax purposes as having transferred the worthless stock to a new shareholder. *See* § 382(g)(4)(D). If an Ownership Change occurs, section 382 of the Tax Code limits the amount of a corporation's future income that may be offset by its "pre-change losses" to an annual amount equal to the fair market value of all of the stock of the corporation prior to the Ownership Change multiplied by the long-term tax-exempt rate that applies to the month of the Ownership Change.

12.     The Debtors do not believe that the Debtors have undergone an Ownership Change as of the Petition Date. Accordingly, the Debtors submit that they continue to have significant Tax Attributes that would be adversely affected by the occurrence of an Ownership Change during the pendency of these Chapter 11 Cases. If such an Ownership Change were to occur, the availability

5

and value of such Tax Attributes would be severely impacted. Therefore, it is in the best interests of the Debtors and their stakeholders to restrict the transfer of Beneficial Ownership (defined below) of Common Stock that could result in an Ownership Change occurring *on or before* the effective date of a chapter 11 plan. Such a restriction would protect the Debtors' or any successor purchaser's ability to use the Tax Attributes during the pendency of these Chapter 11 Cases and thereafter.

13. As set forth in the RSA, the Plan contemplates, among other things, the distribution of newly issued stock representing 100% ownership of the Reorganized Debtors to the Debtors' prepetition secured lender and the Plan Sponsor in respect of its Claims. Even though such issuance would otherwise result in an Ownership Change, the Plan is intended to qualify for the special relief afforded by § 382(l)(5) of the Tax Code (the "L5 Exception"). Under the L5 Exception, the general restrictions on the use of NOLs and other Tax Attributes do not apply to ownership changes that occur pursuant to a confirmed chapter 11 plan or any applicable bankruptcy court order, provided that the shareholders and creditors of Impac own 50% or more of the transferee corporation. Such relief, however, may become effectively unavailable to the Debtors if the Debtors undergo an Ownership Change prior to the effective date of the Plan.

14. This Motion helps preserve the Debtors' ability to qualify for the L5 Exception. If an Ownership Change were to occur prior to the effective date of the Plan, § 382 of the Tax Code could significantly limit the tax savings that the reorganized Debtors would otherwise be able to realize from the Tax Attributes. *See* 26 U.S.C. § 382(b). The Debtors accordingly propose the following Procedures to monitor and limit trading in the Debtors' equity, preserve the potential value of the L5 Exception, and satisfy the condition of the RSA to consummate the Plan.

### III.   PROCEDURES

15. By establishing Procedures for monitoring the transfer of any direct or indirect interest in Common Stock (including Options to acquire Beneficial Ownership (defined below) of Common Stock) on or after the Petition Date, the Debtors can preserve their ability to seek the necessary relief if it appears that any such transfer(s) may jeopardize the Debtors' ability to utilize

their Tax Attributes by triggering an Ownership Change.  Therefore, the Debtors propose the following Procedures:[4]

### A.   Common Stock Restrictions.

i.   Definitions.  For purposes of these Procedures (including, for the avoidance of doubt, with respect to any acquisition, disposition, trading in, transfer of, or declaration of worthlessness), the following terms have the following meanings:

1.   "Common Stock" shall mean any common stock issued by Impac.

2.   "Option" shall mean any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent, subject to vesting, or otherwise not currently exercisable.

3.   "Beneficial Ownership" of Common Stock and Options to acquire Common Stock shall be determined in accordance with the applicable rules of §§ 382 and 383 of the Tax Code, the regulations promulgated by the U.S. Department of the Treasury under the Tax Code (the "Treasury Regulations"), rulings issued by the Internal Revenue Service (the "IRS"), and the rules described herein, and shall include, without limitation, (A) direct, indirect, and constructive ownership, determined without regard to any rule that treats stock of an entity to which the constructive ownership rules apply as no longer owned by that entity (e.g., a holding company would be considered to Beneficially Own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members, (C) ownership by any group of persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition of stock, and (D) ownership of an Option to acquire Beneficial Ownership of Common Stock.

4.   "Entity" shall mean any "entity" as such term is defined in Treasury Regulations § 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition of stock.

---

[4] The Procedures delineated herein summarize the relevant portion of **Exhibit 1** to the Orders, which sets forth the Procedures.

5.       "Substantial Stockholder" shall mean any Entity or person that Beneficially Owns, or has Options to acquire, Common Stock which, in combination, and assuming full exercise thereof, would total at least 1,645,000 shares of Common Stock (representing approximately 4.5% of all issued and outstanding shares of Common Stock as of December 31, 2025).

6.       "50-Percent Shareholder" shall mean any person or entity that, at any time since December 31, 2025, has owned Beneficial Ownership of fifty percent (50%) or more of the Common Stock, as determined in accordance with § 382(g)(4)(D) of the Tax Code and the applicable Treasury Regulations thereunder.

ii.       Notice of Substantial Ownership.  Any person or Entity that Beneficially Owns, at any time on or after the Petition Date, Common Stock or Options in an amount sufficient to qualify such person or Entity as a Substantial Stockholder shall file with this Court and serve upon:  (i) the Debtors; (ii) proposed counsel for the Debtors; (iii) counsel for any statutory committee of unsecured creditors appointed in these Chapter 11 Cases; and (iv) counsel for the Debtors' prepetition and postpetition secured lenders (collectively, the "Disclosure Parties"), a notice of such person's or Entity's substantial ownership (a "Substantial Stock Ownership Notice"), in substantially the form attached to the Orders as **Exhibit 2**, which describes specifically and in detail such person's or Entity's Beneficial Ownership of Common Stock and Options, on or before the date that is the later of (x) ten (10) calendar days after entry of the order granting the requested relief or (y) ten (10) calendar days after such person or Entity qualifies as a Substantial Stockholder.  At the election of the Substantial Stockholder, the Substantial Stock Ownership Notice to be filed with this Court (but not the Substantial Stock Ownership Notice served upon the Disclosure Parties) may be redacted to exclude the Substantial Stockholder's taxpayer identification number and the amount of Common Stock and Options that the Substantial Stockholder Beneficially Owns.

iii.       Acquisition of Common Stock.  At least fourteen (14) calendar days prior to the proposed date of any transfer in Beneficial Ownership of Common Stock (whether direct or

8

indirect, and including the grant or other acquisition of Options to acquire Beneficial Ownership of Common Stock) or exercise of any Option to acquire Beneficial Ownership of Common Stock that would result in an increase in the amount of Common Stock Beneficially Owned by any person or Entity that currently is or, as a result of the proposed transaction, would be a Substantial Stockholder (a "Proposed Acquisition Transaction"), such person, Entity, or Substantial Stockholder (a "Proposed Transferee") shall file with this Court and serve upon the Disclosure Parties a notice of such Proposed Transferee's intent to purchase, acquire, or otherwise accumulate such Beneficial Ownership (an "Acquisition Notice"), in substantially the form attached to the Orders as **Exhibit 3**, which describes specifically and in detail the Proposed Acquisition Transaction. At the election of the Proposed Transferee, the Acquisition Notice filed with this Court (but not the Acquisition Notice served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferee's taxpayer identification number and the amount of Common Stock and Options that the Proposed Transferee Beneficially Owns.

iv. Disposition of Common Stock. At least fourteen (14) calendar days prior to the proposed date of any transfer or other disposition in Beneficial Ownership of Common Stock (whether direct or indirect, and including Options to acquire Beneficial Ownership of Common Stock) that would result in either a decrease in the amount of Common Stock Beneficially Owned by a Substantial Stockholder or a person or Entity ceasing to be a Substantial Stockholder (a "Proposed Disposition Transaction"), such person, Entity, or Substantial Stockholder (a "Proposed Transferor") shall file with this Court and serve upon the Disclosure Parties a notice of such Proposed Transferor's intent to sell, trade, or otherwise transfer such Beneficial Ownership (a "Disposition Notice"), in substantially the form attached to the Orders as **Exhibit 4**, which describes specifically and in detail the Proposed Disposition Transaction. At the election of the Proposed Transferor, the Disposition Notice filed with this Court (but not the Disposition Notice served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferor's taxpayer identification number and the amount of Common Stock and Options that the Proposed Transferor Beneficially Owns.

v.          Notice of Worthlessness of Common Stock.  Any person or entity that currently is or becomes a 50-Percent Shareholder shall file with this Court and serve upon the Disclosure Parties a notice of such status (each, a "Notice of Status as a 50-Percent Shareholder"), in substantially the form attached to the Orders as **Exhibit 5**, on or before the later of (i) ten (10) calendar days after the date of the Notice of Emergency Order and (ii) ten (10) calendar days after becoming a 50-Percent Shareholder; *provided that*, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Shareholder even if no Notice of Status as a 50-Percent Shareholder has been filed.  Additionally, prior to filing any federal or state tax return, or any amendment thereto, or taking any other action that claims any deduction for worthlessness (a "Proposed Worthless Stock Deduction," and, together with a Proposed Acquisition Transaction and a Proposed Disposition Transaction, a "Proposed Transaction") of Beneficial Ownership of Common Stock for a taxable year ending before the Debtors' emergence from chapter 11 protection, such 50-Percent Shareholder must file with the Bankruptcy Court and serve upon the Disclosure Parties a notice of intent to claim a Proposed Worthless Stock Deduction (a "Notice of Intent to Claim a Worthless Stock Deduction" and, together with an Acquisition Notice and a Disposition Notice, a "Trading Notice"), in substantially the form attached to the Orders as **Exhibit 6**.

B.          **Objection Procedures**.  The Debtors, in consultation with the Disclosure Parties, shall have ten (10) calendar days after the filing of a Trading Notice (the "Objection Period") to file with this Court and serve on a Proposed Transferee, a Proposed Transferor, or a 50-Percent Shareholder, as the case may be, an objection (each, an "Objection") to any Proposed Transaction described in such Trading Notice.  If the Debtors file an Objection by the expiration of the Objection Period (the "Objection Deadline"), then the applicable Proposed Transaction shall not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not file an Objection by the Objection Deadline or if the Debtors provide written authorization to the Proposed Transferee, the Proposed Transferor, or the 50-Percent Shareholder, as the case may be, approving the Proposed Transaction prior to the Objection Deadline, then such Proposed

10

Transaction may proceed solely as specifically described in the applicable Trading Notice.  Any further Proposed Transaction must be the subject of an additional Trading Notice and Objection Period.

           **C.**      **Notice Procedures.**  As soon as reasonably practicable following entry of the Emergency Order, the Debtors shall serve, or cause to be served, notice by first class mail, substantially in the form attached to the Emergency Order as **Exhibit 7** (the "Notice of Emergency Order"), on: (a) the Office of the United States Trustee; (b) counsel for the Debtors' prepetition and postpetition secured lenders; (c) the Debtors' thirty largest unsecured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the United States Attorney's Office for the District of Delaware; (g) any party that is entitled to notice pursuant to Local Rule 9013-1(m); (h) the transfer agent for the Common Stock; (i) each person or entity that has filed a Schedule 13D or Schedule 13G in respect of such holder's ownership of Common Stock since December 31, 2025; (j) any Substantial Stockholder; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 or Local Rule 2002-1(b); and (l) the registered and nominee holders of Common Stock (served down to the beneficial owners of Common Stock) as of the Petition Date (collectively, the "Notice Parties").

No later than two (2) business days following entry of the Interim Order or the Final Order, as applicable, the Debtors shall (i) serve a notice by first class mail, substantially in the form attached to the applicable Order as **Exhibit 7** (the "Notice of Interim Order" or the "Notice of Final Order," as applicable), on the Notice Parties, (ii) publish such notice once in the national edition of *The Wall Street Journal*, and (iii) post the Procedures to the website established by Kurtzman Carson Consultants LLC, dba Verita Global for these Chapter 11 Cases.

All registered and nominee holders of Common Stock shall be required to serve the Notice of Emergency Order, the Notice of Interim Order, or the Notice of Final Order, as applicable, on any holder for whose benefit such registered or nominee holder holds such Common Stock, down the chain of ownership for all such holders of Common Stock.  Any entity or individual, or any

broker or agent acting on such entity's or individual's behalf, that sells Common Stock to another entity or individual shall be required to serve a copy of the Notice of Emergency Order, the Notice of Interim Order, or the Notice of Final Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

**D.     Noncompliance with the Procedures**.   Any acquisition, disposition, trading, or transfer of, or declaration of worthlessness with respect to, Beneficial Ownership of Common Stock (whether direct or indirect, and including Options to acquire Beneficial Ownership of Common Stock) in violation of the Procedures shall be null and void *ab initio* as an act in violation of the automatic stay under § 362 and pursuant to the Bankruptcy Court's equitable powers under § 105(a).  Furthermore, any person or Entity that acquires, disposes of, trades in, or claims worthlessness deductions with respect to Beneficial Ownership of Common Stock (whether direct or indirect, and including Options to acquire Beneficial Ownership of Common Stock) in violation of the Procedures may be subject to sanctions as provided by law, including damages resulting from the violation of the automatic stay.

**E.     Debtors' Right to Waive**.   The Debtors may, in consultation with the Disclosure Parties, waive, in writing, any and all restrictions, stays, and notification requirements contained in the Procedures in the event of a potential adverse impact on the Tax Attributes.

## IV.     RELIEF REQUESTED

16.     The Debtors seek authority to (i) establish certain notification and hearing Procedures to protect the value of the Debtors' Tax Attributes and approve restrictions on certain transfers of and/or declarations of worthlessness with respect to interests in the Debtors, including direct and indirect ownership of the Common Stock and any Options (within the meaning of applicable Treasury Regulations, as defined in the Motion) to acquire such stock, as of the Petition Date; (ii) direct that any purchase, sale, or other transfer of, or declaration of worthlessness with respect to Common Stock in violation of the Procedures shall be null and void *ab initio*; (iii) schedule an emergency hearing (to the extent necessary), an interim hearing, and a final hearing

within thirty (30) days of the commencement of these Chapter 11 Cases to consider approval of the Motion on a final basis; and (iv) obtain additional related relief.

## V.   BASIS FOR RELIEF

### A.   *The Automatic Stay Bars Any Equity Transfer That Would Diminish or Limit the Debtors' Interests in the Tax Attributes.*

17.   In furtherance of the automatic stay provisions of § 362 and pursuant to § 105, the Debtors seek authority to monitor and approve (or disapprove) certain changes in the Beneficial Ownership of Common Stock to protect against the occurrence of an Ownership Change during the pendency of these Chapter 11 Cases, and thereby preserve the value of the Tax Attributes.

18.   Section 362 enjoins all entities from, among other things, taking any action to obtain possession of property of or from the estate or to exercise control over property of the estate. Section 541 defines "property of the estate" to include all legal or equitable interests of a debtor in property as of the commencement date of a Chapter 11 Case, including tax benefits.

19.   The Tax Attributes are valuable property of the Debtors' estates and thus are protected, by operation of the automatic stay, from actions that would diminish or eliminate their value, including direct or indirect transfers that would result in an Ownership Change.  It is well established that a debtor's Tax Attributes are property of the debtor's estate protected by the automatic stay.  *See Gibson v. United States* (*In re Russell*), 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate); *Nisselson v. Drew Indus., Inc.* (*In re White Metal Rolling & Stamping Corp.*), 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."); *In re Grossman's Inc.*, No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997); *cf. In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Official Comm. of Unsecured Creditors v. PSS S.S. Co.* (*In re Prudential Lines Inc.*), 928 F.2d 565, 572 (2d Cir. 1991) (alteration in original)).  The United States Court of Appeals for the Second

13

Circuit, in its seminal decision, *In re Prudential Lines Inc.*, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its NOLs under the special relief provisions of § 382 of the Tax Code. *See* 928 F.2d at 573. As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [a debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* (quoting H.R. Rep. No. 95-595, at 176 (1978)) (citations omitted); *see also id.* at 574 ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay.").

20. In addition to finding that a debtor's NOLs are protected by the automatic stay, the Second Circuit also held that, pursuant to its equitable powers under § 105(a), a bankruptcy court may issue a permanent injunction to protect such Tax Attributes. *Prudential Lines*, 928 F.2d at 574.

21. In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the bankruptcy court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock that could have had an adverse effect on their ability to utilize their NOLs, even though the debtors' stockholders had not stated any intent to sell their stock and the debtors had not shown that a sale that would trigger an Ownership Change was pending. *See id.* at 927. Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while [the] debtors move forward toward reorganization." *Id.* (emphasis added).

14

22.     The bankruptcy court in *Phar-Mor* also concluded that, because the debtors were seeking to enforce the automatic stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits.  The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

23.     Restrictions on equity trading and declarations of worthlessness to protect a debtor against the possible loss of valuable tax attributes are regularly approved by this and other courts. *See*, *e.g.*, *In re Carestream Health, Inc.,* No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (interim order establishing notification and hearing procedures related to certain stock transfers and declarations of worthlessness); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (final order establishing notification and hearing procedures related to certain stock transfers and declarations of worthlessness); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re RentPath Holdings, Inc.*, No. 20-10312 (ECF No. 79) (Bankr. D. Del. Feb. 13, 2020) (approving notification procedures and restrictions on certain transfers of interests in and claims against, and claiming a worthless stock deduction with respect to, the debtors); *In re Checkout Holdings Corp.*, No. 18-12794 (ECF No. 205) (Bankr. D. Del. Jan. 10, 2019) (approving notification procedures and restrictions on certain transfers of equity interests in, and claiming a worthless stock deduction with respect to, the debtors); *In re Claire's Stores, Inc.*, No. 18-10584 (ECF No. 284) (Bankr. D. Del. Apr. 17, 2018) (same); *In re NewPage Corp.*, No. 11-12804 (KG) (ECF No. 307) (Bankr. D. Del. Oct. 4, 2011) (approving notification procedures and restrictions on certain transfers of equity interests in and claims against, and claiming a worthless stock deduction with respect to, the debtors); *In re Metrocall, Inc.*, No. 02-11579 (ECF No. 290) (Bankr. D. Del. July 8, 2002) (approving procedures by which the debtor

15

would object to proposed transfers of stock that would result in a transferee holding five percent or more of the debtor's stock or a reduction in the ownership interest of an existing five-percent shareholder); *In re Reliance Acceptance Grp. Inc.*, No. 98-288 (PJW) (ECF No. 270) (Bankr. D. Del. Apr. 28, 1998) (providing debtor with thirty days' notice to object to proposed transfers that would result in a transferee holding five percent or more of debtor's common stock); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (ECF No. 240) (Bankr. S.D.N.Y. June 3, 2016) (approving notification procedures and restrictions on certain transfers of equity interests in and claims against the debtors); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (ECF No. 253) (Bankr. S.D.N.Y. May 12, 2016) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re The Great Atl. & Pac. Tea Co.*, No. 15-23007 (RDD) (ECF No. 501) (Bankr. S.D.N.Y. Aug. 11, 2015) (approving notification procedures and restrictions on certain transfers of equity interests in and claims against the debtors); *In re AMR Corp.*, No. 11-15463 (SHL) (ECF No. 890) (Bankr. S.D.N.Y. Jan. 27, 2012) (same); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (ECF No. 1640) (Bankr. S.D.N.Y. Dec. 20, 2005) (same); *In re Nw. Airlines Corp.*, No. 05-17930 (ALG) (ECF No. 836) (Bankr. S.D.N.Y. Oct. 28, 2005) (same).[5]

24.     As the foregoing cases demonstrate, it is well settled that, pursuant to § 362(a)(3), the automatic stay enjoins actions that would adversely affect a debtor's ability to utilize its NOLs and other tax benefits.  For the reasons set forth above, the automatic stay should protect the Debtors' ability to utilize their Tax Attributes in these Chapter 11 Cases.

> **B.**     *Procedures Are Necessary and in Best Interests of Debtors, Their Estates, and Their Creditors.*

25.     The Procedures are necessary to preserve the Debtors' ability to utilize their Tax Attributes, while providing certain latitude for acquisition, disposition, trading, and declarations of worthlessness.  The Debtors' ability to preserve their Tax Attributes may be jeopardized unless the Procedures are established immediately and made effective as of the Petition Date to ensure that any acquisition, disposition, trading, or transfer of, or declaration of worthlessness with respect

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

to, Beneficial Ownership of Common Stock (including Options to acquire Beneficial Ownership of Common Stock) is either precluded or closely monitored and made subject to Court approval.

26. The Debtors' ability to utilize the Tax Attributes is a requirement of the RSA and a condition to consummate the Plan. The relief requested herein is narrowly tailored to permit certain stock acquisitions, dispositions, trading, and declarations of worthlessness to continue, subject to applicable securities, corporate, and other laws, while still allowing the Debtors to execute the Plan.

27. The Debtors respectfully submit that the Procedures must be implemented as soon as possible. Even if an acquisition, disposition, trade, or declaration of worthlessness were to be null and void under § 362 or as a result of a final order of the Court that prohibited such an acquisition, disposition, trade, or declaration of worthlessness retroactively to the Petition Date, under federal income tax law, such acquisition, disposition, trade, or declaration of worthlessness nevertheless may be regarded as having occurred for tax purposes, in which event the Debtors' estates could suffer an irrevocable loss of value. Accordingly, if an acquisition, disposition, trade, or declaration of worthlessness occurs that limits the Debtors' ability to utilize their Tax Attributes under §§ 382 and 383 of the Tax Code, the Debtors' ability to realize the value of their Tax Attributes may be permanently diminished. The relief requested, therefore, is crucial to prevent a potential irrevocable diminution of the value of the Debtors' estates and an impairment to the Plan.

28. It is in the best interests of the Debtors and their stakeholders to restrict acquisitions, dispositions, trades, or declarations of worthlessness with respect to Beneficial Ownership of Common Stock that could result in an Ownership Change before the effective date of a chapter 11 plan. This restriction would permit the Debtors to utilize the Tax Attributes, if necessary, to offset gain or other income recognized in connection with the Debtors' ownership of their assets and operation of their business. If such an Ownership Change were to occur, however, the value of the Tax Attributes for determining the annual amount that may be utilized is expected to be adversely affected and potentially effectively eliminated by the limitations of § 382 of the Tax Code.

29.     With respect to an Ownership Change that occurs *pursuant to* a confirmed chapter 11 plan or any applicable bankruptcy court order, the limitations imposed by § 382 of the Tax Code can be significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date (or otherwise outside) of a chapter 11 plan. *See*, *e.g.*, 26 U.S.C. § 382(l)(5) and (6). Pursuant to § 382(l)(5) of the Tax Code, a debtor that has not previously undergone an Ownership Change is not subject to the limitations imposed by § 382 with respect to an Ownership Change resulting from consummation of a chapter 11 plan, provided that, under such plan, certain of the debtor's creditors emerge from the reorganization owning at least fifty percent (50%) of the total value and voting power of the debtor's stock immediately after the Ownership Change. 26 U.S.C. § 382(l)(5)(A) and (E); Treasury Regulations § 1.382-9(b)(2).

30.     The Plan is intended to qualify for the L5 Exception. Transfers of stock by or into the hands of Substantial Stockholders before the effective date of the Plan could trigger an Ownership Change that would impose a severe annual limitation on the Debtors' use of their Tax Attributes, even if the Debtors later satisfied the requirements of § 382(*l*)(5) of the Tax Code in connection with a second Ownership Change resulting from a sale or from the Plan. The requested relief will help ensure that the Debtors have maximum flexibility to meet the requirements of § 382(*l*)(5) of the Tax Code, preserve their Tax Attributes to the fullest extent and thereby consummate the Plan.

31.     Accordingly, it is in the best interests of the Debtors and their estates to monitor and restrict equity trading that could result in an Ownership Change prior to consummation of the Plan.

## VI.     <u>INTERIM APPROVAL SHOULD BE GRANTED</u>

32.     The Debtors request that the Court schedule an emergency hearing (to the extent necessary), an interim hearing, and a final hearing within thirty (30) days of the commencement of these Chapter 11 Cases, and grant this Motion on an expedited basis. Granting the relief requested herein on an expedited basis will benefit the Debtors and their stakeholders by preventing the loss of the Debtors' ability to utilize the Tax Attributes pending final approval of

the Procedures, while allowing holders of direct or indirect interests in Common Stock and other parties in interest ample time to consider the Procedures.  Absent such relief, the Debtors will be irreparably harmed due to the acquisition, disposition, trade, or declaration of worthlessness with respect to Beneficial Ownership of Common Stock that may occur immediately after persons or Entities (as defined in the Procedures) receive notice of this Motion.  Persons or Entities may rush to acquire, dispose of, trade, or declare worthlessness of the Beneficial Ownership of Common Stock (including Options to acquire Beneficial Ownership of Common Stock) before the Court imposes the requested Procedures, and such acquisition, disposition, trade, or declaration of worthlessness may be regarded as occurring for tax purposes even if such acquisition, disposition, trade, or declaration of worthlessness were to be null and void under § 362 or as a result of a final order of this Court prohibiting such acquisition, disposition, trade, or declaration of worthlessness effective as of the Petition Date.  Such acquisition, disposition, trade, or declaration of worthlessness would jeopardize the Debtors' ability to utilize the Tax Attributes and would be counterproductive to the Debtors' objectives in seeking the relief requested herein.  Accordingly, the Debtors request that the Court grant the relief requested herein on an expedited basis and schedule an emergency hearing (to the extent necessary), an interim hearing, and a final hearing within thirty (30) days of the commencement of these Chapter 11 Cases to consider entry of the Emergency Order, the Interim Order, and the Final Order.

## VII.    RESERVATION OF RIGHTS

33.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action that may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under § 365.

## VIII.   COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

19

34.     The Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and (h) is appropriate.

35.     Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

36.     The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed.Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

37.     As described in the Motion and supported by the First Day Declaration, the Debtors seek to minimize the risk that an Ownership Change occurs before the conclusion of these Chapter 11 Cases, which would irreparably harm the value of the Debtors' estates.  Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

38.     The Debtors further seek a waiver of any stay of the effectiveness of the Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the Debtors submit that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtors and their

20

estates, as it is necessary in light of the critical importance of preserving the value of the Debtors' Tax Attributes, which are a potentially valuable asset of the Debtors' estates. In addition, once a Tax Attribute is limited under §§ 382 and 383 of the Tax Code, its use is permanently limited. Absent granting the relief requested herein on an interim basis at the outset of these Chapter 11 Cases, the Debtors will be irreparably harmed by any equity trading that occurs prior to the Court's entry of an order granting this Motion on a final basis. By this Motion, the Debtors seek to implement Procedures that would protect against such irreparable harm.

39.     Accordingly, the Debtors respectfully submit that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

40.     Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

### IX.     NOTICE

41.     Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtors' prepetition and postpetition secured lenders; (c) the Debtors' thirty largest unsecured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the United States Attorney's Office for the District of Delaware; (g) any party that is entitled to notice pursuant to Local Rule 9013-1(m); (h) the transfer agent for the Common Stock; (i) each person or entity that has filed a Schedule 13D or Schedule 13G in respect of such holder's ownership of Common Stock since December 31, 2025; and (j) any Substantial Stockholder. As this Motion seeks "first day" relief, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### X.     NO PRIOR REQUEST

42.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

21

## XI.    CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order:  (i) granting the relief requested herein on an emergency, interim, and final basis; (ii) scheduling an emergency hearing (to the extent necessary), an interim hearing, and a final hearing within thirty (30) days of the commencement of these Chapter 11 Cases to consider approval of the Motion on a final basis; and (iii) granting the Debtors such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: April 26, 2026<br>        Wilmington, DE | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>*/s/ Laura Davis Jones*<br>Laura Davis Jones (DE Bar No. 2436)<br>David M. Bertenthal<br>Timothy Cairns (DE Bar No. 4228)<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19899<br>Tel:    (302) 652-4100<br>Email: ljones@pszjlaw.com<br>        debertenthal@pszjlaw.com<br>        tcairns@pszjlaw.com<br><br>-and- |
| | **DENTONS US LLP**<br><br>Tania M. Moyron (*pro hac vice* pending)<br>Van C. Durrer, II (DE Bar No. 3827)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Tel:    (213) 623-9300<br>Email: tania.moyron@dentons.com<br>        van.durrer@dentons.com<br><br>John D. Beck (*pro hac vice* pending)<br>Geoffrey M. Miller (*pro hac vice* pending)<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Tel:    (212) 768-6700<br>Email: john.beck@dentons.com<br>        geoffrey.miller@dentons.com<br><br>*Proposed Counsel for Debtors and Debtors in Possession* |