**IMPORTANT: THE SOLICITATION MATERIALS ACCOMPANYING THE PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a). THE DEBTORS EXPECT TO SEEK AN ORDER OR ORDERS OF THE BANKRUPTCY COURT, AMONG OTHER THINGS: (1) APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b); AND (2) CONFIRMING THE PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1129.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | ) Case No. 26-10593 |
| | ) |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF IMPAC MORTGAGE HOLDINGS, INC. AND AFFILIATES THEREOF

<div style="display:flex">

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email:ljones@pszjlaw.com
debertenthal@pszjlaw.com
tcairns@pszjlaw.com

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email:tania.moyron@dentons.com
van.durrer@dentons.com

</div>

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Services Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

**TABLE OF CONTENTS**

SECTION 1 DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS ........................ 1

    1.1    Definitions. .............................................................................................................. 1

    1.2    Interpretation; Application of Definitions and Rules of Construction. .................. 18

    1.3    Exhibits. ................................................................................................................ 18

SECTION 2 CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 19

    2.1    General. .................................................................................................................. 19

    2.2    Unclassified Claims (Not Entitled to Vote on the Plan). ...................................... 19

    2.3    Classification of Claims and Interests. .................................................................. 19

    2.4    Unimpaired Class of Claims. ................................................................................. 20

    2.5    Impaired Classes of Claims and Interests. ............................................................ 20

    2.6    Vacant and Abstaining Classes. ............................................................................ 20

SECTION 3 TREATMENT OF CLAIMS AND INTERESTS ................................................ 21

    3.1    Satisfaction of Claims and Interests. ..................................................................... 21

    3.2    Treatment of Unclassified Claims. ........................................................................ 21

    3.3    Provisions for Treatment of Classified Claims. ..................................................... 23

SECTION 4 ACCEPTANCE OR REJECTION OF THE PLAN ............................................ 26

    4.1    Acceptance by a Class of Claims. .......................................................................... 26

    4.2    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cram Down." ................................................................................................................... 27

    4.3    Confirmation of All Cases. ..................................................................................... 27

    4.4    Intercompany Claims and Interests in Debtor Subsidiaries. ................................. 27

SECTION 5 MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 27

    5.1    Corporate Governance and Action. ....................................................................... 27

    5.2    Effective Date Transactions ................................................................................... 29

    5.3    Funding of the Plan. ............................................................................................... 31

5.4    General Settlement of Claims and Interests ................................................. 31

SECTION 6 PRESERVATION AND PROSECUTION OF CAUSES OF ACTION
           HELD BY THE DEBTORS ............................................................... 32

6.1    Preservation and Prosecution of Causes of Action. .............................. 32

SECTION 7 PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS ............................ 32

7.1    Allowance of Claims. ............................................................................. 32

7.2    Claims Administration Responsibilities. ............................................... 33

7.3    No Payment or Distribution Pending Allowance. ................................. 33

7.4    Disputed Distributions. .......................................................................... 34

7.5    Estimation. .............................................................................................. 34

7.6    Late Filed Claims; Amendments to Claims. .......................................... 34

7.7    Disallowance of Claims. ........................................................................ 34

7.8    Reserve Provisions for Disputed Claims. .............................................. 35

7.9    Adjustment to Claim or Interests without Objection. ............................ 35

SECTION 8 DISTRIBUTIONS UNDER THE PLAN .............................................................. 35

8.1    Distributions Generally. ......................................................................... 35

8.2    Limitation to Full Recovery. .................................................................. 35

8.3    Timing of Distributions. ......................................................................... 35

8.4    Saturdays, Sundays, or Legal Holidays. ................................................ 36

8.5    Distribution Record Date. ...................................................................... 36

8.6    Delivery of Distributions. ...................................................................... 36

8.7    Method of Cash Distributions. ............................................................... 37

8.8    Unclaimed Property. ............................................................................... 37

8.9    Compliance with Tax Requirements. ..................................................... 37

8.10    Setoff or Recoupment ........................................................................... 38

8.11    Documentation Necessary to Release Lien. ......................................... 38

8.12 Distributions Under Twenty-Five Dollars. ....................................................... 38

8.13 No Postpetition Interest. ................................................................................... 38

8.14 Time Bar to Distributions. ................................................................................ 39

8.15 Rounding. ......................................................................................................... 39

8.16 Books and Records. .......................................................................................... 39

8.17 Plan Administrator. .......................................................................................... 39

8.18 Distribution Procedures for General Unsecured Claims. ................................... 41

SECTION 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
   INDEMNIFICATION OBLIGATIONS ................................................................ 42

9.1 Rejection / Assumption. ..................................................................................... 42

9.2 Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ........ 43

9.3 Preexisting Obligations to the Debtors under Executory Contracts and
   Unexpired Leases. ............................................................................................. 44

9.4 Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
   Unexpired Leases Rejected Pursuant to the Plan. ................................................ 44

9.5 Treatment of Rejection Claims. ......................................................................... 45

9.6 Reinstatement and Continuation of Insurance Policies. ....................................... 45

SECTION 10 EFFECT OF CONFIRMATION ............................................................... 45

10.1 Continued Corporate Existence. ....................................................................... 45

10.2 Continued Operations with an Enhanced Business Model. .................................. 45

10.3 Discharge of Claims Against and Interests in the Debtors. ................................. 46

10.4 Injunction. ....................................................................................................... 46

10.5 Releases. .......................................................................................................... 47

10.6 Exculpation and Limitation of Liability. ........................................................... 48

10.7 Subordination of Claim and Interests Under Section 510. .................................. 49

10.8 Post-Confirmation Liability of the Plan Administrator. ..................................... 49

SECTION 11 RETENTION OF JURISDICTION ......................................................................... 50

SECTION 12 CONDITIONS AND EFFECTIVENESS OF THE PLAN ................................... 51

    12.1    Conditions to Confirmation of the Plan. ................................................................ 51

    12.2    Conditions to the Effective Date. .......................................................................... 52

    12.3    Notice of Occurrence of Effective Date. ................................................................ 53

    12.4    Waiver of Conditions Precedent and Bankruptcy Rule 30209(3) Automatic
            Stay. .................................................................................................................... 53

    12.5    Consequences of Non-Occurrence of Effective Date. ........................................... 53

SECTION 13 MISCELLANEOUS PROVISIONS ...................................................................... 53

    13.1    Binding Effect of Plan. ......................................................................................... 53

    13.2    Severability. ......................................................................................................... 54

    13.3    Governing Law. .................................................................................................... 54

    13.4    Notices. ................................................................................................................ 54

    13.5    Filing of Additional Documents. .......................................................................... 55

    13.6    Time. .................................................................................................................... 55

    13.7    Exhibits/Schedules. .............................................................................................. 55

    13.8    Defenses with Respect to Impaired or Unimpaired Claims. .................................. 56

    13.9    No Injunctive Relief. ............................................................................................ 56

    13.10  No Admissions. .................................................................................................... 56

    13.11  Extension of Time. ............................................................................................... 56

    13.12  Conflict. ............................................................................................................... 56

    13.13  Reservation of Rights. .......................................................................................... 56

    13.14  Modification and Amendments. ............................................................................ 56

    13.15  Continuing Exclusivity and Solicitation Period. ................................................... 57

    13.16  Revocation, Withdrawal, or Non-Consummation. ................................................ 57

    13.17  Successors and Assigns. ....................................................................................... 57

13.18   Tax Exemption. ................................................................................................ 58

13.19   Implementation. ............................................................................................... 58

13.20   Record Date. .................................................................................................... 58

13.21   Certain Actions. ............................................................................................... 58

13.22   Waiver of Fourteen-Day Stay. ......................................................................... 59

13.23   Entire Agreement. ............................................................................................ 59

SECTION 14 SUBSTANTIAL CONSUMMATION .................................................................... 59

14.1   Substantial Consummation. .............................................................................. 59

14.2   Final Decree. .................................................................................................... 59

## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF IMPAC MORTGAGE HOLDINGS, INC. AND AFFILIATES THEREOF

Impac Mortgage Holdings, Inc. and the above-captioned affiliated debtors, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby propose the following joint prepackaged plan of reorganization, pursuant to section 1121(a) of the Bankruptcy Code (as may be modified and/or amended from time to time, the "Plan"). Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Section 1 of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the restructuring transactions described herein on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Section 2 of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. Further, the Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan, voting on the Plan, and making distributions in accordance with the Plan. Accordingly, for such limited purposes only, the Debtors will be deemed, and not actually, consolidated. Notwithstanding the foregoing, such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets or liabilities among them. No substantive consolidation of the Debtors or their Estates shall be deemed to have occurred for any purpose other than the limited consolidation solely for voting and distributions under the Plan described herein.

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and operations, projections for those operations, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, certain tax matters, and the securities and other consideration to be issued and/or distributed under the Plan. The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ARE STRONGLY ENCOURAGED TO READ THE PLAN, THE DISCLOSURE STATEMENT, AND THEIR RESPECTIVE EXHIBITS IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## SECTION 1
## DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS

1.1    Definitions.

Unless otherwise provided in the Plan, all terms used herein shall have the meanings ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules. For the purposes of the Plan, the following terms (which appear in the Plan in capitalized form) shall have the meanings

set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires:

"510(b) Claims" means all Claims arising pursuant to section 510(b) of the Bankruptcy Code.

"Administrative Claim(s)" means a Claim for any (a) cost or expense of administration of the Chapter 11 Cases, of the kind specified in section 503(b), including sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code, including, but not limited to (i) any actual and necessary post-petition costs or expenses of preserving the estates of the Debtors, (ii) any actual and necessary costs and expenses of operating the businesses of the Debtors, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses, (iv) amounts owed to vendors providing goods and services to the Debtors during the Chapter 11 Cases, (v) all compensation and reimbursement of expenses of Professionals or other Persons for services rendered or expenses incurred in the Chapter 11 Cases to the extent Allowed by the Bankruptcy Court under sections 328, 330, 331, or 363 of the Bankruptcy Code, whether fixed before or after the Effective Date (including Fee Claims), and (vi) United States Trustee Fee Claims.

"Administrative Claims Bar Date" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Creditor to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date, which shall be thirty (30) days after the Effective Date.

"Administrative and Priority Claims Reserve Estimate" means a good faith estimate by the Debtors of the total amount of Administrative Claims (other than Professional Fee Claims), Priority Non-Tax Claims, and Priority Tax Claims that may be Allowed against the Debtors.

"Administrative and Priority Claims Reserve" means the reserve established on the Effective Date by the Debtors under the Plan and approved by the Bankruptcy Court in the Confirmation Order for purposes of satisfying Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims.

"Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the GUC Schedule as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Plan Administrator or other party in interest has not Filed an Objection on or before the Claim Objection Deadline; (b) a Claim that is set forth in a timely Filed Proof of Claim as to which no Objection has been Filed on or before the Claim Objection Deadline and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Plan Administrator on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Plan Administrator; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with and in

-2-

accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed by the Creditor before the applicable Rejection Bar Date for such claim or has otherwise been deemed timely Filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan.

"Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

"Amended Certificate and Bylaws" means the amended and restated certificates of incorporation and bylaws for the Reorganized Debtors, if so amended, or, in the case of CFLLC, the amended and restated limited liability company agreement for CFLLC, in each case in the form(s) set forth in the Plan Supplement.

"Assets" means all assets of the Debtors' Estates, including "property of the estate" as described in section 541 of the Bankruptcy Code, including Cash, any Causes of Action that may be asserted by the Debtors, securities, proceeds of insurance and insurance policies, all rights and interests, all real and personal property, and all files, books and records of the Debtors' Estates, including documents that are subject to any applicable privilege.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under 28 U.S.C. § 2075, (b) the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the extent applicable, and (c) any other local rules and standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bridge Note" means that certain Secured Promissory Note, dated January 26, 2026, issued by Impac Mortgage Holdings, Inc., Integrated Real Estate Service Corp., Impac Commercial Capital Corporation, Impac Funding Corporation, Impac Mortgage Corp., Impac Warehouse Lending, Inc., Impac Warehouse Lending Group, Inc., Synergy Capital Mortgage Corp, Copperfield Capital Corporation, and Copperfield Financial, LLC to Hildene as successor-by-assignment to Trinity Park Investments, LLC.

"Business Day(s)" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of New York are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" or "$" means the lawful currency of the United States of America and its equivalents including bank deposits and checks.

"Cause(s) of Action" means any and all actions, proceedings, obligations, judgments, debts, accounts, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action (including against insiders), choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, without limitation, any Avoidance Action or other recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any similar provisions of applicable state or federal law.  For the avoidance of doubt, Causes of Action does not include claims, challenges or other matters barred or otherwise released in the DIP Order.

"CCC" means Copperfield Capital Corporation, a Debtor.

"CFLLC" means Copperfield Financial, LLC, a Debtor.

"Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors Filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date (each a "Chapter 11 Case") and with the following lead case number: 26-10593.

"Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Agent" means Kurtzman Carson Consultants LLC d/b/a Verita Global, which the Debtors will seek to appoint as the Debtors' claims, noticing, and balloting agent.

"Claim Objection Deadline" has the meaning ascribed to it in Section 7.3.

"Claims Register" means the official register of Claims maintained in the Chapter 11 Cases by the Claims Agent (or, if no such agent is appointed, the Clerk of the Bankruptcy Court) pursuant to section 156(c) of title 28 of the United States Code and Bankruptcy Rule 5003(b), as such register may be amended, modified, or supplemented from time to time.

"Class" means a category of Holders of Claims or Interests, as set forth in Section 2 of the Plan.

"Closing" means the closing of the transactions contemplated under Section 5.2 of the Plan.

"Code" means the Internal Revenue Code of 1986, as amended.

"Committee" means any official committee of unsecured creditors appointed in the Chapter 11 Cases.

"Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section 12.1 hereof having been (a) satisfied or (b) waived pursuant to Section 12.4.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Combined DS and Confirmation Hearing" means the hearing at which the Bankruptcy Court will consider approval of the Disclosure Statement and confirmation of the Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Consenting Subordinated Noteholders" means Taberna Preferred Funding 1 LTD and Taberna Preferred Funding 2 LTD as beneficial holders of the Subordinated Notes and signatories to the RSA, together with HCMC III, LLC, in its capacity as collateral manager for each of the foregoing.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

"Contingent Claim" means any Claim for which a Proof of Claim has been Filed but was not stated in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

"Contingent Payment Certificate" means a contingent payment certificate to be issued by the Debtors to the Holders of the Subordinated Notes Claims.

"Contractual Incentive Payments" means the amounts owed to certain employees, as collectively set forth on Schedule 2 hereto.

"Creditor" means any Holder of a Claim against any Debtor as specified in section 101(10) of the Bankruptcy Code.

"Cure Amount" means all amounts required to be paid, as ordered by the Bankruptcy Court or otherwise agreed upon by a counterparty to an Executory Contract or Unexpired Lease, to assume an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

"Cure Notice" means a notice sent to non-Debtor counterparties to Executory Contracts and Unexpired Leases indicating the proposed Cure Amounts to be paid to such counterparties to satisfy any cure obligations for assumption pursuant to section 365(b) of the Bankruptcy Code of the Executory Contracts and Unexpired Leases listed thereon.

"Dagdafi" means Dagdafi, Inc. d/b/a First Agentic.

"Debt" means liability on a Claim.

"Debtor Released Parties" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); *provided*, *however*, that in each case a person or entity shall not be a Debtor Released Party if it objects to the Plan's release provisions; *provided further*, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the Debtors to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Debtors to whom they are related.

"Debtor Subsidiaries" means, collectively, IFC, IMC, CFLLC, IMHAC, IRES, IWLG, CCC, ICCC, ISAC, Synergy, and Warehouse.

"Debtors" means Impac, IFC, IMC, CFLLC, IMHAC, IRES, IWLG, CCC, ICCC, ISAC, Synergy, and Warehouse, as debtors and debtors in possession in the Chapter 11 Cases.

"Debtor/Estate Release" has the meaning set forth in Section 10.5 hereof.

"DIP Budget" means the budget for the use of cash and the proceeds of the DIP Facility as approved pursuant to the DIP Order, as it may be amended, supplemented or altered in accordance with the DIP Facility Documents and the DIP Order.

"DIP Claims" means all Claims associated with the DIP Obligations.

"DIP Facility" means the $5,000,000 senior secured super-priority debtor-in-possession term loan credit facility dated as of April 26, 2026 and made available to the Debtors by the DIP Lender.

"DIP Facility Documents" means the DIP Loan Agreement and all other documents memorializing the terms of the DIP Facility, including without limitation the DIP Orders.

"DIP Lender" means Hildene in its capacity as lender under the DIP Facility Documents.

"DIP Loan Agreement" means the credit agreement evidencing the DIP Facility substantially in the form attached to the DIP Motion as may be modified in the DIP Order.

"DIP Obligations" means all amounts due and owing under the DIP Facility as of the Effective Date, including all principal, interest, fees and expenses due and owing thereunder.

"DIP Order" means (a) the Interim DIP Order, unless and until the Final DIP Order is entered, and (b) thereafter, the Final DIP Order.

"Disallowed" means any Claim against the Debtors which, in whole or in part, (a) has been disallowed by a Final Order; (b) has been withdrawn by agreement of the Holder thereof and the Debtors; (c) has been withdrawn by the Holder thereof; (d) is listed in the Schedules as a zero amount or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (e) has been reclassified, expunged, subordinated or estimated resulting in a reduction in the Filed amount of any Proof of Claim; (f) is a Claim for which a Proof of Claim was required to be Filed, but for which no Proof of Claim was timely (or ever) Filed; (g) is unenforceable against the Debtors and the Property of the Debtors, under any agreement or applicable law for a reason other than because such Claim is contingent or unmatured; (h) includes unmatured interest, penalties or late charges; (i) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such claim; and/or (j) is a Claim or portion thereof for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees or damages does not constitute compensation for the Creditor's actual pecuniary loss. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation pursuant to the Plan, applicable law and/or Court order.

"Disallowed Claim" means a Claim that is Disallowed, or the Disallowed portion thereof.

"Disclosure Statement" means the disclosure statement for the Plan, including all exhibits, schedules, or supplements thereto, as it may be amended, modified, or supplemented from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable Law.

"Disputed" means: (i) any Claim or portion of a Claim as to which an Objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which Objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the GUC Schedule as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely Filed; or (iii) a Claim that is not listed in the GUC Schedule and as to which no Proof of Claim has been timely Filed.  To the extent an Objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the Objection.

"Disputed Distribution" means any dispute that arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution.

"Distribution(s)" means Cash, property, interests in property or other value distributed under the Plan to the Holders of Allowed Claims.

"Distributable GUC Assets" means the GUC Consideration.

"<u>Distributable GUC Assets Account</u>" means one or more segregated accounts established and maintained by the Plan Administrator for the sole purpose of holding, managing, and disbursing the Distributable GUC Assets in accordance with the Plan.

"<u>Distribution Agent</u>" means the Debtors and/or the Plan Administrator, or the designees or agents of the foregoing.

"<u>Distribution Dates</u>" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

"<u>Distribution Record Date</u>" means the close of business on the Business Day immediately preceding the Effective Date.

"<u>Effective Date</u>" means the first Business Day on which all conditions to the Effective Date of the Plan have been satisfied or waived or such other later date as may be mutually agreed by the Debtors and the Plan Sponsor.

"<u>Effective Date Notice</u>" means a notice of the occurrence of the Effective Date that shall be Filed on the docket of the Bankruptcy Court, substantially in the form attached to the Confirmation Order.

"<u>Enjoined Matters</u>" has the meaning set forth in Section 10.4 hereof.

"<u>Enterprise</u>" means Enterprise Bank & Trust, a Missouri chartered trust company.

"<u>Enterprise Claim</u>" means any Claim held by Enterprise related to the Enterprise Obligations and the Enterprise Surety Obligations.

"<u>Enterprise Obligations</u>" means the obligations owing by Impac to Enterprise as memorialized by the Former Executive 1 Loan Documents, the Former Executive 2 Loan Documents, the Former Executive 3 Loan Documents and the Enterprise Surety Documents.

"<u>Enterprise Surety Obligations</u>" means obligations arising from an irrevocable standby letter of credit supporting surety bonds issued by Liberty Mutual Insurance Company.

"<u>Entity</u>" means an entity as defined in section 101(15) of the Bankruptcy Code.

"<u>Estates</u>" means the estates of the Debtors in the Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"<u>Exculpated Parties</u>" means collectively (a) the Debtors, (b) the Debtors' respective officers, directors, members and managers who serve currently or served any post-petition period, and (c) Bankruptcy Court-approved Professionals in their respective capacities as such.

"<u>Executory Contract</u>" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

-8-

"Exit Loan Agreement" means that certain Loan and Security Agreement dated as of the Effective Date pursuant to which the Exit Loan Facility will be made available to the Reorganized Debtors by the DIP Lender on and after the Effective Date.

"Exit Loan Amount" equals an aggregate amount equal to the DIP Obligations, plus the Exit Loan New Money Amount.

"Exit Loan Facility" means a multi-draw term loan facility to be made by the DIP Lender to the Reorganized Debtors on and after the Effective Date, pursuant to the Exit Loan Agreement in the principal amount up to the Exit Loan Amount and (i) accruing interest at a rate of SOFR plus 4% per annum, plus an additional 3% in the event of default; (ii) with a facility fee of 1% of the Exit Loan New Money Amount, which shall be deducted from the initial proceeds of the Exit Loan Facility; (iii) secured by a first priority security interest in and liens on all assets of the Reorganized Debtors; (iv) maturing thirty-six (36) months after the Effective Date; (v) be treated as Paid-in-Kind (PIK), unless quarterly interest payments are made at the option of the Reorganized Debtors and (vi) including customary approval and other rights and covenants for the benefit of the DIP Lender.

"Exit Loan New Money Amount" means $5,000,000.

"File" or "Filed" means, with respect to any document, that such document has been electronically submitted to the Bankruptcy Court through the Court's electronic case filing system (or, if applicable, delivered to the Claims Agent or Clerk of the Bankruptcy Court) in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the Bankruptcy Court.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final DIP Order" means the final order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing the Debtors to enter into the DIP Facility and to use cash collateral.

"Final Distribution" means the last payment to holders of Allowed Claims in accordance with the provisions of the Plan.

"Final Order" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending, or (b) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken for granted.

"Former Executive 1 Loan Documents" means that certain Fifth Amended and Restated Promissory Note, dated as of April 30, 2023, by Impac Mortgage Holdings, Inc., Trustee (and any successor trustee) of a trust with respect to such former executive, Dated December 15, 2011 in favor of Enterprise in the principal amount of $7,850,000 which matures on April 30, 2026, secured by Allianz Life Insurance Policy Number 60049553 and other collateral, as described in such note and related documents.

"Former Executive 2 Loan Documents" means that certain Fourth Amended and Restated Promissory Note, dated as of April 30, 2023, by Impac Mortgage Holdings, Inc., Trustee (and any successor trustee) of a trust with respect to such former executive, Dated December 15, 2011 in favor of Enterprise in the principal amount of $6,225,000 which matures on April 30, 2026, secured by Allianz Life Insurance Policy Number 60049113 and other collateral, as described in such note and related documents.

"Former Executive 3 Loan Documents" means that certain Fourth Amended and Restated Promissory Note, dated as of April 30, 2023, by Impac Mortgage Holdings, Inc., Trustee (and any successor trustee) of a trust with respect to such former executive, Dated December 15, 2011 in favor of Enterprise in the principal amount of $3,100,000 which matures on April 30, 2026, secured by Allianz Life Insurance Policy Number 60049112 and other collateral, as described in such note and related documents.

"General Unsecured Claim" means any Claim against the Debtors or the Estates that is not a DIP Claim, an Administrative Claim (including a Professional Fee Claim or United States Trustee Fee Claim), a Priority Tax Claim, a Priority Non-Tax Claim, Senior Indebtedness Claim, Subordinated Notes Claim, Enterprise Claim, Unimpaired Secured Claim, Intercompany Claim, or 510(b) Claim.  For the avoidance of doubt, General Unsecured Claims include any and all Claims arising from, related to, or in connection with the Debtors' mortgage loan repurchase obligations, including, without limitation, Claims for payment, damages, reimbursement, contribution, indemnification, or other recovery, whether contingent, unliquidated, disputed, matured, or unmatured.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"GUC Bar Date" has the meaning set forth in Section 8.18(b) herein.

"GUC Consideration" means $300,000 cash to be deposited into the GUC Distribution Escrow Account by the Reorganized Debtors for the purpose of making distributions on account of allowed General Unsecured Claims and paying the GUC Expenses.

"GUC Distribution Escrow Account" means an interest-bearing bank account or money-market account to be established and held by the Plan Administrator on or after the Effective Date for the purpose of holding the Distributable GUC Assets to be distributed pursuant to the Plan and any interest, dividends, or other income earned upon the investment of the Distributable GUC Assets.

"GUC Expenses" means the reasonable fees and expenses of the Plan Administrator or any Committee, whether incurred before or after confirmation of the Plan.

"GUC Schedule" means the schedule of all General Unsecured Claims known by the Debtors as of the Petition Date, as set forth hereto on Schedule 1.

"Hildene" means Hildene re SPC, Ltd., acting for and on behalf of the account of SP 1, together with any of its successors or assigns, or any designee thereof.

-10-

"Holder" means the legal or beneficial holder of a Claim or Interest (and, if used in conjunction with a Class or type of Claim or Interest, means a holder of a Claim or Interest in such Class or of such type).

"ICCC" means Impac Commercial Capital Corporation, a Debtor.

"IFC" means Impac Funding Corporation, a Debtor.

"IMC" means Impac Mortgage Corp, a Debtor.

"IMHAC" means IMH Assets Corp, a Debtor.

"Impac" means Impac Mortgage Holdings, Inc., a Debtor.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"IRES" means Integrated Real Estate Service Corp., a Debtor.

"ISAC" means Impac Secured Assets Corp., a Debtor.

"IWLG" means Integrated Warehouse Lending Group, Inc., a Debtor.

"Indemnified Parties" has the meaning set forth in Section 10.8 hereof.

"Initial Distribution Date" means the Effective Date, or in the case of Holders of Allowed General Unsecured Claims as soon as practicable thereafter, when the initial distribution of Cash shall be made to the Holders of Allowed Claims, as determined by the Debtors or the Plan Administrator, as applicable.

"Insider" means an insider of the Debtors, as defined in section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, including but not limited to director and officer insurance policies.

"Intercompany Claims" means any Claim held by a Debtor or a non-Debtor Affiliate against any Debtor, whether arising before or after the Petition Date, including any Claim arising from loans, advances, guarantees, intercompany payables or receivables, cost-sharing arrangements, tax allocations, management fees, cash management activities, or other transactions between or among such entities.

"Interests" means all previously issued and outstanding interests (whether legal, equitable, contractual or other rights) of any Holders of any class of equity securities of any of the Debtors represented by shares of common or preferred stock or other instruments evidencing an ownership interest in any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such Interests.

"Interim DIP Order" means the interim order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing the Debtors to enter into the DIP Facility and to use cash collateral, in substantially the form attached to the RSA as Exhibit F.

"IRS" means the Internal Revenue Service.

"Key Executive Employment Agreements" means the (i) Amended and Restated Key Executive Employment Agreement, dated October 7, 2025, between Impac Mortgage Holdings, Inc. and George A. Mangiaracina and (ii) Amended and Restated Key Executive Employment Agreement, dated October 7, 2025, between Impac Mortgage Holdings, Inc. and Joe Joffrion, both as further amended by those certain First Amendments thereto both dated April 21, 2026.

"Lien" means, with respect to any Asset (or the Cash, rent, revenue, income, profit or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the Cash, rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Asset is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation senior in priority to the payment of General Unsecured Claims.

"Litigation" means the interest of the Estates, the Debtors, or the Plan Administrator, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or Reorganized Debtors, as applicable, except to the extent concerning any Released Parties.  Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtors; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors; (iv) for compensation for damages incurred by the Debtors; and (iv) equitable subordination actions against Creditors.

"Management Incentive Plan" means the Management Incentive Plan, in the form of a stock appreciation rights plan to be Filed with the Plan Supplement, to be implemented in accordance with Section 5.2(g) of the Plan.  For the avoidance of doubt, the Management Incentive Plan contemplates incentive compensation arising from performance following the Effective Date, and expressly excludes payments under the Key Executive Employment Agreements and the Contractual Incentive Payments due on the Effective Date.

"New Common Stock" means the common stock of Reorganized Impac to be issued pursuant to the terms of the Plan.

"New Stock Documentation" means any and all documentation required to implement, issue, and distribute the New Common Stock, which shall be consistent with the terms and conditions set forth in the Plan and shall be in form and substance satisfactory to the Debtors and the Plan Sponsor.

"Objection" means any objection, application, motion, complaint or other legal, equitable or administrative proceeding brought by any party (including arbitration, mediation, summary proceeding, adversary proceeding or other litigation if applicable) seeking to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, avoid, subordinate, estimate or otherwise limit recovery, in whole or in part, with respect to any Claim (including any request for payment of any Administrative Claim).

"Person(s)" means a corporation, governmental unit and person, each as respectively defined in sections 101(9), (27) and (41) of the Bankruptcy Code, including a natural person, individual, partnership, corporation, or other domestic or foreign entity or organization.

"Petition Date" means April 26, 2026, the date on which the Debtors Filed their respective voluntary petitions for relief commencing the Chapter 11 Cases.

"Plan Administrator" means the Person selected by the Debtors, with the consent of the Plan Sponsor, to administer the Distributable GUC Assets in accordance with the Plan.

"Plan Document(s)" means collectively the Plan, the Disclosure Statement, or any exhibit, appendix, schedule or annex thereto, including, but not limited to, the Plan Supplement.

"Plan Sponsor" means Hildene in its capacity as sponsor of this Plan.

"Plan Sponsor Common Stock" means the New Common Stock to be issued on the Effective Date to the Plan Sponsor, which shall be equal to 100% of the total issued and outstanding New Common Stock, in exchange for and in full satisfaction of the Senior Indebtedness.

"Plan Supplement" means (if any) such exhibits, documents, lists or schedules not Filed with the Plan but as may be Filed at least seven (7) days prior to the deadline to object to Confirmation of the Plan or such other date as may be approved by the Bankruptcy Court.

"Priority Claim" means a Priority Non-Tax Claim or a Priority Tax Claim.

"Priority Non-Tax Claim" means any Claims entitled to priority in payment pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

"Priority Tax Claim" means any Claims of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Procedures Order" means that certain Order entered by the Bankruptcy Court approving the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Hearing on (A) Adequacy of Disclosure Statement, (B) Confirmation of Plan, and (C) the Assumption of Executory Contracts, Unexpired Leases, Cure Amounts, and Objection Deadlines Related Thereto; (II) Approving Form and Manner of Notice of (A) Combined Hearing, (B) Commencement of Chapter 11 Cases, and (C) Assumption of Executory Contracts and Cure Amounts Related Thereto, and Objection Deadlines; (III) Establishing Procedures for Objecting to (A) Disclosure Statement, (B) Plan, and (C) Proposed Assumption or Rejection of Executory Contracts, Unexpired Leases, and*

*Cure Amounts; (IV) Conditionally Directing the United States Trustee Not to Convene a Section 341 Meeting of Creditors; and (V) Granting Related Relief.*

"Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional(s)" means shall mean any professional retained by the Debtors or any Committee by order of the Bankruptcy Court in the Chapter 11 Cases in accordance with sections 327, 328, 330, 363, or 1103 of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Professional Fee Escrow Account" means the escrow account to be provided and funded from the DIP Facility pursuant to the terms of the DIP Order and the DIP Budget, to satisfy Allowed Professional Fee Claims in accordance with the Plan.

"Professional Fee Reserve Amount" means the total aggregate amount of the Professionals' estimated Professional Fee Claims, as provided for in the DIP Budget.

"Proof(s) of Claim" means a proof of claim Filed pursuant to claim procedures to be adopted by the Plan Administrator pursuant to Section 8.18 of the Plan, together with supporting documents.

"Quarterly Fees" means fees due and payable pursuant to section 1930 of title 28 of the U.S. Code.

"Reinstated" means, with respect to any Claim or Interest, that such Claim or Interest shall be left unaltered or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

"Rejection Bar Date" has the meaning set forth in Section 9.4 herein.

"Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, its current and former shareholders, Affiliates, subsidiaries, employees, agents, investment managers, subagents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

"Release Opt-In Election Form" means a form for Holders of Claims to opt in to being a Releasing Party in connection with the Third Party Release.

"Releasing Parties" means, individually and collectively: (i) each party to the RSA; (ii) each Holder of a Claim or Interest that opts in to the Third Party Release; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns,

transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons; provided that, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (iii), the subject release will apply only to claims and causes of action of such party that (a) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (b) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

"Released Parties" means, collectively, the Debtor Released Parties and the Third-Party Released Parties.

"Reorganized Debtors" means the Debtors on and after the Effective Date.

"Rolled Bridge Note Obligations" means the portion of the DIP Obligations utilized to refinance the Bridge Note in full.

"RSA" means that certain Restructuring Support Agreement, dated April 22, 2026, by and among the Debtors, the Plan Sponsor, the DIP Lender and the Consenting Subordinated Noteholders (as amended, supplemented, or otherwise modified from time to time).

"Schedule of Assumed Executory Contracts" means the schedule attached to the Plan Supplement identifying the Executory Contracts to be assumed by the Debtors, as it may be modified by the Debtors or the Reorganized Debtors from time to time pursuant to the terms hereof.

"Secondment Agreement" means the Secondment Agreement, dated as of March 17, 2026 executed between Impac, IMC and Dagdafi and the related Technology Rights Agreement, between IMC and Dagdafi of even date with such Secondment Agreement.

"Secured Claim" means any Claim, other than an Enterprise Claim, that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

"Senior Indebtedness" means the obligations owed by the Debtors to the Plan Sponsor pursuant to the Senior Loan Documents.

"Senior Indebtedness Claims" means all Claims arising from or related to the Senior Indebtedness.

-15-

"Senior Loan Agreement" means that certain Loan Agreement dated as of May 6, 2024 by and among Impac, as borrower, the Subsidiary Guarantors (as defined therein) and the Plan Sponsor, as lender.

"Senior Loan Documents" means the Senior Loan Agreement and all schedules, exhibits, certificates, notices, perfection certificates, security agreements, guaranties, intercreditor agreements, and any other documents related to the Senior Loan Agreement, any subordination agreement, any note, or notes, and any other present or future agreement by any of the Debtors with or for the benefit of the Plan Sponsor in connection with the Senior Loan Agreement, all as amended, restated, or otherwise modified in accordance with the terms thereof.

"SOFR" means the Secured Overnight Financing Rate as published on the website of the Federal Reserve Bank of New York.

"Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Debtors, Reorganized Debtors, or Plan Administrator (as applicable) make a distribution to any Holders of Allowed Administrative, Secured, Priority, or General Unsecured Claims.

"Subordinated Notes" means the Debtors' Junior Subordinated Notes due March 30, 2034.

"Subordinated Notes Indentures" means (i) that certain Junior Subordinated Indenture, dated as of May 8, 2009 by and among Impac and the Subordinated Notes Indenture Trustee, as trustee; and (ii) that certain Junior Subordinated Indenture, dated as of May 8, 2009 by and among Impac and the Subordinated Notes Indenture Trustee, as trustee, in each case as may be amended, restated, amended and restated, replaced, supplemented or otherwise modified from time to time.

"Subordinated Noteholders" means the beneficial holders of the Subordinated Notes.

"Subordinated Notes Claims" means all Claims arising from or related to the Subordinated Notes or the Subordinated Notes Indenture.

"Subordinated Notes Indenture Trustee" means The Bank of New York Mellon Trust Company, NA in its capacity as indenture trustee under the Subordinated Notes Indentures.

"Synergy" means Synergy Capital Mortgage Corp., a Debtor.

"Tax(es)" means any tax, charge, fee, levy, or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

"Tax Documentation" means the tax identification number, Form W-9, or other tax information required by law to be received by the Reorganized Debtors to avoid withholding any portion of a Distribution for tax purposes.

"Tax Preservation Rights Plan" means, to the extent requested by the Plan Sponsor, a tax preservation rights plan for Reorganized Impac, in form and substance satisfactory to the Plan Sponsor, to be Filed with the Plan Supplement.

"Terminating Consenting Subordinated Noteholders" has the meaning set forth in Section 10.01 of the RSA.

"Third Party Release" has the meaning set forth in Section 10.5(b) hereof.

"Third-Party Released Parties" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); *provided, however*, that in each case a person or entity shall not be a Third-Party Released Party if it objects to the Plan's release provisions; *provided further*, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

"Unclaimed Property" means any unclaimed Distribution of Cash or any other Assets made pursuant to the Plan to the Holder of an Allowed Claim pursuant to the Plan, including checks that are either not cashed for ninety (90) days after issuance or which are returned as undeliverable without a proper forwarding address, and any Distribution not delivered because no mailing address was available as of the applicable distribution date.

"Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"Unimpaired Claim" means a Claim that is not Impaired.

"Unimpaired Secured Claims" means any Secured Claim other than a DIP Claim or Senior Indebtedness Claim.

"United States Trustee" means the United States Trustee appointed under section 581(a)(2) of title 28 of the United States Code to serve in the Chapter 11 Cases.

"Warehouse" means Impac Warehouse Lending, Inc., a Debtor.

"Withheld Amount" has the meaning given in Section 8.9 of the Plan.

1.2    Interpretation; Application of Definitions and Rules of Construction.

(a)    Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neuter.

(b)    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.

(c)    The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.

(d)    The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

(e)    Any term used in the Plan that is not defined in the Plan, either in Section 1 of the Plan or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).  Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

(f)    To the extent that the description of the Plan or any Plan Document is inconsistent with the actual terms or conditions of the Plan or any Plan Document, the terms and conditions of the Plan or Plan Document, as the case may be, shall control.

1.3    Exhibits.

Any and all exhibits or schedules to the Plan and any documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.  The Debtors reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Combined DS and Confirmation Hearing.  If any exhibits are changed or corrected, the replacement exhibits will be Filed with the Bankruptcy Court prior to the commencement of the Combined DS and Confirmation Hearing.  All references to "the Plan" herein shall be construed, where applicable, to include references to this document and any amendments and exhibits hereto, the Plan Supplement and any amendments thereto, and all of their respective exhibits, appendices, schedules and annexes.

**SECTION 2**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.1     General.

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

2.2     Unclassified Claims (Not Entitled to Vote on the Plan).

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims and United States Trustee Fee Claims), DIP Claims and Priority Tax Claims, are not classified.  The treatment accorded Administrative Claims (including Professional Fee Claims and United States Trustee Fee Claims), DIP Claims and Priority Tax Claims is set forth in Section 3.2 of the Plan.

2.3     Classification of Claims and Interests.

The provisions of this Section 2.3 govern Claims against and Interests in the Debtors.  Any Class that is vacant will be treated in accordance with Section 2.6.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (iii) deemed to accept or reject the Plan.  A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2(a) | Enterprise Claims | Unimpaired | No (presumed to accept) |
| 2(b) | Unimpaired Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | Senior Indebtedness Claims | Impaired | Yes |
| 4 | Subordinated Notes Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | No (presumed to reject) |
| 6 | Intercompany Claims | Impaired | No (presumed to reject) |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 7 | 510(b) Claims | Impaired | No (presumed to reject) |
| 8(a) | Interests in Impac | Impaired | No (presumed to reject) |
| 8(b) | Interests in Debtor Subsidiaries | Unimpaired | No (presumed to accept) |

2.4    Unimpaired Class of Claims.

The following Classes of Claims are unimpaired and, therefore, presumed to have accepted the Plan and are not entitled to vote on the Plan under section 1126(f) of the Bankruptcy Code, unless otherwise provided in this Section.

Class 1:  Class 1 consists of all Priority Non-Tax Claims.

Class 2(a):  Class 2(a) consists of Enterprise Claims.

Class 2(b):  Class 2(b) consists of Unimpaired Secured Claims.

Class 8(b):  Class 8(b) consists of Interests in Debtor Subsidiaries.

2.5    Impaired Classes of Claims and Interests.

The following Classes of Claims are impaired and, therefore, are either deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code or are entitled to vote on the Plan, unless otherwise provided herein.

Class 3:  Class 3 consists of the Senior Indebtedness Claims and is Impaired.

Class 4:  Class 4 consists of the Subordinated Noteholder Claims and is Impaired.

Class 5: Class 5 consists of General Unsecured Claims and is Impaired.

Class 6:  Class 6 consists of Intercompany Claims and is Impaired.

Class 7:  Class 7 consists of 510(b) Claims and is Impaired.

Class 8(a):  Class 8(a) consists of Interests in Impac and is Impaired.

2.6    Vacant and Abstaining Classes.

Any Class of Claims or Interests that does not include, as of the commencement of the Combined DS and Confirmation Hearing, an Allowed Claim or Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**SECTION 3**
**TREATMENT OF CLAIMS AND INTERESTS**

3.1 <u>Satisfaction of Claims and Interests</u>.

The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to the Plan shall be in full satisfaction, release, extinguishment and discharge of their respective Claims against or Interests in the Debtors and the Debtors' Assets.

3.2 <u>Treatment of Unclassified Claims</u>.

3.2.1 <u>Administrative Claims</u>.

(a) Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Reorganized Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date; and (ii) the first Business Day after the date that is fifteen (15) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable.

(b) Holders of Administrative Claims (but excluding Professional Fee Claims, which are described in Section 3.2.2 below) must file any requests for payment of such claims by the Administrative Claims Bar Date. Any such requests that are not properly filed and served by the Administrative Claims Bar Date shall be disallowed automatically without the need for any objection from the Reorganized Debtors or action by the Bankruptcy Court.

(c) All fees due and payable under 28 U.S.C. § 1930 prior to the Effective Date that have not been paid shall be paid on or before the Effective Date.

3.2.2 <u>Professional Fee Claims</u>.

(a) <u>Final Fee Applications</u>. Any Professional seeking an award by the Bankruptcy Court of compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve on the Reorganized Debtors and their counsel, the Plan Sponsor and their counsel, the United States Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other applicable order(s) of the Court, its final fee application for allowance of such compensation and/or reimbursement by no later than thirty (30) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; provided, however, that a Professional retained by the Debtors under section 363 of the Bankruptcy Code shall not be required to file an application for allowance of compensation and/or reimbursement of expenses. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Professional Fee Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Professional Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Professional Fee Claims must be Filed and served on the Reorganized Debtors and their counsel,

the Plan Sponsor and its counsel, the Plan Administrator and its counsel, the United States Trustee, and the requesting party no later than the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

The Reorganized Debtors may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to the Reorganized Debtors after the Effective Date.

(b)    Professional Fee Escrow Account. Consistent with the terms of the Plan, the DIP Order and DIP Budget, the Debtors shall have funded the Professional Fee Escrow Account with proceeds of the DIP Facility equal to the Professional Fee Reserve Amount in accordance with the DIP Budget. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals for Allowed Professional Fee Claims and for no other Person until all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or the funds held therein. The funds held in the Professional Fee Escrow Account shall not be property of the Estates of the Debtors or the Reorganized Debtors. The Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to the Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the full amount of the Allowed Professional Fee Claims, any affected Professional shall have an Allowed Administrative Claim for the deficiency, which shall be satisfied in accordance with Section 3.2.1 of the Plan.

### 3.2.3    United States Trustee Fees.

All Quarterly Fees due and payable to the United States Trustee prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall pay all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each of the Debtors and Reorganized Debtors shall remain obligated to pay Quarterly Fees to the Office of the United States Trustee until the earliest of that particular Reorganized Debtor or Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The United States Trustee shall not be required to file any Administrative Claim in the Chapter 11 Cases and shall not be treated as providing any release under the Plan.

### 3.2.4    DIP Claims.

The Proceeds of the Exit Loan Facility shall be used to refinance the DIP Claims on account of, in full and complete discharge of, and in exchange for, such DIP Claims.

### 3.2.5    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, release and discharge of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim; or (b) such other treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business. The Reorganized Debtors shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

3.3     Provisions for Treatment of Classified Claims.

3.3.1     Class 1—Priority Non-Tax Claims.

(a)     Classification. Class 1 consists of all Priority Non-Tax Claims.

(b)     Treatment. The legal, equitable and contractual rights of the Holders of Allowed Class 1 Priority Non-Tax Claims are unaltered by the Plan. Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Non-Tax Claim shall receive, on account of, in full and complete satisfaction, release and discharge of, and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim.

(c)     Impairment and Voting. Class 1 is Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and the votes of such Holders will not be solicited.

3.3.2     Class 2(a)—Enterprise Claims.

(a)     Classification. Class 2(a) consists of all Enterprise Claims.

(b)     Treatment. The Enterprise Obligations will be Reinstated under the Plan, subject to a consensual extension of the maturity date on the Enterprise Obligations to April 30, 2029.

(c)     Impairment and Voting. Enterprise Claims are conclusively presumed to have accepted the Plan, are Unimpaired, and the Holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.3.3     Class 2(b)—Unimpaired Secured Claims.

-23-

(a)      Classification.  Class 2(b) consists of all Unimpaired Secured Claims.

(b)      Treatment.  Each Holder of an Allowed Unimpaired Secured Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Unimpaired Secured Claims, at the option of the Reorganized Debtors: (i) payment in full in Cash; (ii) the collateral securing its Allowed Unimpaired Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Unimpaired Secured Claim; or (iv) such other treatment rendering such Allowed Unimpaired Secured Claim unimpaired.

(c)      Impairment and Voting.   Allowed Unimpaired Secured Claims are conclusively presumed to have accepted the Plan, and the Holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.3.4    Class 3—Senior Indebtedness Claims.

(a)      Classification.  Class 3 consists of the Senior Indebtedness Claims.

(b)      Treatment.  Each Holder of an Allowed Senior Indebtedness Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Senior Indebtedness Claim, its pro rata share of the Plan Sponsor Common Stock on the terms set forth in Section 5.2(b) of the Plan.

(c)      Impairment and Voting.  The Senior Indebtedness Claims are Impaired and Holders are entitled to vote to accept or reject the Plan.

3.3.5    Class 4— Subordinated Notes Claims.

(a)      Classification.  Class 4 consists of Subordinated Notes Claims.

(b)      Treatment.  Each Holder of a Subordinated Notes Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Subordinated Notes Claims, its pro rata share in the Contingent Payment Certificate.

The Contingent Payment Certificate will mature one-hundred twenty (120) days following the end of the third taxable year following the Effective Date (including the taxable year in which the Effective Date occurs), the obligations under which will constitute an unsecured obligation of Impac, the amount payable on which shall be equal to 10% of the consolidated positive earnings of Impac and its subsidiaries for the three taxable years of Impac following the Effective Date, provided that such amount shall not exceed $5 million or be less than $250,000.  For the avoidance of doubt, the amount of the Contingent Payment Certificate shall be reduced dollar-for-dollar by any cash tax liability of Impac and its subsidiaries during and relating to the three taxable year period after the Effective Date.

The Contingent Payment Certificate shall provide that Holders thereof shall report the value of the Contingent Payment Certificate as $250,000 as of the date of issuance and shall not take any position inconsistent with that valuation for any financial reporting or tax purposes, unless required to do so by applicable regulatory or administrative authorities.  The Contingent Payment Certificate shall be treated as a contingent payment right to the Holders of the Subordinated Notes Claims and not as an equity interest in Impac.

(c)     Impairment and Voting.  The Subordinated Notes Claims are Impaired and Holders are entitled to vote to accept or reject the Plan.

3.3.6    Class 5—General Unsecured Claims.

(a)     Classification.  Class 5 consists of all General Unsecured Claims.  Class 5 Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to the Plan, the Plan Administrator (as applicable), which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

(b)     Treatment.  Each Holder of an Allowed General Unsecured Claim shall receive on account of, in full and complete satisfaction, release and discharge of, and in exchange for its Allowed General Unsecured Claim, a Pro Rata share of the GUC Consideration after payment in full of all GUC Expenses.

(c)     Impairment and Voting.  General Unsecured Claims are Impaired, and the Holders of Allowed General Unsecured Claims are conclusively presumed to reject the Plan and the votes of such Holders will not be solicited.

3.3.7    Class 6—Intercompany Claims.

(a)     Classification.  Class 6 consists of all Intercompany Claims.

(b)     Treatment.  On the Effective Date, each Intercompany Claim shall, at the option of the applicable Debtor or Reorganized Debtor, be adjusted, Reinstated, or canceled and released without any distribution; except as necessary or appropriate for tax efficiency, provided, however, that no Distribution will be in Cash.

(c)     Impairment and Voting.  Holders of Intercompany Claims are Unimpaired or Impaired, as applicable, and such Holders of Intercompany Claims are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

3.3.8    Class 7—510(b) Claims.

(a)     Classification.  Class 7 consists of all 510(b) Claims.

(b)    Treatment.  On the Effective Date, each 510(b) Claim shall be canceled, released and discharged and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) Claims.

(c)    Impairment and Voting.  Holders of 510(b) Claims are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

### 3.3.9    Class 8(a)—Interests in Impac.

(a)    Classification.  Class 8(a) consists of all Interests in Impac.

(b)    Treatment.   All Interests in Impac will be cancelled, released, and extinguished, and will be of no further force or effect, and the Holders of Interests in Impac will receive no distribution on account of such Interests.

(c)    Impairment and Voting.  Holders of Class 8(a) Interests are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, Holders of Class 8(a) Interests are not entitled to vote to accept or reject the Plan.

### 3.3.10   Class 8(b)—Interests in the Debtor Subsidiaries.

(a)    Classification.  Class 8(b) consists of all Interests in the Debtor Subsidiaries.

(b)    Treatment.  On the Effective Date, Interests in the Debtor Subsidiaries shall be Reinstated without any distribution.

(c)    Impairment and Voting.   In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Class 8(b) Interests in Debtor Subsidiaries are Unimpaired, Holders of such Interests are presumed to accept the Plan, and the votes of such Holders will not be solicited.

## SECTION 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1    Acceptance by a Class of Claims.

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims will be deemed to accept the Plan if the Plan is accepted by the Holders of Claims in such Class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan as provided for in the Procedures Order.

4.2     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cram Down."

Because Classes 5, 6, 7 and 8(a) are deemed to reject the Plan, the Debtors will seek confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

4.3     Confirmation of All Cases.

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

4.4     Intercompany Claims and Interests in Debtor Subsidiaries.

Distributions on account of the Intercompany Claims and Interests in the Debtor Subsidiaries are not being received by Holders of such Intercompany Claims and Interests in the Debtor Subsidiaries on account of their Claims and Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the various subsidiaries of the Debtors.  For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Claims and Interests in the Debtor Subsidiaries shall be held or owned by the same Reorganized Debtor that corresponds with the Debtor that held or owned such Intercompany Claims and Interests in the Debtor Subsidiaries prior to the Effective Date.

**SECTION 5**
**MEANS OF PLAN IMPLEMENTATION**

5.1     Corporate Governance and Action.

5.1.1   Reorganized Debtors' Initial Board of Directors.  Upon the Effective Date and without further authorization or documentation, the authority of (i) the members of the board of directors for each of the Debtors; and (ii) each of the Debtors' officers shall terminate and the members of the board of directors of each of the Reorganized Debtors shall be appointed as provided for herein.  The boards of directors of the Reorganized Debtors shall consist of three (3) directors, all of whom shall be nominated by the Plan Sponsor and shall serve three (3) year terms.  The identities of the initial board of directors of the Reorganized Debtors shall be set forth in the Plan Supplement.  Such initial board members shall also serve as the board of directors for each of the other corporate Reorganized Debtors.  After the initial term of a Reorganized Impac director expires, each director shall be elected in accordance with the terms of the Amended Certificate and Bylaws.  CFLLC shall continue to be member managed in accordance with its applicable operating agreement and other governing documents, as may be amended.  Reorganized Impac shall serve as manager of CFLLC and any Reorganized Debtor that is a limited liability company.

5.1.2   Stockholder Approval Matters.  Reorganized Impac's Bylaws shall provide that all post-Effective Date matters requiring the approval of Reorganized Impac's stockholders will require a quorum of not less than a majority of Reorganized Impac's issued and outstanding

-27-

stock entitled to vote threat, and all matters brought before the stockholders shall be approved by the affirmative vote of greater than fifty-one percent (51%) of the voting power of the then outstanding common stock of Reorganized Impac, voting as a single class.

>5.1.3   Corporate Action.

All decisions of the Reorganized Debtors' boards of directors shall be by simple majority.

The boards of directors of the Reorganized Debtors shall be authorized to appoint officers for the Reorganized Debtors in accordance with the terms of each Reorganized Debtor's organizational documents, including the Amended Certificate and Bylaws.

On and after the Effective Date, the members of the boards of directors of the Reorganized Debtors, or, where member managed, the managing member, are authorized to, and may direct an officer to, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those required pursuant to the Plan.

The adoption of the Amended Certificate and Bylaws or other organizational documents of the Reorganized Debtors, if so amended, the selection of directors and officers of Reorganized Debtors, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan) by the Confirmation Order.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors of the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirements or further action by the security holders, members, directors, managers or officers of the Debtors or Reorganized Debtors.

On the Effective Date, as applicable, the appropriate officers of the Debtors and/or Reorganized Debtors and members of the boards of directors or managers of the Debtors and/or Reorganized Debtors are authorized and directed to issue, execute and deliver, and cause the Reorganized Debtors to perform, the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Debtors and/or Reorganized Debtors.

On and after the Effective Date, the Reorganized Debtors shall have full authority and are authorized to take such actions and execute such documents as may be necessary to effectuate the transactions provided for in the Plan.  The Reorganized Debtors' post-Effective Date authority shall include the right to operate their business as a going concern to purchase and/or sell assets; to commence and prosecute actions and proceedings; to open, maintain and close bank accounts and/or other investments on behalf of the Estates; to make and file Objections to, or otherwise contest the amount, validity and/or priority of, all Claims other than the Senior Indebtedness Claims (which are Allowed Pursuant to the Plan), Subordinated Notes Claims (which are Allowed pursuant to the Plan) and the General Unsecured Claims (which shall be administered solely by the Plan Administrator); to calculate and make Distributions consistent with the Plan; to prosecute and resolve Objections regarding all Claims other than the Senior Indebtedness Claims (which are

Allowed pursuant to the Plan), Subordinated Notes Claims (which are Allowed pursuant to the Plan) and the General Unsecured Claims (which shall be administered solely by the Plan Administrator); to engage in arbitration or mediation; to engage or retain Professionals and to pay the fees and disbursements thereof; to file tax information and returns as required and, in connection therewith, to make such determinations of tax liability, challenge assessments, make tax elections, pay taxes and take other, related actions; to hold and dispose of any unclaimed Distributions; and to close the Chapter 11 Cases and any related proceedings. Subsequent to the Effective Date, the Debtors' charters, as applicable, shall be amended to prohibit the issuance of non-voting securities and to otherwise comply with the terms and conditions of section 1123(a)(6) of the Bankruptcy Code.

5.2     Effective Date Transactions.    The Closing of the transactions required and contemplated under the Plan shall take place by electronic exchange of documents on the Effective Date. All documents to be executed and delivered by any party as provided in this Section 5 and all actions to be taken by any party to implement the Plan as provided herein shall be in form and substance satisfactory to the Debtors and the Plan Sponsor. The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date:

a.     Vesting of Assets.

On the Effective Date and unless otherwise provided in the Plan, the Assets of each Estate shall vest in the applicable Reorganized Debtor, as the case may be, free and clear of all claims, liens, encumbrances, charges and other interests.

b.     Issuance of Plan Sponsor Common Stock.

On the Effective Date, and consistent with its Amended Certificate and Bylaws, the Debtors other than CFLLC and CCC shall be redomiciled as Delaware corporations. CFLLC and CCC currently are organized in Delaware.

On the Effective Date, all issued and outstanding securities in the Debtors (other than the Interests in Debtor Subsidiaries), and all rights to receive any securities in the Debtors, shall be cancelled and all classes of stock in Impac shall be eliminated with the exception of the New Common Stock.

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall issue the Plan Sponsor Common Stock to the Plan Sponsor, which shall be distributed as set forth in the Plan. The issuance of the Plan Sponsor Common Stock under the Plan is authorized by the Reorganized Debtors without the need for any further corporate action by the Reorganized Debtors.

c.     Securities Registration Exemption.

As of the Effective Date, Reorganized Impac shall take such steps to cease to be publicly traded and, to the extent applicable, shall take such steps be delisted from any public exchange and no longer be subject to any over-the-counter (OTC) marketplace reporting requirements.

The securities to be issued pursuant to the Plan are to be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.  To the extent section 1145 of the Bankruptcy Code is inapplicable, these issuances are exempt from registration under the Securities Act or any similar federal, state or local law in reliance on the exemption set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder.

        d.        <u>The Contingent Payment Certificate</u>.

On the Effective Date, the Debtors shall issue the Contingent Payment Certificate to Holders of allowed Subordinated Notes Claims, who shall receive their Pro Rata share thereof in full and final and satisfaction of the Subordinated Notes Claims.

        e.        <u>Funding of the Administrative and Priority Claims Reserve</u>.

On the Effective Date, the Reorganized Debtors shall cause the Administrative and Priority Claims Reserve to be funded in Cash from Cash on hand on the Effective Date and the proceeds of the Exit Loan Facility in the amount of the aggregate Administrative and Priority Claims Reserve Estimate.  On or after the Effective Date, the Reorganized Debtors shall, subject to and in accordance with the terms and conditions of the Plan, pay Allowed Administrative Claims, Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims, each as provided for in the Plan.

        f.        <u>Satisfaction of DIP Obligations</u>.

Pursuant to Section 3.2.4 of the Plan, the Proceeds of the Exit Loan Facility shall be used to refinance the DIP Claims on account of, in full and complete discharge of, and in exchange for, such DIP Claims.

        g.        <u>Management Incentive Plan</u>.

On the Effective Date or as soon as reasonably practicable thereafter, without further order of the Court or approval by the Board of Directors or stockholders of Reorganized Impac, Reorganized Impac shall be deemed to adopt the Management Incentive Plan.  The amounts, structure, awards, and terms of the Management Incentive Plan shall be set forth in the Management Incentive Plan, which shall be in the form of a stock appreciation rights plan as a part of the Plan Supplement, and approved by the Court pursuant to the Confirmation Order.  All awards issued under the Management Incentive Plan will be dilutive of all other equity interests in Reorganized Impac issued in connection with the Plan.

        h.        <u>Cancellation of Existing Securities and Agreements</u>.

Except for all Interests in the Debtor Subsidiaries, which shall be Reinstated as provided for in the Plan, on the Effective Date, the Subordinated Notes and all Interests in Impac, shall be deemed, and shall be, cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  Similarly, on the Effective Date, any instruments or documents evidencing any Claims or Interests shall be deemed automatically canceled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order,

or rule and the obligations of the Debtors under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Interests, as the case may be, shall be discharged; except (a) Interests in Debtor Subsidiaries; (b) as otherwise specifically provided for in the Plan; (c) with respect to any assumed Executory Contracts and Unexpired Leases; (d) for purposes of evidencing a right to Distributions under the Plan; or (e) with respect to any Claim that is Allowed under the Plan.

i.      Exemption from Taxes.

To the extent the Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments, and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation, or perfection of any lien, pledge, other security interest, or other instruments of transfer; (c) the making or assignment of any contracts or leases; (d) the creation, execution, and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtors or the issuance or ownership of any interest in the Reorganized Debtors; and/or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Estate's Assets in the Reorganized Debtors pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

j.      Obligations Incurred After the Effective Date.

Payment obligations incurred after the Effective Date, including, without limitation, the professional fees of the Reorganized Debtors, will not be subject to application or proof of claim and shall be paid by the Reorganized Debtors in the ordinary course of business and without further Bankruptcy Court approval.

5.3      Exit Loan Facility.  The DIP Lender shall provide the Exit Loan Facility, which shall be used, among other ways, to fund: (i) the GUC Consideration; (ii) all transactions necessary to implement the Plan, including, but not limited to, (a) payment of all Allowed Claims that are to be satisfied in cash under the Plan (other than General Unsecured Claims), and (b) payment of amounts owed under the Key Executive Employment Agreements and Contractual Incentive Payments; and (iii) working capital needs of the Reorganized Debtors.

5.4      General Settlement of Claims and Interests.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, settlements contained in the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the relevant Plan provisions.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in

-31-

the best interests of the Debtors and the Estates.  All Plan Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. For the avoidance of doubt, the Plan itself shall not be deemed to be a settlement.

## SECTION 6
## PRESERVATION AND PROSECUTION OF CAUSES OF ACTION HELD BY THE DEBTORS

6.1     Preservation and Prosecution of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, except as explicitly provided in the Plan, all Causes of Action of the Debtors and Reorganized Debtors are retained and preserved and shall revest in the Reorganized Debtors.  Except as explicitly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Causes of Action, including, without limitation, any rights, claims or causes of action, rights of setoff, or other legal or equitable defenses (including, for avoidance of doubt, any cause of action to avoid a transfer under sections 303(c), 544, 547, 548, or 553(b) of the Bankruptcy Code, or under any similar state law) that the Debtors or the Reorganized Debtors, or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.

Unless any Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors shall retain and may enforce all rights to commence, prosecute, settle, or abandon as appropriate, any and all Causes of Action, notwithstanding the occurrence of the Effective Date.  No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Unless any Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Order or the occurrence of the Effective Date.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action against any entity shall vest in the Reorganized Debtors.

## SECTION 7
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

7.1     Allowance of Claims.

After the Effective Date, each of the Plan Administrator or Reorganized Debtors, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

-32-

7.2     Claims Administration Responsibilities.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the authority and standing to:  (1) file, withdraw, or litigate to judgment, objections to Claims or Interests with respect to which it disputes liability, priority, and/or amount other than the Senior Indebtedness Claims (which are Allowed pursuant to the Plan), Subordinated Notes Claims (which are Allowed pursuant to the Plan) or General Unsecured Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority and standing to:  (1) file, withdraw, or litigate to judgment, objections solely to General Unsecured Claims with respect to which it disputes liability, priority, and/or amount; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

The costs of pursuing the objections to Claims shall be borne by the Reorganized Debtors from its available cash or the Plan Administrator from the Distributable GUC Assets Account, as applicable.  From and after the Effective Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Reorganized Debtors or Plan Administrator, as applicable, elect(s) to withdraw any such objection or the Reorganized Debtors or Plan Administrator, as applicable, and the Creditor elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

7.3     Objections to Claims.

Any Objections to Claims that have been filed or scheduled on or before the Effective Date shall be served and filed as soon as practicable, but, in each instance, no later than: (a) 180 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof (the "Claim Objection Deadline").  The Filing of a motion to extend the Claim Objection Deadline, which may be made by the Plan Administrator or Reorganized Debtors, as applicable, shall automatically extend such Claim Objection Deadline until a Final Order is entered on such motion.  In the event that such a motion to extend the Claim Objection Deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, such objection deadline shall be the later of the current Claim Objection Deadline (as previously extended, as applicable) or 30 days after entry of a Final Order denying the motion to extend the objection deadline.

7.4     No Payment or Distribution Pending Allowance.

Notwithstanding any other provision in the Plan, if any portion of a Claim is a Disputed Claim, no payment or Distribution of Assets provided for hereunder shall be made on account of

such Claim unless and until the Disputed Claim becomes an Allowed Claim.  To the extent a Disputed Claim is Disallowed in whole or in part, the Holder of such Claim will not receive any Distribution on account of the portion of such Claim (including the whole, if applicable) that is a Disallowed Claim.  The Plan Administrator or Reorganized Debtors, as applicable, shall have no obligations with respect to any Disallowed Claims, including, without limitation, any obligation to pay any deductibles or self-insured retentions associated with any insurance coverage in respect of such Claims.

7.5     Disputed Distributions.

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution, in lieu of making a distribution to such Person, the Distribution Agent may reserve or deposit the Distribution at issue (or the disputed portion thereof) into a segregated account for Disputed Distributions until the disposition thereof is determined by a Final Order or by written agreement among the interested parties to such dispute.

7.6     Estimation.

The Plan Administrator or Reorganized Debtors, as applicable, shall have the right, but not the obligation, at any time to seek an order of the Bankruptcy Court, after notice and a hearing (which hearing may be held on an expedited basis), estimating for final Distribution purposes any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator or Reorganized Debtors, as applicable, previously objected to such Claim.   If the Bankruptcy Court estimates any contingent, Disputed or unliquidated Claim, the estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; *provided*, *however*, that if the estimate constitutes the maximum limitation on such Claim, the Plan Administrator or the Reorganized Debtors as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim.  On or after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

7.7     Late Filed Claims; Amendments to Claims.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed or amended after the applicable Bar Date shall be deemed Disallowed Claims and expunged without any further notice to or action, order, or approval of the Bankruptcy Court, and any Holders of such Disallowed Claims may not receive any distributions on account of such Claims, unless the Holder of such late Claim has obtained a final order granting leave to file such late Claim in advance of the filing of any such late Claim.

7.8     Disallowance of Claims.

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Reorganized Debtors, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any

Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Reorganized Debtors.

7.9    Reserve Provisions for Disputed Claims.

On or by each Distribution Date with respect to the Distributable GUC Assets, the Plan Administrator shall reserve from Distributable GUC Assets for GUC Expenses and distribution on Disputed Claims as if such Claims were Allowed as Filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Debtors or the Plan Administrator (the "Disputed Claim Reserve").

The property in the Disputed Claim Reserve shall be held in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed.  The Disputed Claim Reserve shall be closed and extinguished when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.

7.10    Adjustment to Claim or Interests without Objection.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**SECTION 8**
**DISTRIBUTIONS UNDER THE PLAN**

8.1    Distributions Generally.

The Reorganized Debtors shall make all distributions to Holders of Allowed Claims other than General Unsecured Claims.  The Plan Administrator shall make distributions to the appropriate Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan.

8.2    Limitation to Full Recovery.

Notwithstanding anything herein to the contrary, no Holder of any Claim will be entitled to a Distribution in excess of 100% of the Allowed amount of its Claims, plus applicable interest required to be paid hereunder.

8.3    Timing of Distributions.

Distributions to Holders of Allowed Claims shall be made on one or more Distribution Dates.  With respect to General Unsecured Claims, the Plan Administrator may, in its discretion, make full or partial Pro Rata Distributions to Holders of General Unsecured Claims on any Distribution Date. Any Distribution not made on a Distribution Date because the Claim relating to

such Distribution had not yet been Allowed shall be made on a subsequent Distribution Date after such Claim becomes Allowed. No interest shall accrue or be paid on account of any delayed Distribution.

Distributions under the Plan shall be made (i) as set forth in the Plan or as soon as reasonably practicable thereafter; or (ii) as agreed between the Plan Administrator or Reorganized Debtors, as applicable, and the particular Creditor, or as soon as reasonably practicable thereafter. If a Claim is not an Allowed Claim as of the Effective Date, Distributions will be made only if and when the Claim is Allowed and, to the extent a Disputed Claim is the subject of estimation in accordance with Section 7.6 of the Plan, in an amount no greater than the estimated amount of such Claim.

8.4     Saturdays, Sundays, or Legal Holidays.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

8.5     Distribution Record Date.

Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001(e) and Filed with the Bankruptcy Court on or prior to the Distribution Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date. As of the close of business on the Distribution Record Date, any transfer ledgers, transfer books, registers and any other records will be closed and, for purposes of the Plan, there shall be no further changes in the record Holders of such Claims. The Plan Administrator or the Reorganized Debtors, as applicable, shall have no obligation to recognize the transfer of any Claim occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with those Holders of Claims and Interests as of the close of business on the Distribution Record Date, as reflected on the ledgers, books, registers or records of the Debtors and the Bankruptcy Court.

8.6     Delivery of Distributions.

Subject to the treatment of Disputed Distributions as set forth in Section 7 of the Plan, Distributions shall be made to Holders of Allowed Claims at the addresses set forth on the Debtors' books and records or the Proofs of Claim, if any, Filed by such Creditors or at the last known addresses of such Creditors or, in the case of transferred Claims, on the notice of transfer Filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3001, each as of the Distribution Record Date. If any such Creditor's Distribution is returned as undeliverable, no further Distribution shall be made to such Creditor unless and until the Distribution Agent is notified of such Creditor's then-current address, at which time any missed Distribution shall be made to such Creditor to the extent of available Cash; provided that in no event is the Distribution Agent required to make Distributions to a Creditor whose Distribution is returned as undeliverable and becomes Unclaimed Property. Notwithstanding anything to the contrary in the foregoing, Distributions on

account of the Subordinated Notes Claims shall be made directly to the applicable Subordinated Noteholders.

8.7     Method of Cash Distributions.

The Distribution Agent shall make all Distributions contemplated by the Plan.  Any Cash payment to be made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Distribution Agent.  If a Creditor holds more than one Claim in any one Class, all Allowed Claims of the Creditor in that Class may, at the Plan Administrator's or the Reorganized Debtors' option, as applicable, be aggregated and one Distribution may be made with respect thereto.

8.8     Unclaimed Property.

Except with respect to property held in a Disputed Claim Reserve, all Assets distributed on account of Claims must be claimed within the later of ninety (90) days after (i) the Effective Date and (ii) the date such Distribution is made to such Holder provided, however, in the case of a Distribution made in the form of a check, must be negotiated or a request for reissuance made directly to the Plan Administrator or Reorganized Debtors, as applicable, by the Creditor that was originally issued such check and shall be made within ninety (90) days after the date the Distribution is made to the applicable Creditor.  Nothing contained in the Plan shall require the Plan Administrator or Reorganized Debtors, as applicable, to attempt to locate any Holder of an Allowed Claim, other than as provided herein.  Pursuant to Bankruptcy Code sections 347(b) and 1143, all Claims in respect of Unclaimed Property shall be deemed a Disallowed Claim and the Holder of any Disallowed Claim is forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or the Estates.

8.9     Compliance with Tax Requirements.

In connection with each Distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Plan Administrator or Reorganized Debtors, as applicable, shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such Distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom Tax Documentation has not been received by the Reorganized Debtors within thirty (30) days from the date of any request for Tax Documentation, the Reorganized Debtors may, at their option, withhold the amount required (the "Withheld Amount") and distribute the balance of such distribution to such Person, or decline to make any such Distribution until the information is received; provided, however, that in the event that such Tax Documentation is not received within ninety (90) days from the date that the Tax Documentation is requested, the Reorganized Debtors shall have no obligation to distribute any such Withheld Amount or make any such Distribution at all, the Claim associated with any such Withheld Amount or any such Distribution, as applicable, shall be a Disallowed Claim, and the Holder of any such Disallowed Claim shall be forever barred, expunged, estopped and enjoined from asserting such Disallowed Claim in any manner against the Debtors or the Estates.

-37-

8.10    Setoff or Recoupment

The Plan Administrator or Reorganized Debtors, as applicable, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), setoff or recoup against any Distribution amounts related to any Claim before any Distribution is made on account of such Claim and any and all of the Causes of Action of any nature that the Debtors, the Estates or the Reorganized Debtors may hold against the Holder of such Claim, to the extent that (a) the Plan Administrator or Reorganized Debtors, as applicable, provide the Holder of an applicable Claim seven (7) days' notice of the Plan Administrator's or Reorganized Debtors' intent to apply a setoff or recoupment and such Holder of a Claim does not object; or (b) the Plan Administrator's or Reorganized Debtors' right to setoff or recoupment is otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, however, that neither the failure to effect such a setoff or recoupment, the allowance of any Claim hereunder, any other act or omission of the Plan Administrator or Reorganized Debtors, nor any provision of the Plan (other than Section 10 of the Plan) will constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Causes of Action that the Debtors or the Reorganized Debtors may possess against such Holder.

8.11    Documentation Necessary to Release Lien

Except as otherwise agreed to by the Reorganized Debtors, each Creditor who is a Holder of a Lien satisfied, discharged and released under the Plan and who is to receive a Distribution under the Plan shall not receive such Distribution until such Creditor executes and delivers any documents necessary to release all Liens arising under any applicable security agreement or non-bankruptcy law (in recordable form, if appropriate) in connection with such Claim and such other documents as the Reorganized Debtors may reasonably request to document satisfaction of the Lien.

8.12    Distributions Under Twenty-Five Dollars.

Notwithstanding anything herein to the contrary, except with respect to Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Unimpaired Secured Claims, no Distribution of Cash in an amount less than twenty-five dollars ($25.00) will be made by the Distribution Agent to any Holder of an allowed Claim unless a request is made in writing to the Distribution Agent.  If no such request is made, all such Distributions will be treated as Unclaimed Property.

8.13    No Postpetition Interest.

Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, postpetition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest.  Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

8.14    Time Bar to Distributions.

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made to the address of the applicable Creditor set forth in the GUC Schedule, unless superseded by an address in a Filed proof of claim, or to the Creditor's last known address if the Debtors or the Plan Administrator receive written notice of a change of address. If a Distribution is returned as undeliverable, the Distribution Agent may, in its discretion, undertake reasonable efforts to determine the Creditor's current address; provided, however, that no further Distribution shall be made unless and until a current address is identified. Any such delayed Distribution shall be made without interest. Amounts attributable to undeliverable Distributions shall be returned to, and held in trust by, the Distribution Agent pending claim or treatment as Unclaimed Property pursuant to section 347(b) of the Bankruptcy Code. Nothing herein shall require the Debtors, the Plan Administrator, or the Distribution Agent to locate any Holder of an Allowed Claim.

8.15    Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

8.16    Books and Records.

Upon the Plan Administrator's request and to the extent thereof, the Debtors shall provide copies of all of their books and records, in whatever form, manner or media, relating to potential objections to General Unsecured Claims and/or other responsibilities under the Plan of the Plan Administrator, to the Plan Administrator, on or as soon as reasonably practicable after the Effective Date.

8.17    Plan Administrator.

(a)    Appointment of the Plan Administrator. The Plan Administrator shall be selected by the Debtors, with the consent of the Plan Sponsor, whose identity will be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code. The Plan Administrator may be a Reorganized Debtor.

(b)    Resignation; Replacement. The Plan Administrator shall serve from the Effective Date until the earlier of (a) full administration of the Distributable GUC Assets in accordance with the Plan or (b) further order of the Bankruptcy Court, and may resign upon thirty (30) days' written notice, provided such resignation shall not be effective until a successor has been appointed and accepted such appointment. In the event that the Person serving as the Plan Administrator is terminated or is unable to fulfill his, her or its duties under the Plan, the Plan Sponsor shall appoint a Person to fulfill the obligations of the Plan Administrator under the Plan. The Plan Administrator may be removed for cause by order of the Bankruptcy Court after notice and a hearing.

(c)    Powers of the Plan Administrator. The Plan Administrator shall have the sole authority to administer, reconcile, and make Distributions on account of General Unsecured

Claims in accordance with the Plan.  In furtherance thereof, the Plan Administrator shall have the power and authority to:

> (i)      administer Claims by receiving, reviewing, and reconciling Proofs of Claim relating to General Unsecured Claims and reconciling such claims, including to the GUC Schedule and the Debtors' books and records;

> (ii)     identify and classify General Unsecured Claims as Allowed, Disputed, contingent, unliquidated, or otherwise subject to objection;

> (iii)    object to or respond to asserted Claims by filing, litigating, settling, compromising, withdrawing, or otherwise resolving objections to General Unsecured Claims, including estimating any such Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of allowance and Distribution;

> (iv)    establish and maintain accounts by opening, maintaining, investing (consistent with the Plan), and closing the Distributable GUC Assets Account;

> (v)     calculate and make Distributions by determining Distribution amounts in accordance with the Plan and making interim and final Distributions to holders of Allowed General Unsecured Claims;

> (vi)    establish and adjust reserves by implementing and modifying reserves for GUC Expenses and Disputed Claims;

> (vii)   resolve matters relating to undeliverable Distributions, Unclaimed Property, forfeitures, and related administrative matters in accordance with the Plan and applicable law;

> (viii)  seek orders of the Bankruptcy Court as necessary to implement the Plan with respect to General Unsecured Claims;

> (ix)    retain and compensate professionals or agents as reasonably necessary to perform the foregoing duties without further order of the Bankruptcy Court; and

> (x)     to take any and all other actions reasonably necessary or appropriate to implement, administer, and consummate the provisions of the Plan with respect to General Unsecured Claims and the Distributable GUC Assets.

(d)      Fees and Expenses of the Plan Administrator.  All expenses incurred by the Plan Administrator in administering General Unsecured Claims and effectuating distributions of the Distributable GUC Assets, including any costs and expenses associated with the reconciliation, resolution, and allowance of General Unsecured Claims, the maintenance and administration of the Distributable GUC Assets Account, and the calculation and implementation of distributions therefrom, shall be paid solely from the Distributable GUC Assets.  The Plan Administrator shall be allowed to reserve from Distributable GUC Assets on account of GUC Expenses.  Under no circumstances shall the Plan Administrator, the Reorganized Debtors, the Plan Sponsor or any

-40-

other Person be obligated to fund such expenses from any assets other than the Distributable GUC Assets.

8.18    Distribution Procedures for General Unsecured Claims.

(a)    General Unsecured Claims.  The Debtors have attached a GUC Schedule to the Plan, which sets forth the creditor and corresponding proposed Allowed amount for each General Unsecured Claim.  If General Unsecured Creditors disagree with the amount of their Claim or do not see their Claim listed on the GUC Schedule, such General Unsecured Creditors shall file a Proof of Claim in this Bankruptcy Case as provided in subsection (b) below.  The Plan Administrator has the right to request additional documentation or information from such General Unsecured Creditor.

(b)    GUC Bar Date.  To the extent, not already Filed with the Court prior to the Effective Date, within thirty (30) days following the Effective Date of the Plan (the "GUC Bar Date"), Holders of General Unsecured Claims must file and serve on counsel to the Plan Administrator a Proof of Claim on account of their respective General Unsecured Claims, subject to preceding Section 8.18(a).

(c)    Requirements of Proof of Claim.  Proofs of Claim shall:

(i)    Be in writing;

(ii)    Conform substantially to the applicable Official Bankruptcy Form;

(iii)    State the asserted amount of the Claim in U.S. Dollars;

(iv)    Include supporting documentation sufficient to substantiate the Claim; and

(v)    Be executed by the Creditor or an authorized representative.

(d)    Effect of Failure to Timely Submit Proof of Claim.  Any holder of a General Unsecured Claim that fails to file a Proof of Claim by the GUC Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, the Reorganized Debtors, the Plan Administrator, the Estates, or any Assets to be distributed under the Plan.  Such Claims shall be deemed waived and Disallowed for all purposes under the Plan.  Notwithstanding the foregoing, the Plan Administrator may, in its discretion, accept late-Filed claims in the Plan Administrator's sole discretion.

(e)    Claims Reconciliation.  The Plan Administrator shall have the exclusive authority to administer, reconcile, and resolve all General Unsecured Claims.  In furtherance thereof, the Plan Administrator may review Proofs of Claim, object to Claims, settle, compromise, or resolve Claims, estimate Claims, reclassify Claims consistent with the Plan, and establish reserves as necessary, in each case without any further approval of the Bankruptcy Court.

(f)    Disputed Claims.  General Unsecured Claims that are not Allowed shall be treated as Disputed Claims.  No Distribution shall be made on account of a Disputed Claim unless

and until such Claim becomes an Allowed Claim pursuant to Section 7 of this Plan.  The Plan Administrator may establish reserves with respect to Disputed Claims pursuant to Section 7.9 of the Plan.

**SECTION 9**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES;**
**INDEMNIFICATION OBLIGATIONS**

9.1    Rejection / Assumption.

Unless otherwise provided in the Plan, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected, unless any such Executory Contract or Unexpired Lease (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (ii) is identified on the Schedule of Assumed Executory Contracts; (iii) is the subject of a notice or motion to assume that is pending on the Effective Date; (iv) is subject to a notice or motion to assume pursuant to which the requested effective date of such assumption is after the Effective Date; (v) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; or (vi) is one of the following type of agreements, all of which shall be deemed assumed even if not identified by clauses (i)-(v) above: (a) confidentiality, non-compete and non-disclosure agreements and (b) intercompany agreements and arrangements, unless specifically identified as rejected under a notice or motion of rejected contracts.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption of the Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of such Executory Contracts or Unexpired Leases. Except as otherwise provided herein or agreed to by the Debtors or Reorganized Debtors (as applicable) and the applicable non-Debtor counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto and all rights related thereto.  Any modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases shall not be deemed to alter the prepetition nature of such agreements or the validity, priority or amount of any Claims that may arise in connection therewith.

Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts at any time through and including 30 days after the Effective Date.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

To the maximum extent permitted by law, to the extent any provision in an Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to

-42-

restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

The Debtors shall assume, as of the Effective Date, all contracts associated with the Debtors' employee benefits, including contracts regarding their payroll processing company, health benefits, 401(k) plan, paid time off, life insurance, accidental death and disability insurance and employee handbook; provided that the Debtors shall not assume any severance obligations unless expressly assumed.

On the Effective Date, any and all equity-based incentive plans or stock ownership plans of the Debtors, including all agreements related thereto, entered into before the Effective Date, or other plans, agreements, or documents giving rise to Interests, including the contingent cash components of any such plans, agreements, or documents, shall be immediately terminated without any action of the Debtors, the Reorganized Debtors, or the Plan Sponsor. To the extent such plans, agreements, or documents are considered to be Executory Contracts, such plans, agreements, or documents shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to Bankruptcy Code section 365 under the Plan.

From and after the Effective Date, all warrants, stock options, and other equity awards outstanding or issued before such time, whether included in a warrant, plan, contract, agreement, or otherwise, will have no value, shall be cancelled and extinguished and thus will not entitle any holder thereof to purchase or otherwise acquire any equity interests in the Reorganized Debtors.

9.2     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

Any defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the Cure Amount; (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least twenty-one days prior to the Combined DS and Confirmation Hearing, the Debtors shall file and serve the Cure Notice. **Any objection by a counterparty to the proposed assumption of an Executory Contract or Unexpired Lease or the related Cure Amount must be Filed, served, and actually received by the Debtors no later than fourteen (14) days after the filing and service of the Cure Notice. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or the related Cure Amount will be deemed to have consented to such assumption and the related Cure Amount.**

-43-

To the extent that any dispute with respect to the related Cure Amount with respect to any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is resolved or determined, including by entry of an order by the Court, in a manner that is not acceptable to the Debtors or Reorganized Debtors, as applicable, and the Plan Sponsor, then the Schedule of Assumed Executory Contracts shall be deemed amended to delete such Executory Contract or Unexpired Lease after such resolution or determination and service upon the counterparty to such Executory Contract or Unexpired Lease of a notice of rejection (the "Notice of Rejection"). Upon service of such Notice of Rejection, such Executory Contract or Unexpired Lease shall be deemed to be rejected without the need for further action or an order from the Court, and such counterparty may thereafter file a proof of claim in the manner set forth in Section 8.18 of the Plan.

Upon payment of the related Cure Amount, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults of any kind or nature, whether monetary or nonmonetary, including any Claims arising from indemnification obligations under any assumed Executory Contract or Unexpired Lease based on conduct, actions or inactions occurring or claims arising prior to the Effective Date, and including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, in each case arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **In recognition of the foregoing, any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

9.3     Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

9.4     Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.

Except as provided for in the Plan, Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be Filed with the Bankruptcy Court and served upon the Plan Administrator and Reorganized Debtors no later than (i) with respect to executory contracts and unexpired leases rejected pursuant to a Bankruptcy Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is sixty (60) days after the Effective Date (the "Rejection Bar Date"). All such Claims not Filed within such time will be forever barred from assertion against the Debtors and their Estates or the Reorganized Debtors and their Assets.

-44-

9.5     Treatment of Rejection Claims.

Any Allowed Claim arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall, pursuant to section 502(g) of the Bankruptcy Code, be an Allowed General Unsecured Claim.

9.6     Reinstatement and Continuation of Insurance Policies.

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, and notwithstanding Section 9.1 or any other provision of the Plan, each of the Debtors' insurance policies in existence on and as of the Effective Date, including, without limitation, any historical policies that are occurrence based, shall be Reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' insurance policies.

The Debtors' discharge and release from all Claims and Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors (including, without limitation, their officers and directors), the Reorganized Debtors (including, without limitation, their officers and directors) or any other person or entity; *provided* that the Reorganized Debtors shall not have any obligation to satisfy any deductible or self-insured retention obligation associated with any Disallowed Claim or any claim that has been discharged, satisfied, released hereunder.

**SECTION 10**
**EFFECT OF CONFIRMATION**

10.1    Continued Corporate Existence.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate (or limited liability company, as applicable) entity, with all the powers of a corporation (or limited liability company, as applicable), pursuant to the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation or bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such Amended Certificate and Bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

10.2    Continued Operations with an Enhanced Business Model.

(a)     From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

-45-

(b)      Without limiting the foregoing, on and after the Effective Date, the Reorganized Debtors shall continue to operate and perform under the existing Secondment Agreement and related Technology Rights Agreement executed prior to the Petition Date (which agreements shall be assumed under the Plan), consistent with their terms.  In connection with performance of the Secondment Agreement, the Reorganized Debtors shall exercise their rights to enhance their existing business model and revenue prospects.  Under the entitlements of the Technology Rights Agreement, the Debtors shall be entitled to continue to pursue this model even in the event that the Secondment Agreement expires or is terminated.

10.3      Discharge of Claims Against and Interests in the Debtors.

**Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a Holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest shall be deemed to have forever discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims and Interests and related rights, and liabilities that arose prior to the Effective Date, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed or Disallowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such Holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim and Interests and related rights and liabilities. Notwithstanding the foregoing, nothing in this Section 10.3 is intended or shall be deemed to (i) discharge the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) preclude and enjoin such Holders from enforcing such obligations.**

10.4      Injunction.

**No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan.  Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "Enjoined Matters"):**

> **a.      asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly;**

b.      commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

c.      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

d.      creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or

e.      asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.

Notwithstanding the foregoing, nothing in this Section 10.4 is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.

10.5    Releases.

(a)      **Releases by the Debtors**. As of the Effective Date, for good and valuable consideration, pursuant to the Plan and the Confirmation Order, the Debtor Released Parties are forever released the ("**Debtor/Estate Release**") by the Debtors and the Estates, and anyone claiming by or through the Debtors and the Estates, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including, without limitation, any and all Avoidance Actions), remedies and liabilities whatsoever, including, without limitation, any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that a Holder of any Claim or Interest would have been legally entitled to assert derivatively on behalf of the Debtors or otherwise by or through the Debtors, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct.

-47-

(b)      **Releases by Holders of Claims**. **As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "Third Party Release") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.**

(c)      **Each Person and Entity deemed to grant a release under this Section 10.5 shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.**

(d)      **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Section 10.5, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

10.6      Exculpation and Limitation of Liability.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of

-48-

acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created, executed or contemplated in connection with the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement, related agreements, instruments or other documents in the Chapter 11 Cases, or the administration of the Plan or the Assets to be distributed under the Plan; provided, however, that the exculpation provisions of this Section 10.6 shall not apply to acts or omissions constituting actual fraud, willful misconduct or gross negligence by any Exculpated Party, as determined by a Final Order. The Confirmation Order and the Plan shall serve as a permanent injunction against any Person or Entity commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Exculpated Parties that has been exculpated pursuant to this Section 10.6 of the Plan.

10.7   Subordination of Claim and Interests Under Section 510.

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and the Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code or otherwise.

10.8   Post-Confirmation Liability of the Plan Administrator.

The Plan Administrator, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that constitute willful misconduct, fraud, bad faith, or gross negligence (in each case only to the extent determined by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute willful misconduct, fraud, bad faith, or gross negligence. In addition, the Estates shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Plan Administrator and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Estates. To the extent the Plan Administrator indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as GUC Expenses. All rights of the Persons indemnified pursuant hereto shall survive confirmation of the Plan. For the avoidance of doubt,

the Plan Administrator shall not be deemed an Exculpated Party under this Plan, nor shall this provision be read to grant the Plan Administrator an exculpation under this Plan.

## SECTION 11
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Cases, the Plan and the Confirmation Order to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not a Disputed Claim), including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance or priority of any Claim and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed on or commenced after the Effective Date, including proceedings with respect to the rights of the Estates to recover Assets under sections 542 or 543 of the Bankruptcy Code;

(d)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)     ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(f)     following the Effective Date and consistent with section 1142 of the Bankruptcy Code, construe, take any action and issue such orders as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Estates following consummation in accordance with sections 524 and 1141 of the Bankruptcy Code;

(g)     determine and resolve any case, controversy, suit or dispute that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order, including the discharge, release, exculpation and injunction provisions

set forth in the Plan, or any Person's rights arising under or obligations incurred in connection therewith;

(h)      modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, or the Confirmation Order;

(i)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)      determine any other matters that may arise in connection with or relating to the Plan, the Plan Supplement, the Confirmation Order and the Bankruptcy Code;

(l)      determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      continue to enforce the automatic stay through the Effective Date;

(n)      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, and issues presented or arising under the Plan, including, but not limited to, disputes among Holders or with the Reorganized Debtor and arising under agreements, documents or instruments executed in connection with or governed by the Plan;

(o)      hear and determine any other matter relating to the Plan, its interpretation or enforcement; and

(p)      enter a final decree and close the Chapter 11 Cases.

### SECTION 12
### CONFIRMATION AND EFFECTIVENESS OF THE PLAN

12.1   Conditions to Confirmation of the Plan.

The following conditions precedent to the occurrence of Confirmation must be satisfied unless any such condition shall have been waived by the Debtors and the Plan Sponsor:

(a)      the Disclosure Statement having been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code;

(b)      the RSA shall be in full force and effect, and no party thereto shall have exercised any termination rights under the RSA;

-51-

(c)    no breach or failure to comply with the terms of the DIP Order shall have occurred and be continuing, or has been waived in writing the party having the right to assert such breach or failure;

(d)    the final version of the Plan, Plan Supplement, and any other documents, or schedules thereto, shall have been Filed in form and substance acceptable to the Debtors and the Plan Sponsor, each in its reasonable discretion;

(e)    the Debtors have not caused or permitted to occur the sale, disposal or other transfer of the Debtors' material assets; and

(f)    entry of the Confirmation Order in form and substance acceptable to the Debtors and the Plan Sponsor, each in its reasonable discretion.

12.2    Conditions to the Effective Date.

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived by the Debtors and the Plan Sponsor:

(a)    the Confirmation Order, in form and substance acceptable to the Debtors and the Plan Sponsor, each in its reasonable discretion, having become a Final Order;

(b)    the RSA shall be in full force and effect, and no party thereto shall have exercised any termination rights under the RSA;

(c)    the Plan and all related documents, including the Plan Supplement documents, in form and substance acceptable to the Debtors and the Plan Sponsor, each in its reasonable discretion, being approved by the Confirmation Order and executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith; *provided*, *however*, that, to the extent necessary or appropriate, the execution and delivery of any such documents may occur contemporaneously with the occurrence of the Effective Date;

(d)    the board of directors of the Reorganized Debtors, as applicable, shall have been selected and shall have agreed to serve;

(e)    the Debtor has not caused, or as to Insiders, permitted to occur, from and after the Petition Date an "ownership change" as such term is used in section 382 of the Code;

(f)    the receipt of any required regulatory approvals and material third party consents, or any other approvals, including approvals or consents required from any Governmental Unit, on terms reasonably satisfactory to the Plan Sponsor;

(g)    the issuance of an opinion by Plan Sponsor tax counsel, Proskauer Rose LLP that the transactions contemplated by the Plan, individually and in the aggregate, will not result in the application of Section 382(a) of the Code to Impac;

(h)      to the extent requested by the Plan Sponsor, the approval by the Bankruptcy Court and adoption of the Tax Preservation Rights Plan;

(i)      all other actions and documents necessary to implement the Plan shall have been effected or executed and shall be reasonably acceptable to the Debtors and the Plan Sponsor;

(j)      payment by the Plan Sponsor of the Exit Loan Facility on the terms of the Exit Loan Agreement;

(k)      the procurement of insurance policies deemed necessary or appropriate by the Plan Sponsor for the Reorganized Debtors, including without limitation, general liability, D&O, E&O and key man insurance policies; provided that the Plan Sponsor shall work diligently to procure such policies of insurance prior to the Confirmation Date so as to avoid any delay in the occurrence of the Effective Date; and

(l)      establishment and funding of the Administrative and Priority Claims Reserve and Professional Fee Escrow Account as provided for in the Plan.

12.3    Notice of Occurrence of Effective Date.

The Reorganized Debtors shall file and serve the Effective Date Notice within three (3) Business Days after the Effective Date.

12.4    Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.

The Debtors, with the consent of the Plan Sponsor, shall have the right to waive one or more of the conditions precedent set forth in Sections 12.1 and 12.2 above at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan.

12.5    Consequences of Non-Occurrence of Effective Date.

If the Confirmation Order is vacated or the Effective Date otherwise does not occur, (a) the Plan shall be null and void in all respects; and (b) any settlement or release of claims provided for hereby shall be null and void without further order of the Bankruptcy Court.

**SECTION 13**
**MISCELLANEOUS PROVISIONS**

13.1    Binding Effect of Plan.

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Administrator, any Holder of any Claim or Interest treated herein and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated

under the Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.

13.2     Severability.

Should the Bankruptcy Court determine prior to entry of the Confirmation Order, that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan. If any such ruling occurs, the Debtors shall not proceed with confirmation and/or consummation of the Plan absent the written consent of the Plan Sponsor. The Debtors reserve the right not to proceed with Confirmation and/or consummation of the Plan if any such ruling occurs.

13.3     Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, in particular the construction, implementation and enforcement of the Plan, and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

13.4     Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Dentons US LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Attn:   Tania M. Moyron, Esq.
        Van C. Durrer, II, Esq.
        tania.moyron@dentons.com
        van.durrer@dentons.com

1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Attn:   John D. Beck
        john.beck@dentons.com

-54-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel. 302-652-4100, Fax 302-652-4400
Attn:   Laura Davis Jones, Esq.
        Timothy Cairns
E-mail: ljones@pszjlaw.com
        tcairns@pszjlaw.com

If to the Plan Sponsor or the Reorganized Debtors:

Hildene re SPC, Ltd.
333 Ludlow Street
South Tower, 5th Floor
Stamford, Connecticut  06902
Attn:  Justin Gregory
E-mail:  corporateactions@hildenecap.com

with a copy to

Lowenstein Sandler LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Attn:  Daniel B. Besikof
E-mail:  dbesikof@lowenstein.com

13.5    Filing of Additional Documents.

On or before substantial consummation of the Plan, or such later time as may be authorized by the Bankruptcy Court, the Debtors are authorized to issue, execute, deliver or File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence implementation of the terms and conditions of the Plan.

13.6    Time.

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

13.7    Exhibits/Schedules.

All exhibits and schedules to the Plan and any Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth herein.

13.8    Defenses with Respect to Impaired or Unimpaired Claims.

Except as otherwise specifically provided in the Plan, nothing shall affect the parties' rights and/or legal and equitable defenses with respect to any Impaired or Unimpaired Claim, including, but not limited to, all rights relating to legal and equitable defenses to setoffs or recoupments against any Unimpaired Claim.

13.9    No Injunctive Relief.

No Claim shall be entitled to specific performance or other injunctive, equitable or other prospective relief except as may be specified in the Plan.

13.10    No Admissions.

Notwithstanding anything herein to the contrary, prior to the Effective Date, nothing contained in the Plan shall be deemed an admission by any party with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim; provided, however, that the provisions of the Plan shall be treated as admissions under the Federal Rules of Evidence upon the Effective Date.

13.11    Extension of Time.

Any period of time or deadline under the Plan may be extended by agreement of the parties affected thereby, or by order of the Bankruptcy Court upon good cause shown.

13.12    Conflict.

To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into between any of the Debtors and any other party, the terms of the Confirmation Order and Plan control the Disclosure Statement and any such agreement, and the provisions of the Confirmation Order control the terms of the Plan.

13.13    Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be, deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

13.14    Modifications and Amendments.

The Debtors, with the consent of the Plan Sponsor, may alter, amend, or modify the Plan or any Plan Document under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.

The Debtors shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court. A

-56-

Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

After the Confirmation Date and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtors or Reorganized Debtors, as applicable, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims or Interests in the Debtors under the Plan; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

13.15   Continuing Exclusivity and Solicitation Period.

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtors shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Plan and to solicit acceptances thereof, and any modifications or amendments thereto.

13.16   Revocation, Withdrawal, or Non-Consummation.

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or to be deemed to constitute a waiver or release of any Claims against, or any Interests in, the Debtors, or any Causes of Action by or against the Debtors or any Person or Entity, (ii) prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person or Entity.

13.17   Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

-57-

13.18   Tax Exemption.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Plan Administrator, if after the Effective Date, of the Debtors' Assets in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of Distributable GUC Assets by the Plan Administrator) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

13.19   Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

13.20   Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be April 22, 2026.

13.21   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of members, managers or other interest holders of the Debtors under the Plan, including, without limitation, (i) the distributions of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the members, managers or other interest holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or as soon as practicable following the Effective Date, the Plan Administrator shall be authorized to cancel, annul, and extinguish all Interests.

13.22   <u>Waiver of Fourteen-Day Stay.</u>

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

13.23   <u>Entire Agreement.</u>

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**SECTION 14**
**SUBSTANTIAL CONSUMMATION**

14.1   <u>Substantial Consummation.</u>

The Plan shall be deemed substantially consummated on the Effective Date under sections 1101 and 1127(b) of the Bankruptcy Code.

14.2   <u>Final Decree.</u>

On substantial consummation and performance of the Plan and Plan Documents, the Reorganized Debtors may request the Bankruptcy Court to enter a final decree closing the Chapter 11 Cases and such other orders that may be necessary and appropriate.

Dated: April 26 , 2026

Respectfully submitted,

Impac Mortgage Holdings, Inc.

/s/

George A. Mangiaracina
Chief Executive Officer

US_ACTIVE\132544249