## Exhibit 1

## Motion

4904-6079-3766.2 40173.00001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE USE OF CASH MANAGEMENT PROCEDURES, BANK
ACCOUNTS, AND CERTAIN PAYMENT METHODS; (II) PROHIBITING SETOFFS
AND FREEZING OF BANK ACCOUNTS; (III) MODIFYING REQUIREMENTS OF
SECTION 345(b) OF THE BANKRUPTCY CODE; (IV) GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY
CLAIMS; AND (V) GRANTING RELATED RELIEF**

Impac Mortgage Holdings, Inc. and the above-referenced affiliated debtors and debtors in

possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code,

§§ 101 et seq. (the "Bankruptcy Code"),[2] in these chapter 11 cases (the "Chapter 11 Cases"), by

and through their undersigned counsel, hereby file this motion (the "Motion"), pursuant to §§ 105,

345, and 363; Bankruptcy Rules 2015, 6003 and 6004(h); and Local Rules 2015-1 and 9013-1(m),

for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim

Order") and a final order (substantially in the form attached hereto as **Exhibit B**, the "Final

Order"): (i) authorizing the Debtors to continue to use (as such capitalized terms are defined

below) their existing Cash Management System, Bank Accounts, and certain Electronic Payment

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] All references to "§" or "section" herein are to sections of the Bankruptcy Code. All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

1

Methods; (ii) authorizing the Debtors to open or close Bank Accounts or establish new or different Electronic Payment Methods, all in the ordinary course of business; (iii) prohibiting applicable banks from offsetting against or freezing any of the Debtors' deposit accounts; (iv) modifying the requirements of § 345(b); (v) granting administrative expense status to postpetition intercompany claims; (vi) scheduling a final hearing; and (vii) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

## I.      PRELIMINARY STATEMENT

1.      The relief sought in this Motion is critical to ensure that the Debtors continue to have reliable and ready access to cash receipts so they can pay for the ordinary and necessary expenses of their businesses and to avoid harm to parties who entrusted funds to the Debtors. Without this relief, the Debtors would suffer immediate and irreparable harm because they would not be able to access cash receipts in order to fund business operations, thereby harming their businesses and depleting value from their estates to the detriment of creditors. Granting this Motion is necessary to ensure that the Debtors can pay their ordinary course operating expenses and, ultimately, provide the Debtors with an opportunity to administer their business as a going concern.

2.      In support of this Motion, the Debtors rely upon and refer this Court to the First Day Declaration (defined below).

3.      For these reasons, and as more fully described below, the Debtors request that this Court grant the relief requested herein.

## II.      JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of

February 29, 2012. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The predicates for the relief requested herein are §§ 105, 345, and 363; Bankruptcy Rules 2015, 6003 and 6004(h); and Local Rules 2015-1 and 9013-1(m).

### III.    BACKGROUND

#### A.    The Chapter 11 Cases

7.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§1107(a) and 1108.

8.      No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

9.      Additional information regarding the Debtors, including their businesses, and the events lending to the commencement of these Chapter 11 Cases is set forth in the *Declaration of George A. Mangiaracina In Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed concurrently herewith.

#### B.    The Debtors' Cash Management System, Bank Accounts, and Electronic Payment Methods

10.     Prior to the commencement of these Chapter 11 Cases, and in the ordinary course of their businesses, the Debtors maintained centralized cash management and monitoring

procedures (the "Cash Management System") to efficiently collect, monitor, transfer, and disburse funds generated by the Debtors' business operations.

11.     The Cash Management System allows the Debtors to operate their businesses and manage cash efficiently.

### i.     The Bank Accounts

12.     The Cash Management System is comprised of twenty (20) bank accounts (the "Bank Accounts") maintained at three (3) different financial institutions (the "Banks" and each individually a "Bank"). The Banks include Wells Fargo ("Wells Fargo"), Enterprise Bank & Trust ("Enterprise"), and Merchants Bank of Indiana.

13.     The Bank Accounts are identified and described on a schedule (the "Bank Account Chart") attached as **Exhibit C**. The Bank Account Chart contains key pieces of information about each of the Bank Accounts, including (a) the manner in which they are titled based on recent bank statements, which reflects the status of any specific Bank Account if used to hold funds for other parties; (b) last four digits for each account number; (c) the account type (*e.g.*, warehouse, checking, etc.); (d) the applicable Bank; (e) whether the accounts are subject to draft agreements (such as to fund customer property taxes) and the name of the drafting party; (f) recent balances; and (g) a short description of the purpose and use for each account. The Debtors may open additional accounts immediately after the Petition Date to the extent needed.

14.     The Debtors are in the process of transitioning their banking relationship away from Wells Fargo and over to Enterprise.  It is anticipated that most, if not all, of the Wells Fargo accounts will be closed within the sixty (60) days following the Petition Date.

15.    The Bank Accounts can be grouped into several categories as indicated in the Bank Account Chart. These include operating accounts; payroll accounts; money market accounts and business CD accounts, for restricted cash; and checking accounts used as clearing accounts.

16.    Certain of the Bank Accounts on the Bank Account Chart occasionally have in excess of $250,000.00 in the account depending on the timing of receipts and disbursements. The Bank Account Chart indicates recent balances shortly before the Petition Date.

### ii.    Sources of Cash Receipts and the Flow of Funds

17.    To assist the Court in understanding the Debtors' need to maintain their existing Cash Management System, a diagram reflecting the manner in which the Debtors have received funds and made disbursements is attached as **Exhibit D** (the "Cash Flow Diagram"). As reflected in the Cash Flow Diagram, which is intended to be representative of the manner in which funds have flowed into and out of the Debtors, the Debtors have borrowed funds from certain lines of credit from Hildene Re SPC, Ltd., acting for and on behalf of the account of SP 1, and receive funds from brokerage fee revenue, interest income, and recovery of outstanding advances.  The Debtors then use those funds to pay the Debtors' business operations, including making distributions to vendors, payroll, insurance premiums, rent, and taxes and fees.

18.    As events in these Chapter 11 Cases progress, the manner in which the Debtors receive funds may change.

### iii.    Disbursement Processes

19.    The Debtors use funds from the Bank Accounts to pay, among other things, the following items: (i) wages and employee benefits; (ii) amounts owed to contract counterparties and vendors; (iii) insurance premiums; (iv) rent; (v) taxes and fees; (vi) employee expense reimbursements; and (vii) general operating costs.

20.     As part of the Cash Management System, all disbursements are approved through the Debtors' standard procedures under which ultimate approval authority for disbursements is currently vested in the Debtors' Chief Executive Officer (the "CEO"), who also has check-signing authority. All disbursements, excluding scheduled payroll, over $10,000 require direct, rather than delegated, approval of the CEO. Using internal reports, including aged accounts payable summaries, the Treasury Manager, VP Accounting/Finance, or CEO directs the Debtors' financial accountants regarding which invoices to pay, in what amounts, and when to make such payments. The financial accountants then have the ability to select approved invoices for specific vendors that a Debtor intends to pay, and then run batches of checks and/or automatic clearing house ("ACH")/wire transfers on a specific date based on the directives.

21.     The Debtors' non-payroll disbursements are primarily, but not exclusively, made through a weekly ACH. Subordinate employees requesting disbursements are required to get the appropriate level of approval prior to review and approval by the CEO of all disbursements. Checks are typically printed twice a month on check stock that the Debtors have and can edit as necessary.

22.     The Debtors have filed a separate motion requesting permission to pay outstanding payroll and benefits for employees (the "Wage Motion"). The Wage Motion provides a detailed description of the timing and manner of relevant disbursements. The payroll is managed by the Debtors, along with Debtors' outside payroll firm – Regal Resources – with payroll and payments made electronically to all employees.

23.     The Bank Accounts are monitored daily for cash balances and placed in appropriate categories to show the Debtors' daily cash position. The Bank Accounts are reconciled monthly by a financial accountant and reviewed by the Debtors' treasury manager. A financial accountant

maintains a spreadsheet to reconcile the general ledger to the Bank Accounts each month. Discrepancies are investigated by a financial accountant.

24.     While the majority of disbursements are made by ACH, the Debtors' employees occasionally use their personal credit or debit cards in the ordinary course of business for certain expenses. Employees that used their personal credit card for business expenses are reimbursed for such payments. The Debtors currently do not maintain a corporate credit card program. However, the Debtors are evaluating the implementation of a corporate card program with Enterprise. While terms and credit limits have not yet been finalized, based on current spending levels, a $25,000 aggregate card limit is expected to be sufficient.

25.     The Debtors also use electronic funds transfers and ACH transactions (collectively, "Electronic Payment Methods") in the ordinary course of their businesses.

26.     As set forth in the First Day Declaration, the Debtors believe that their business operations and cash management capabilities would be negatively affected if they are required to modify their Cash Management System, close their Bank Accounts, and cease using Electronic Payment Methods. Opening new bank accounts and making disbursements solely by check would lead to delayed cash receipts and delayed disbursements—and the Debtors do not have sufficient cash reserves to maintain operations without a reliable and ready stream of cash receipts. Lastly, their business would further be negatively affected—and residential borrowers and mortgage lenders would be harmed—if the Debtors are not able to maintain their ordinary and customary practices.

27.     In addition, in the ordinary course of their business, the Debtors engage in intercompany transactions with each other (collectively, the "Intercompany Transactions") to fund operations. The Intercompany Transactions may result in intercompany receivables and payables

among the Debtors (the "<u>Intercompany Claims</u>"), which are, and will continue to be, accounted for and recorded in the Debtors' accounting systems.

## IV.     RELIEF REQUESTED

28.     By this Motion, the Debtors seek entry of the Interim Order followed by scheduling of the final hearing and then entry of an order granting this Motion on a final basis.

29.     Pursuant to the Interim Order, the Debtors request that the Court: (i) authorize continued use of the Cash Management System, Bank Accounts, and certain Electronic Payment Methods; (ii) authorize the Debtors to open or close Bank Accounts or establish new or different Electronic Payment Methods, all in the ordinary course of business; (iii) prohibit the Banks from offsetting against or freezing any of the Debtors' deposit accounts; (iv) modifying the requirements of § 345(b); (v) granting administrative expense status to postpetition intercompany claims; and (vi) for related relief.

## V.     BASIS FOR RELIEF

### A.     This Court Should Authorize the Debtors to Maintain Existing Bank Accounts

30.     The United States Trustee for Region 3's (the "<u>UST</u>") Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "<u>UST Guidelines</u>") require debtors in possession to, among other things, close all existing bank accounts and open new debtor in possession bank accounts; open a new set of books and records as of the commencement of a case; and make all disbursements of estate funds by check with a notation representing the reason for the disbursement. These requirements are intended to provide a clear line of demarcation

between prepetition and post-petition transactions and operations, and to prevent a debtor's inadvertent payment of prepetition claims.

31. The Debtors seek a waiver of the UST Guidelines' requirement for the closure of the Bank Accounts and opening of new post-petition bank accounts at depositories authorized by the UST. Maintenance of the Bank Accounts, Electronic Payment Methods, and the Cash Management System will greatly facilitate the Debtors' operations in chapter 11. The continued maintenance of the Bank Accounts, in particular, is of paramount importance because the accounts are used to collect revenues and effectuate payments to employees, vendors, and taxing authorities. Given the Debtors' narrow daily cash margins, strict enforcement of the UST Guidelines, including the requirement to close and open bank accounts, would cause a severe disruption in the Debtors' activities and would impair the Debtors' ability to operate under chapter 11 if receivables are delayed and critical vendors cannot be paid in a timely manner as a result.

32. Moreover, requiring the Debtors to close all Bank Accounts and reestablish entirely new accounts—and to otherwise disrupt the Cash Management System to comply with the UST Guidelines—would require considerable time and expense to the Debtors' estates, while affording limited benefits. Requiring the Debtors to replace all of their Bank Accounts by opening entirely new accounts and to change all payment information with their business partners would not only cause delay, confusion, and disruption in the Debtors' operations, but would also jeopardize the Debtors' relationships with these parties. Permitting the Debtors to continue using the Bank Accounts and the existing Cash Management System is, therefore, essential to a smooth and orderly transition of the Debtors into chapter 11 and to avoid disruption of their businesses.

33. To guard against improper transfers resulting from the post-petition honoring of prepetition checks, the Debtors will promptly notify the Banks not to honor checks drawn on the

9

Bank Accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtors request that they be authorized to maintain and continue the use of their Bank Accounts in the same manner and with the same account numbers, styles, and purposes as those employed prepetition.

34.     Moreover, no parties-in-interest will be harmed by the continued use of the Bank Accounts because the Debtors have implemented appropriate mechanisms to ensure that the Debtors will not make unauthorized payments on account of prepetition obligations. In addition, parties-in-interest and the UST can adequately monitor the flow of funds into and out of the Bank Accounts through the required monthly operating reports or such other reporting as may be required or ordered in these cases. In light of such protective measures and the disclosure obligations, the Debtors submit that the relief requested herein is in the best interests of the estates and creditors, and that compliance with the UST Guidelines would be unnecessary and inefficient.

35.     The Debtors further request that this Court authorize the Banks to receive, process, honor, and pay any and all checks, electronic fund transfer, credit card, ACH payments, wires, and other payment instructions, as well as drafts payable through, drawn, or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit card, or ACH payments are dated prior or subsequent to the Petition Date.

36.     In light of these common realities, Courts in this and other districts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del.

1992), *aff'd in relevant part*, 997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.*), 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). Indeed, the United States Court of Appeals for the Third Circuit has concluded that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

37.     As a result, the Debtors request authority to continue to use their Cash Management System, pursuant to §§ 105(a) and 363. More specifically, § 363(c)(1) authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing," and § 105(a) empowers this Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." The purpose of these sections is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or a court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). Thus, many courts have held that § 363(c) grants debtors authority to continue the routine transactions that are necessitated by their cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.*), 75 F.3d 1447, 1453 (10th Cir. 1996); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.*), 778 F.2d 617, 612 (11th Cir. 1985).

38.     As discussed above, the Debtors' Cash Management System was established and used consistently by the Debtors in the ordinary course of business prior to the Petition Date. Thus,

11

continuing the use of the Cash Management System maintains the ordinary course of the Debtors' business rather than requiring radical alteration that could be expensive, burdensome, and disruptive at a time when the Debtors' businesses are fragile due to the transition into chapter 11.

39. Moreover, the Cash Management System provides the Debtors with appropriate tools to manage their funds—and businesses—during these cases while also ensuring controls are in place to prevent assets from being used without adequate disclosure and permission. Indeed, as discussed above, the Cash Management System is not only predicated on the use of preexisting Bank Accounts and payment methods, but it also is premised on existing policies and procedures for when and how disbursements are authorized and made. Said another way, the Cash Management System already provides the type of controls necessary for chapter 11 while also being fully compatible with the transparency and disclosure that chapter 11 requires.

40. Accordingly, consistent with these provisions, the continued use of a banking and cash management system employed in the ordinary course of a debtor's prepetition business has been approved in a number of other cases in this District. *See*, *e.g.*, *In re Proterra Inc.*, Case No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023) (authorizing the debtors to continue using their prepetition cash management system); *In re Novan, Inc.*, Case No. 23-10937 (LSS) (Bankr. D. Del. July 17, 2023) (same); *In re Lordstown Motors Corp.*, Case No. 23-10831 (MFW) (Bankr. D. Del. June 27, 2023) (same); *In re KDC Agribusiness LLC*, Case No. 23-10786 (CTG) (Bankr. D. Del. June 16, 2023) (same); *In re PGX Holdings, Inc.*, Case No. 23-10718 (CTG) (Bankr. D. Del. June 4, 2023) (same); *In re AIG Financial Products Corp.*, Case No. 22-11309 (MFW) (Bankr. D. Del. Dec. 14, 2022) (same); *In re First Guaranty Mortgage Corporation, et al.*, Case No. 22-10584 (CTG) (Bankr. D. Del. Aug. 2, 2022) (same); *In re Am. Eagle Del. Holding Co. LLC*, Case No. 22-10028 (JKS) (Bankr. D. Del. Jan. 14, 2022) (same); *In re HighPoint Resources Corp.*, Case

No. 21-10565 (CSS) (Bankr. D. Del. Mar. 14, 2021) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (same); *In re Bumble Bee Parent, Inc.*, Case No. 19-12502 (LSS) (Bankr. D. Del. Dec. 18, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (same); *In re Dura Auto. Sys., LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Nov. 19, 2019) (same).[3]

41.    Even if any aspects of the Cash Management System and related relief would be considered outside of the ordinary course, the Court may approve it pursuant to § 363(b), which authorizes the Court to do so after notice and an opportunity for hearing. Relatedly, the Court has authority under § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Moreover, the relief requested is not in direct contravention of any specifically enumerated restriction or prohibition elsewhere in the Bankruptcy Code and is necessary to avoid harm to the Debtors, their creditors, and borrowers and others who have entrusted funds to the Debtors.

42.    Accordingly, the Debtors respectfully request that this Court allow them to maintain the Bank Accounts, maintain the Cash Management Procedures, and continue using their Electronic Payment Methods in the ordinary course as was done before the Petition Date and authorize and direct the Banks to process transactions in regard to the Bank Accounts. To the extent necessary, the Debtors request that the Court waive compliance with the UST Guidelines.

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

13

**B.**     **This Court Should Prohibit the Banks From Attempting to Setoff Against or Freeze the Debtors' Cash**

43.     Subject to § 553, the Banks should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in § 101(5)) that the Banks may have against any of the Debtors that arose before the Petition Date, absent further order of this Court. Given the Debtors' narrow daily cash margins, setoffs or freezing the Debtors' funds would have serious adverse consequences to business operations. Consequently, on an interim basis, the Court should prohibit the Banks from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of funds deposited in the Bank Accounts. *See, e.g., In re Gorham Paper and Tissue, LLC*, No. 20-12814 (Bankr. D. Del. Nov. 6, 2020) (interim order prohibiting bank from "offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim, as defined in § 101(5) of any such Bank against the Debtors . . . absent further order of the Court.").

**C.**     **Modifying Certain Requirements of Section 345(b) Is Warranted.**

44.     Section 345(a) authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," § 345(b) provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.* § 345(b).  Alternatively, the

14

debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[4]

Additionally, under the UST Guidelines, debtors in possession must, among other things, close

prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax

accounts at one or more authorized depositories.

45.     To the extent that the Cash Management System does not strictly comply with §

345, the Debtors seek a waiver of the deposit and investment requirements set forth therein for a

45-day period commencing upon entry of the Interim Order, without prejudice to the Debtors'

right to seek further modifications or extensions of time.   Courts may waive compliance with §

345 and the UST Guidelines for "cause."   In evaluating whether "cause" exists, courts have

considered a number of factors, including:

- the sophistication of the debtor's business;
- the size of the debtor's business operations;
- the amount of the investments involved;
- the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;
- the complexity of the case;
- the safeguards in place within the debtor's own business for ensuring the safety of the funds;
- the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
- the benefit to the debtor;
- the harm, if any, to the debtor;
- the harm, if any, to the estate; and
- the reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).  Here, these factors

warrant a modification of the requirements of § 345 to the extent the Cash Management System

does not already strictly comply with its requirements.

---

[4]  Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond.  31 U.S.C. § 9303.

46.     In addition, Local Rule 2015-2(b) authorizes this Court to grant interim relief from § 345(a) and (b) until a hearing on the merits of the Debtors' request to waive the investment requirements. Specifically, the Local Rule provides:

> Except as provided in Local Rule 4001-3, no waiver of the investment requirements of 11 U.S.C. § 345 shall be granted by the Court without notice and an opportunity for hearing in accordance with these Local Rules. However, if a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, or otherwise with cause shown, the Court may grant an interim waiver until a hearing on the debtor's motion can be held.

Local Rule 2015-2(b). Here, interim relief is warranted because the Debtors have over 200 creditors between them, and the Debtors operate a carefully managed cash management system.

47.     The Debtors' Bank Accounts comply with the requirements of § 345(b). Each of the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation and are held at well-capitalized and highly-rated banks. Moreover, Wells Fargo and Merchants Bank of Indiana are both designated as an authorized depository by the UST and conform to the UST Guidelines. Although the Bank Accounts at Enterprise are not held at an authorized depository, the Debtors believe that any funds that are deposited in the Enterprise Bank Accounts are secure.

48.     Therefore, cause exists to waive the requirements of § 345(b) and allow the Debtors to continue to maintain the Bank Accounts in the ordinary course of business. The Debtors request that they be permitted to maintain their Bank Accounts in accordance with their existing practices, for a 45-day period commencing upon entry of the Interim Order, without prejudice to the Debtors' right to seek further modifications or extensions of time.

**D.     The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

49.     To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without

16

reference to the Debtors' status as debtors-in-possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the case number.

50.      In other large chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See*, *e.g.*, *In re American Tire Distributors, Inc.*, 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (authorizing the debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re SiO2 Medical Prods, Inc.*, 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023); (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same).

**E.      The Court Should Provide Administrative Priority Status to Postpetition Intercompany Claims**

51.      As noted above, to facilitate operations, the Debtors engage in Intercompany Transactions that may result in Intercompany Claims. To ensure that each individual Debtor will not, at the expense of its own creditors, fund the operations of an affiliated entity, the Debtors respectfully request that the Court, pursuant to § 503(b)(1), authorize the Debtors to treat any Intercompany Claims arising after the Petition Date in the ordinary course of business as administrative expenses. If the Court authorizes the Debtors to treat any Intercompany Claims as administrative expenses, then each entity utilizing funds flowing through the Cash Management System and receiving services

through intercompany arrangements should continue to bear the ultimate repayment responsibility for such ordinary course transactions and their related share of the cost of services provided.

52. The Debtors track all fund transfers and can ascertain, trace, and account for the Intercompany Transactions as needed. If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted to the detriment of the Debtors and their creditors and other stakeholders.

53. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

## V.    REQUEST FOR FINAL HEARING

54. The Debtors request that the Court hold a hearing and enter the Interim Order on an emergency or expedited basis and schedule a hearing and grant this Motion on a final basis.

## VI.    RESERVATION OF RIGHTS

55. Nothing in the proposed orders or this Motion:  (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to § 365 or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action related to the Cash Management System or any of the Cash Management Banks; or (iv) shall be construed as a promise to pay a claim.

**VII.    COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND 604(h)**

56.    Lastly, the Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and 6004(h) is appropriate.

57.    Bankruptcy Rule 6003 provides:

> Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to: . . . (2) use, sell, or lease property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed; [or] (3) incur any other obligation regarding the property of the estate . . . .

Fed. R. Bankr. P. 6003(a)(2), (a)(3).

58.    The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

59.    As described in the Motion and supported by the First Day Declaration, the Debtors business have historically required reliable and ready access to cash receipts without interruption. Requiring the Debtors to discontinue use of the Cash Management System, switch Bank Accounts, and otherwise alter payment systems would lead to significant disruption (without real benefit).

60.    Consequently, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seek authority to

19

continue to maintain their banking and cash management practices in the ordinary course of business.

61.     The Debtors further seek a waiver of any stay of the effectiveness of the Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors submit that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtors and their estates.

62.     Accordingly, the Debtors respectfully submit that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

63.     Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VIII.   NOTICE

64.     Notice of this Motion shall be given to the following parties:  (a) the Office of the United States Trustee; (b) counsel for the Debtors' prepetition and postpetition lenders; (c) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## IX.   CONCLUSION

WHEREFORE, the Debtors respectfully request entry of interim and final orders: (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:     (302) 652-4100
Email:  ljones@pszjlaw.com
          debertenthal@pszjlaw.com
          tcairns@pszjlaw.com

-and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:     (213) 623-9300
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Tel:     (212) 768-6700
Email:  john.beck@dentons.com
          geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

22

## EXHIBIT A

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH MANAGEMENT PROCEDURES, BANK ACCOUNTS, AND CERTAIN PAYMENT METHODS; (II) PROHIBITING SETOFFS AND FREEZING OF BANK ACCOUNTS; (III) MODIFYING THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE; (IV) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS; AND (V) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Management Procedures, Bank Accounts, and Certain Payment Methods; (II) Prohibiting Setoffs and Freezing of Bank Accounts; (III) Modifying the Requirements of Section 345(b) of the Bankruptcy Code; (IV) Granting Administrative Expense Status to Postpetition Intercompany Claims; and (V) Granting Related Relief* [Docket No. ___] (the "Motion"),[2] filed by the Debtors and upon consideration of the First Day Declaration, and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), that the Debtors consent to entry of a final order under Article

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

III of the United States Constitution, and venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized in the reasonable exercise of their business judgment, to: (i) utilize their existing Cash Management System and to designate, maintain, and continue to use, with the same account numbers, the Bank Accounts and Electronic Payment Methods; and (ii) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors in possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date.

3.      The Banks are hereby authorized to continue to service and administer all Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course in a manner consistent with such practices prior to the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued, payable through, or drawn on such Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; *provided, however*, that any such checks, drafts, wires, or other electronic transfer requests issued by the Debtors before the Petition Date may be honored only if specifically authorized by an order of this Court.

4.      Further, the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the

2

Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors pursuant to this Order.

5.     The Debtors are authorized to make disbursements from Bank Accounts other than by check, including, without limitation, via wire transfer, debit card, or other forms of electronic transfer, to the extent consistent with the Debtors' existing cash management practices.

6.     The Debtors are authorized to open any new bank accounts, implement a new corporate credit card program, or close any Bank Accounts as the Debtors may deem necessary and appropriate; *provided, however*, that prior to opening any new bank accounts, implementing a new corporate credit card program, or closing any Bank Accounts, the Debtors shall provide notice of the Debtors' intentions with respect thereto to the UST and any statutory committee of creditors appointed in these cases. Any new domestic bank account opened by the Debtors shall be established at an institution insured by the FDIC that is organized under the laws of the United States or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limits set thereby, on the list of authorized bank depositories for the District of Delaware, except as may be ordered by the Court or consented-to by the UST.

7.     The Banks are authorized to charge and the Debtors are authorized to pay and honor, or allow to be deducted from the applicable Bank Account, both pre-petition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees").

8.     The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of forty-five (45) days from the date of this Interim Order (the "Extension

3

Period"), provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of section 345(b) in these Chapter 11 Cases.

9. For the Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the UST, within fifteen (15) days of the date of entry of this Interim Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the Debtors' employer identification numbers, (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases; and (d) serve a copy this Interim Order on each Bank. For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the UST, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository agreement in a form prescribed by the UST within thirty (30) days of the date of this Interim Order.

10. The Debtors are authorized, but not directed, to continue the Cash Management System and related practices as used in the ordinary course prior to the Petition Date. This includes, without limitation, authorization for the Debtors to disburse through any means or for the applicable party as indicated on the Bank Account Chart, attached as **Exhibit 1** hereto, to draft funds held in the Bank Accounts for borrower-related disbursements (*e.g.*, property taxes, hazard insurance, or similar disbursements from borrower funds) and other disbursements for funds held as custodian of or for another party, including loan investors who may have contractual entitlements to receipts received by the Debtors.

11. The Debtors are authorized on and after the Petition Date to engage in Intercompany Transactions in a manner consistent with their practices prior to the Petition Date; *provided, however*, that the Debtors may not make any Intercompany Transactions to non-debtor

4

affiliates or subsidiaries, or to Impac Secured Assets Corp. or IMH Assets Corp., absent further order of this Court. Upon entry of a final order, Intercompany Claims are hereby granted administrative expense status pursuant to § 503(b)(1) of the Bankruptcy Code.

12.     Nothing in this Order shall be construed to authorize any payment not provided for in any budget approved pursuant to any interim or final order authorizing the use of cash collateral and/or debtor-in-possession financing (the "DIP Orders").  To the extent there is any inconsistency between the terms of the DIP Orders and the terms of this Order or any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control.

13.     The Debtors shall, in the ordinary course of business, maintain accurate and detailed records of all transfers, including Intercompany Transactions, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

14.     Subject to § 553 of the Bankruptcy Code, the Banks are prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in § 101(5)) of any such Bank against the Debtors that arose before the Petition Date, absent further order of the Court.

15.     This Order shall be without prejudice to the Debtors' rights to seek a further interim waiver from this Court of such requirements or to seek approval from this Court to deviate from such requirement on a final basis.

16.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order, nor any payment made pursuant to this Order, shall constitute, or is intended to constitute, an admission as to the validity or propriety of any claim against the Debtors,

5

a waiver of the Debtors' rights to subsequently dispute such claim, or the assumption or adoption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.

17. Despite use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

18. To the extent applicable, the requirements set forth in in Bankruptcy Rule 6003 have been satisfied.

19. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20. The final hearing (the "Final Hearing") to consider the entry of a final order granting the relief requested in the Motion shall be held on _____ at __ _.m. (prevailing Eastern Time).

21. Any objection to the entry of a final order granting the relief requested in the Motion shall be filed with the Court and served on, no later than seven (7) days prior to the commencement of the Final Hearing: (a) the Debtors; (b) proposed counsel to the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, #2500, Los Angeles, CA 90017, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com), Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Geoffrey Miller (geoffrey.miller@dentons.com), and (ii) proposed local counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com) and Timothy Cairns (tcairns@pszjlaw.com); (c) counsel to the official committee of unsecured creditors, if one is appointed; and (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE

6

19801. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

22.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

## EXHIBIT 1

### Bank Accounts Chart

| Account Vesting (a) | Account Number (b) | Account Type (c) | Bank (d) | Draft Agreement (e) | Balance as of 4/25/2026 (f) | Purpose (f) |
|---|---|---|---|---|---|---|
| Wells Fargo Bank, N.A. | | | | | | |
| Copperfield Capital Corporation | ***5864 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Operating Account |
| Impac Funding Corp. | ***3944 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ 2,000.00 | Operating Account |
| Impac Mortgage Corp. | ***8262 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - LoanCare | $ 83,326.75 | Operating Account |
| Impac Mortgage Corp. | ***6970 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Impac Mortgage Corp. | ***4479 | Commercial Money Market | Wells Fargo Bank, N.A. | No | $ - | Restricted |
| Impac Mortgage Corp. | ***2415 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ - | Brokerage/Securities |
| Impac Mortgage Holding Asset Corp. | ***6707 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ 1.08 | Brokerage/Securities |
| Impac Mortgage Holding, Inc. | ***3977 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - Various State Agencies for Licensing | $ 40,513.80 | Operating Account |
| Impac Mortgage Holdings | ***3985 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***6568 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Enterprise Bank & Trust | | | | | | |
| Impac Mortgage Corp. | ***0239 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 292.73 | Operating |
| Impac Mortgage Corp. | ***1325 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 2,753,891.82 | Restricted - Life Insurance |

| Account Vesting | Account Number | Account Type | Bank | Draft Agreement | Balance as of 4/25/2026 | Purpose |
|---|---|---|---|---|---|---|
| Impac Mortgage Corp. | ***4312 | Business CD | Enterprise Bank & Trust | No | $ 1,152,126.71 | Restricted - Surety Bonds |
| Impac Mortgage Corp. | ***5704 | Commercial Fed Funds Sweep | Enterprise Bank & Trust | No | $ 12,850.71 | Sweep |
| Impac Mortgage Corp. | ***9018 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Impac Mortgage Corp. | ***4770 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Operating |
| Impac Mortgage Holdings, Inc. | ***4454 | Commercial DDA | Enterprise Bank & Trust | No | $ 7,602.00 | Operating |
| Impac Mortgage Holdings, Inc. | ***9203 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***4628 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Merchants Bank of Indiana | | | | | | |
| Impac Funding Corp. | ***8163 | Checking | Merchants Bank of Indiana | No | $ 289,278.02 | Remittance Clearing Account |

*These vendors submit ACH drafts to Impac. However, Wells Fargo Bank has identified such payment requests as "possible fraud" and must be manually approved by Impac. No draft agreement with these vendors has been executed.

*The Debtors intend to close all Bank Accounts other than those at Enterprise Bank & Trust.

## **EXHIBIT B**

Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE USE OF CASH MANAGEMENT
PROCEDURES, BANK ACCOUNTS, AND CERTAIN PAYMENT METHODS; (II)
PROHIBITING SETOFFS AND FREEZING OF BANK ACCOUNTS; (III) MODIFYING
THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE; (IV)
GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY CLAIMS; AND (V) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtors for Entry of Interim and Final Orders (I)
Authorizing the Use of Cash Management Procedures, Bank Accounts, and Certain Payment
Methods; (II) Prohibiting Setoffs and Freezing of Bank Accounts; (III) Modifying the
Requirements of Section 345(b) of the Bankruptcy Code; (IV) Granting Administrative Expense
Status to Postpetition Intercompany Claims; and (V) Granting Related Relief* [Docket No. ___]
(the "Motion"),[2] filed by the Debtors; and upon consideration of the First Day Declaration, and
the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the
*Amended Standing Order of Reference* from the United States District Court for the District of
Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding
pursuant to 28 U.S.C. § 157(b)(2), that the Debtors consent to entry of a final order under Article

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

III of the United States Constitution, and that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      The Debtors are authorized in the reasonable exercise of their business judgment, to: (i) utilize their existing Cash Management System and to designate, maintain, and continue to use, with the same account numbers, the Bank Accounts and Electronic Payment Methods on a post-petition basis; and (ii) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors in possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date.

3.      The Banks are hereby authorized to continue to service and administer all Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course in a manner consistent with such practices prior to the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued, payable through, or drawn on such Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; *provided, however*, that any such checks, drafts, wires, or other electronic transfer requests issued by the Debtors before the Petition Date may be honored only if specifically authorized by an order of this Court.

4. Further, the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors pursuant to this Order.

5. The Debtors are authorized to make disbursements from Bank Accounts other than by check, including, without limitation, via wire transfer, debit card, or other forms of electronic transfer, to the extent consistent with the Debtors' existing cash management practices.

6. The Debtors are authorized to open any new bank accounts, implement a new corporate credit card program, or close any Bank Accounts as the Debtors may deem necessary and appropriate; *provided, however*, that prior to opening any new bank accounts, implementing a new corporate credit card program, or closing any Bank Accounts, the Debtors shall provide notice of the Debtors' intentions with respect thereto to the UST and any statutory committee of creditors appointed in these cases. Any new domestic bank account opened by the Debtors shall be established at an institution insured by the FDIC that is organized under the laws of the United States or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limits set thereby, on the list of authorized bank depositories for the District of Delaware, except as may be ordered by the Court or consented-to by the UST.

7. The Banks are authorized to charge and the Debtors are authorized to pay and honor, or allow to be deducted from the applicable Bank Account, both pre-petition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees").

3

8. With regard to any Banks that are not authorized depositories pursuant to the UST Guidelines, within forty-five (45) days from the date of entry of this Order, the Debtors shall use their good-faith efforts to cause the bank to execute a Uniform Depository Agreement in a form prescribed by the UST.

9. The Debtors are authorized, but not directed, to continue the Cash Management System and related practices as used in the ordinary course prior to the Petition Date. This includes, without limitation, authorization for the Debtors to disburse through any means or for the applicable party as indicated on the Bank Account Chart, attached hereto as **Exhibit 1**, to draft funds held in the Bank Accounts for borrower-related disbursements (*e.g.*, property taxes, hazard insurance, or similar disbursements from borrower funds) and other disbursements for funds held as custodian of or for another party, including loan investors who may have contractual entitlements to receipts received by the Debtors.

10. The Debtors are authorized on and after the Petition Date to engage in Intercompany Transactions in a manner consistent with their practices prior to the Petition Date; *provided, however*, that the Debtors may not make any Intercompany Transactions to non-debtor affiliates or subsidiaries, or to Impac Secured Assets Corp. or IMH Assets Corp., absent further order of this Court. Intercompany Claims are hereby granted administrative expense status pursuant to § 503(b)(1) of the Bankruptcy Code.

11. Northing in this Order shall be construed to authorize any payment not provided for in any budget approved pursuant to any interim or final order authorizing the use of cash collateral and/or debtor-in-possession financing (the "DIP Orders"). To the extent there is any inconsistency between the terms of the DIP Orders and the terms of this Order or any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control.

4

12. The Debtors shall, in the ordinary course of business, maintain accurate and detailed records of all transfers, including Intercompany Transactions, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

13. Subject to § 553 of the Bankruptcy Code, the Banks are prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in § 101(5)) of any such Bank against the Debtors that arose before the Petition Date, absent further order of the Court.

14. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order, nor any payment made pursuant to this Order, shall constitute, or is intended to constitute, an admission as to the validity or propriety of any claim against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim, or the assumption or adoption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.

15. Despite use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

16. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

17. To the extent applicable, the requirements set forth in Bankruptcy Rule 6003 have been satisfied.

18. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**EXHIBIT 1**

**Bank Accounts Chart**

| Account Vesting | Account Number | Account Type | Bank | Draft Agreement | Balance as of 4/25/2026 | Purpose |
|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (f) |
| Wells Fargo Bank, N.A. | | | | | | |
| Copperfield Capital Corporation | ***5864 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Operating Account |
| Impac Funding Corp. | ***3944 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ 2,000.00 | Operating Account |
| Impac Mortgage Corp. | ***8262 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - LoanCare | $ 83,326.75 | Operating Account |
| Impac Mortgage Corp. | ***6970 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Impac Mortgage Corp. | ***4479 | Commercial Money Market | Wells Fargo Bank, N.A. | No | $ - | Restricted |
| Impac Mortgage Corp. | ***2415 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ - | Brokerage/Securities |
| Impac Mortgage Holding Asset Corp. | ***6707 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ 1.08 | Brokerage/Securities |
| Impac Mortgage Holding, Inc. | ***3977 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - Various State Agencies for Licensing | $ 40,513.80 | Operating Account |
| Impac Mortgage Holdings | ***3985 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***6568 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Enterprise Bank & Trust | | | | | | |
| Impac Mortgage Corp. | ***0239 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 292.73 | Operating |

1

| Account Vesting | Account Number | Account Type | Bank | Draft Agreement | Balance as of 4/25/2026 | Purpose |
|---|---|---|---|---|---|---|
| Impac Mortgage Corp. | ***1325 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 2,753,891.82 | Restricted - Life Insurance |
| Impac Mortgage Corp. | ***4312 | Business CD | Enterprise Bank & Trust | No | $ 1,152,126.71 | Restricted - Surety Bonds |
| Impac Mortgage Corp. | ***5704 | Commercial Fed Funds Sweep | Enterprise Bank & Trust | No | $ 12,850.71 | Sweep |
| Impac Mortgage Corp. | ***9018 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Impac Mortgage Corp. | ***4770 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Operating |
| Impac Mortgage Holdings, Inc. | ***4454 | Commercial DDA | Enterprise Bank & Trust | No | $ 7,602.00 | Operating |
| Impac Mortgage Holdings, Inc. | ***9203 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***4628 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Merchants Bank of Indiana | | | | | | |
| Impac Funding Corp. | ***8163 | Checking | Merchants Bank of Indiana | No | $ 289,278.02 | Remittance Clearing Account |

*These vendors submit ACH drafts to Impac. However, Wells Fargo Bank has identified such payment requests as "possible fraud" and must be manually approved by Impac. No draft agreement with these vendors has been executed.

*The Debtors intend to close all Bank Accounts other than those at Enterprise Bank & Trust.

## EXHIBIT C

**Cash Flow Diagram**

# Flow of Funds



Flow of Funds Diagram

**\*\*\*5704** Impac Mortgage Corp. Enterprise Bank & Trust

Master Servicing Income

**\*\*\*4454** Impac Mortgage Holdings, Inc Enterprise Bank & Trust

**\*\*\*9018** Impac Mortgage Corp. Enterprise Bank & Trust

IMC Payroll

**\*\*\*2415** Impac Mortgage Corp Wells Fargo Bank

**\*\*\*5704** Impac Mortgage Corp. Enterprise Bank & Trust

**\*\*\*4770** Impac Mortgage Corp. Enterprise Bank & Trust

Bank Fees

\*\*5704 is a sweep/transfer back and forth from \*\*4454 and \*\*4770

Interest Income

**\*\*\*6707** Impac Mortgage Holding Asset Corp Wells Fargo Bank

**\*\*\*1325** Impac Mortgage Corp Enterprise Bank & Trust

**\*\*\*4312** Impac Mortgage Corp Enterprise Bank & Trust

Lending Activity

**\*\*\*4628** Impac Mortgage Holdings, Inc Enterprise Bank & Trust

IMH Payroll

Bridge Loan Proceeds

**\*\*\*4454** Impac Mortgage Holdings, Inc Enterprise Bank & Trust

**\*\*\*9203** Impac Mortgage Holdings, Inc Enterprise Bank & Trust

Vendor Payments

401(k)

**\*\*\*8163** Impac Funding Corp Merchants Bank of Indiana

Health Benefits

Low/Zero Activity Accounts on Bottom*

**\*\*\*5864** Copperfield Capital Corporation Wells Fargo Bank

**\*\*\*6970** Impac Mortgage Corp Wells Fargo Bank

**\*\*\*0239** Impac Mortgage Corp. Enterprise Bank & Trust

**\*\*\*8262** Impac Mortgage Corp Wells Fargo Bank

**\*\*\*3944** Impac Funding Corp Wells Fargo Bank

**\*\*\*3985** Impac Mortgage Holdings Wells Fargo Bank

**\*\*\*6568** Impac Mortgage Holdings, Inc Wells Fargo Bank

**\*\*\*4479** Impac Mortgage Corp. Wells Fargo Bank

**\*\*\*3977** Impac Mortgage Holding, Inc Wells Fargo Bank

**EXHIBIT D**

**Bank Accounts Chart**

| Account Vesting | Account Number | Account Type | Bank | Draft Agreement | Balance as of 4/25/2026 | Purpose |
|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (f) |
| Wells Fargo Bank, N.A. | | | | | | |
| Copperfield Capital Corporation | ***5864 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Operating Account |
| Impac Funding Corp. | ***3944 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ 2,000.00 | Operating Account |
| Impac Mortgage Corp. | ***8262 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - LoanCare | $ 83,326.75 | Operating Account |
| Impac Mortgage Corp. | ***6970 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Impac Mortgage Corp. | ***4479 | Commercial Money Market | Wells Fargo Bank, N.A. | No | $ - | Restricted |
| Impac Mortgage Corp. | ***2415 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ - | Brokerage/Securities |
| Impac Mortgage Holding Asset Corp. | ***6707 | Money Market Combined Account | Wells Fargo Bank, N.A. | No | $ 1.08 | Brokerage/Securities |
| Impac Mortgage Holding, Inc. | ***3977 | WellsOne Account | Wells Fargo Bank, N.A. | *Yes - Various State Agencies for Licensing | $ 40,513.80 | Operating Account |
| Impac Mortgage Holdings | ***3985 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***6568 | WellsOne Account | Wells Fargo Bank, N.A. | No | $ - | Payroll |
| Enterprise Bank & Trust | | | | | | |
| Impac Mortgage Corp. | ***0239 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 292.73 | Operating |
| Impac Mortgage Corp. | ***1325 | Commercial Fed Funds MMA | Enterprise Bank & Trust | No | $ 2,753,891.82 | Restricted - Life Insurance |

| Account Vesting | Account Number | Account Type | Bank | Draft Agreement | Balance as of 4/25/2026 | Purpose |
|---|---|---|---|---|---|---|
| Impac Mortgage Corp. | ***4312 | Business CD | Enterprise Bank & Trust | No | $ 1,152,126.71 | Restricted - Surety Bonds |
| Impac Mortgage Corp. | ***5704 | Commercial Fed Funds Sweep | Enterprise Bank & Trust | No | $ 12,850.71 | Sweep |
| Impac Mortgage Corp. | ***9018 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Impac Mortgage Corp. | ***4770 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Operating |
| Impac Mortgage Holdings, Inc. | ***4454 | Commercial DDA | Enterprise Bank & Trust | No | $ 7,602.00 | Operating |
| Impac Mortgage Holdings, Inc. | ***9203 | Commercial DDA | Enterprise Bank & Trust | No | $ - | Accounts Payable |
| Impac Mortgage Holdings, Inc. | ***4628 | Commercial DDA | Enterprise Bank & Trust | Yes - Paylocity | $ - | Payroll |
| Merchants Bank of Indiana | | | | | | |
| Impac Funding Corp. | ***8163 | Checking | Merchants Bank of Indiana | No | $ 289,278.02 | Remittance Clearing Account |

*These vendors submit ACH drafts to Impac. However, Wells Fargo Bank has identified such payment requests as "possible fraud" and must be manually approved by Impac. No draft agreement with these vendors has been executed.

*The Debtors intend to close all Bank Accounts other than those at Enterprise Bank & Trust.