# Exhibit 1

# Motion

4899-9824-2214.1 40173.00001

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC.,<br>*et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING, (II) ESTABLISHING PLAN AND DISCLOSURE STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED PROCEDURES, (III) APPROVING THE PREPETITION SOLICITATION PROCEDURES, (IV) APPROVING THE NOTICE OF COMMENCEMENT & CONFIRMATION HEARING NOTICE, AND FINDING NOTICE SUFFICIENT, (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) WAIVING THE REQUIREMENT OF FILING SCHEDULES, STATEMENTS OF FINANCIAL AFFAIRS, RULE 2015.3 REPORTS AND SECTION 341 MEETING OF CREDITORS, AND (VII) GRANTING RELATED RELIEF**

Impac Mortgage Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion"), pursuant to §§ 105, 1107, 1108, 1125, 1126, 1128 and 1129 of chapter 11 of title 11 of the United States Code, §§ 101 et seq. (the "Bankruptcy Code").[2]  In support thereof, the Debtors rely upon the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Pleadings* filed contemporaneously herewith (the "First Day Declaration"), and respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] All references to 'section' or '§' herein pertain to the Bankruptcy Code.

1

**I.**

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the following relief:

    a.   scheduling a combined hearing (the "Confirmation Hearing") to consider (a) the adequacy of the *Disclosure Statement for the Prepackaged Chapter 11 Plan of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as amended, supplemented or otherwise modified from *time* to time, the "Disclosure Statement"), and (b) confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as amended, supplemented or otherwise modified from time to time, the "Plan") not less than 28 days after filing the Plan and Disclosure Statement;[3]

    b.   establishing a deadline for objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving procedures and a deadline for the filing of a combined pleading in support of confirmation of the Plan and in reply to any objections to the Disclosure Statement or Plan (the "Reply Deadline");

    c.   establishing a deadline to file a plan supplement (the "Plan Supplement Filing Deadline");

    d.   approving the prepetition procedures regarding votes to accept or reject the Plan (the "Solicitation and Voting Procedures"), including the forms of Ballots (as defined below) and the Opt-In Release;

    e.   approving the procedures and standard assumptions used for tabulating Ballots (as defined below) (the "Tabulation Procedures");

    f.   approving the form of Ballots, substantially in the form attached to the Order as **Exhibits 1A** and **1B**, and the form of the Opt-In Release Form, substantially in the form attached to the Order as **Exhibit 2**;

    g.   approving the form and manner of the notice of commencement of these Chapter 11 Cases, the Confirmation Hearing, and the Objection Deadline (the "Notice of Commencement & Confirmation Hearing Notice"), substantially in the form attached to the Order as **Exhibit 3**, and the form and manner of the publication of the Confirmation Hearing (the "Publication Notice"), substantially in the form attached to the Order as **Exhibit 4,** and not requiring

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings as ascribed to them in the Plan.

2

service of the Notice of Commencement & Confirmation Hearing Notice on the individuals that received notice of the Data Breach (as defined herein);

h. approving the forms of notices to be sent to counterparties to Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned pursuant to the Plan (an "Assumption Notice"), and the procedures, including the applicable objection deadline, for the assumption of executory contracts and unexpired leases under the Plan (the "Executory Contract Procedures"), substantially in the form attached to the Order as **Exhibit 5**;

i. conditionally directing the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") not to convene a meeting of creditors pursuant to § 341 of the Bankruptcy Code within seventy-five days of the Petition Date (as defined below);

j. conditionally waiving the requirements that the Debtors file schedules of assets and liabilities (the "Schedules"), the statements of financial affairs ("SOFAs"), and the initial reports of financial information with respect to which their chapter 11 estates hold a controlling interest, as set forth in Bankruptcy Rule 2015.3 (the "2015.3 Reports"); and

k. granting related relief.

2. In connection with the foregoing, the Debtors respectfully request that the Court approve the following schedule of proposed dates (the "Proposed Confirmation Schedule"), subject to the Court's availability.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Voting Record Date[4] | April 22, 2026 | The date for determining (i) which holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan, opt-in to the Third-Party Release, and receive Solicitation Packages in connection therewith, (ii) which holders of Claims and Interests in the Non-Voting Classes are entitled to opt-in to the Third-Party Release, and (iii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of the respective Claim. |

---

[4] The "Voting Record Date" is the date as of which a holder of record of a claim or interest entitled to vote on the Plan must have held such claim or interest to cast a vote to accept or reject the Plan.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Filing of Plan & Disclosure Statement | Petition Date | |
| Confirmation Hearing | Not less than 28 days after filing the Plan and Disclosure Statement | The date for the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement. |
| Publication Deadline | Two (2) business days following entry of the Confirmation Procedures Order Order (or as soon as reasonably practicable thereafter) | The last date by which the Debtors will submit the Notice of Commencement & Confirmation Hearing Notice in a format modified for publication. |
| Plan Supplement Filing Date | Not less than fourteen (14) days before the Confirmation Hearing | The date by which the Debtors shall file the Plan Supplement. |
| Confirmation Objection Deadline | Not less than seven (7) days (at 4:00 p.m. prevailing Eastern Time) before the Confirmation Hearing | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| Opt-In Deadline | Not less than seven (7) days (at 4:00 p.m., prevailing Eastern Time) before the Confirmation Hearing | The deadline by which all opt-in forms (the "Opt-In Forms") must be properly executed, completed, and electronically submitted so that they are **actually received** by the Claims Agent. |
| Confirmation Brief and Plan and Disclosure Statement Objection Reply Deadline | Not less than 2 days in advance of the Confirmation Hearing | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan and deadline by which replies to objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court. |

## II.

## <u>JURISDICTION AND VENUE</u>

3. The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested are §§ 105, 1107, 1108, 1125, 1126, 1128 and 1129 of the Bankruptcy Code; rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and rules 2002-1, 3017-1, 9006-1, and 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## III.

## BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108.

7.      No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

8.      Additional information regarding the Debtors, including their businesses, and the events leading to the commencement of these Chapter 11 Cases, is set forth in the First Day Declaration filed concurrently herewith.

## IV.

## PREPACKAGED PLAN OVERVIEW

9.      As of the Petition Date, the Debtors continue to operate and focus on their pre-existing mortgage broker business. The Plan implements, among other things, primarily a balance sheet restructuring agreed upon by the Debtors, the Plan Sponsor (which is also the Debtors' largest and most senior prepetition secured creditor) and its affiliates, as well as holders of 100% of the

5

Debtors' subordinated notes. The Plan provides for recoveries to most classes of creditors, including general unsecured creditors.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Administrative Claims | Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Reorganized Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date; and (ii) the first Business Day after the date that is fifteen (15) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable. | Unclassified— not entitled to vote |
| Unclassified | DIP Claims | Proceeds of the Exit Loan Facility shall be used to refinance the DIP Claims on account of, in full and complete discharge of, and in exchange for, such DIP Claims. | Unclassified— not entitled to vote |
| Unclassified | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, release and discharge of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim; or (b) such other treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code. | Unclassified— not entitled to vote |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Professional Fee Claims | Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to the Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. | Unclassified—not entitled to vote |
| 1 | Priority Non-Tax Claims | The legal, equitable and contractual rights of the Holders of Allowed Class 1 Priority Non-Tax Claims are unaltered by the Plan. Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, release and discharge of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim. | Unimpaired—deemed to accept the Plan, not entitled to vote |
| 2(a) | Enterprise Claims | The Enterprise Obligations will be Reinstated under the Plan, subject to a consensual five-year extension of the maturity date on the Enterprise Obligations. | Unimpaired—deemed to accept the Plan, not entitled to vote |
| 2(b) | Unimpaired Secured Claims | Each Holder of an Allowed Unimpaired Secured Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange | Unimpaired—deemed to accept the Plan, not entitled to vote |

7

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| | | for, such Allowed Unimpaired Secured Claims, at the option of the Reorganized Debtors: (i) payment in full in Cash; (ii) the collateral securing its Allowed Unimpaired Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Unimpaired Secured Claim; or (iv) such other treatment rendering such Allowed Unimpaired Secured Claim unimpaired. | |
| 3 | Senior Indebtedness Claims | Each Holder of an Allowed Senior Indebtedness Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Senior Indebtedness Claim, its pro rata share of the Plan Sponsor Common Stock on the terms set forth in Section 5.2(b) of the Plan. | Impaired – entitled to vote |
| 4 | Subordinated Notes Claims | Each Holder of a Subordinated Notes Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Subordinated Notes Claims, its pro rata share in the Contingent Payment Certificate. | Impaired – entitled to vote |
| 5 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive on account of, in full and complete satisfaction, release and discharge of, and in exchange for its Allowed General Unsecured Claim, a Pro Rata share of the GUC Consideration after payment in full of all GUC Expenses. | Impaired – deemed to reject |
| 6 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall, at the option of the applicable Debtor or Reorganized Debtor, be adjusted, Reinstated, or canceled and released without any distribution; except as necessary or appropriate for tax efficiency; | Impaired – deemed to reject |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| | | provided, however, that no Distribution will be in Cash. | |
| 7 | 510(b) Claims | 510(b) Claims are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. On the Effective Date, each 510(b) Claim shall be canceled, released and discharged and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) Claims. Accordingly, Holders of 510(b) Claims are not entitled to vote to accept or reject the Plan. | Impaired – deemed to reject |
| 8(a) | Interests in Impac | All Interests in Impac will be cancelled, released, and extinguished, and will be of no further force or effect, and the Holders of Interests in Impac will receive no distribution on account of such Interests. | Impaired – deemed to reject |
| 8(b) | Interests in Debtor Subsidiaries | On the Effective Date, Interests in the Debtor Subsidiaries shall be Reinstated without any distribution. | Unimpaired – deemed to accept |

10. Based on the foregoing, the Debtors solicited votes to accept or reject the Plan from holders of Claims in Classes 3 and 4 (the "Voting Classes"). The Debtors did not solicit votes from holders of Claims and Interests in Classes 1, 2(a), 2(b), 5, 6, 7, 8(a), and 8(b) (each a "Non-Voting Class" and collectively, the "Non-Voting Classes") because they are either unimpaired and deemed to accept the Plan, or impaired and deemed to reject or accept the Plan, as applicable. The Debtors were not required to solicit votes from the Non-Voting Classes under § 1126.

11. The Proposed Confirmation Schedule above sets forth the timetable for the Chapter 11 Cases, including with respect to the solicitation, confirmation, and consummation of the Plan. The Debtors respectfully submit that the timetable in the Proposed Confirmation Schedule will

9

allow the Debtors to move through the Chapter 11 Cases to an expeditious resolution and support the continued operation of the Debtors' businesses as a going concern.

12. The Debtors submit that confirming the Plan on the Proposed Confirmation Schedule is in the best interests of the Debtors, their estates, and all stakeholders; accordingly, the Motion should be approved.

**V.**

**BASIS FOR RELIEF**

**A. THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT AT THE CONFIRMATION HEARING.**

13. Pursuant to § 1126(b)(2), the acceptance or rejection of a plan may be solicited from a holder of a claim or interest if the solicitation was commenced prior to the commencement of the bankruptcy case and was in compliance with any applicable nonbankruptcy laws, rules, or regulations governing the adequacy of disclosure of such solicitation. If no such law, rule, or regulation exists, the solicitation is valid if it provided adequate information as defined in § 1125(a). *See* 11 U.S.C. §§ 1125(a)(1) (defining "adequate information"); 1126(b)(2). As set forth more fully below, the Debtors' solicitation of acceptances with respect to the Plan complies with applicable nonbankruptcy law, which does not impose restrictions on solicitation. Accordingly, at the Confirmation Hearing, the Debtors will request that the Court find the Disclosure Statement contains "adequate information" as defined in § 1125(a).

14. As will be demonstrated at the Confirmation Hearing, the Disclosure Statement contains "adequate information" as defined in § 1125(a) because it is both extensive and comprehensive and includes sufficient detail for a Holder of a Class 3 or Class 4 Claim to make an informed decision concerning whether to vote to accept or reject the Plan. Specifically, while the determination of what constitutes "adequate information" is based upon the facts and

10

circumstances of each case, the critical focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here. *See* 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records[...]."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

15.    Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Voting Procedures and Requirements | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | § 3 |
| Confirmation Procedures | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | § 3 |
| Feasibility Analysis | An overview of the Debtors' ability to meet their respective obligations under the Plan. | § 3 |
| Business Overview and Debtors' Corporate and Capital Structure | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | § 4 |

11

| Overview of Anticipated Chapter 11 Cases, including Circumstances Leading to These Chapter 11 Cases | An overview of (i) the prepetition challenges faced by the Debtors' business, the Debtors' response thereto, and the Debtors' efforts to continue operations while developing the Plan; and (ii) anticipated events during the Chapter 11 Cases. | §§ 4, 5 |
|---|---|---|
| Certain Factors to be Considered | An overview of certain risks associated with the Debtors' business, the Plan, and the Effective Date Transactions contemplated thereunder, forward-looking statements within the Disclosure Statement, and an overall disclaimer regarding the information provided in the Disclosure Statement. | § 13 |
| Certain Securities Laws Matters | A description of the applicability of § 1145 of the Bankruptcy Code and the issuance of new equity interests pursuant to the Plan. | § 14 |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | § 15 |
| Conclusion and Recommendation | A recommendation by the Debtors to Holders of Claims in the Voting Classes to vote to accept the Plan. | § 18 |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit B |
| Financial Projections | An overview of the Debtors' financial projections for the next [31 months]. | Exhibit C |
| Corporate Organizational Chart | A chart depicting the organizational structure of the Debtors. | Exhibit D |

16. In addition, the Disclosure Statement and the Plan were subject to extensive review and comment by the members of the Voting Classes, who are also the Plan Sponsor or affiliates thereof. Moreover, each of the Voting Classes has affirmatively voted to accept the Plan. Accordingly, the Debtors submit that the Disclosure Statement contains adequate information

12

within the meaning of § 1125(a) of the Bankruptcy Code and request that it be approved at the Confirmation Hearing.

**B.     THE COURT SHOULD APPROVE THE PROPOSED CONFIRMATION SCHEDULE AND PROPOSED CONFIRMATION HEARING AND NOTICE.**

17.     **<u>The Court Should Approve a Combined Hearing</u>**. The Court may combine the hearing on the adequacy of the disclosure statement with the confirmation hearing and the Debtors' request for a combined hearing is consistent with the practice for prepackaged cases and will facilitate an expeditious and efficient reorganization that will promptly permit the Debtors to emerge from Chapter 11. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing); *see also In re iRobot Corp.,* No. 25-12197 (BLS) (Bankr. D. Del. Dec. 14, 2025) (approving combined confirmation and disclosure statement hearing on prepackaged plan); *In re Wag Group, Co.*, No. 25-11358 (TMH) (Bankr. D. Del. Jul. 21, 2025) (same); *In re Wheel Pros, LLC.*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 8, 2024) (same); *In re Novation Companies Inc.*, No. 23-11153 (JTD) (Bankr. D. Del. Oct. 6, 2023) (same); *In re Adara Enterprises Corp.*, No. 21-10736 (JKS) (Bankr. D. Del. Apr. 27, 2021) (same); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (same).

18.     The Debtors seek a Confirmation Hearing to consider approval of the Disclosure Statement and confirmation of the Plan, to be held, subject to the Court's availability, not less than 28 days after filing the Plan and Disclosure Statement.

19.     The Debtors submit that a combined hearing on the Disclosure Statement and Plan would promote judicial economy and expedite the reorganization of the Debtors for the benefit of their economic stakeholders, vendors, customers, and employees.

20.     Accordingly, the Debtors request that the Court schedule a single Confirmation Hearing to consider the Disclosure Statement and Plan. In so doing, the Court will enable the Debtors to minimize the adverse effects that the chapter 11 filings might have on the Debtors' business and going-concern value, as other courts in this district have acknowledged by granting similar relief.

21.     **The Court Should Approve the Proposed Schedule for the Confirmation Hearing**. Bankruptcy Rules 2002(b) and 3017(a) require that the Debtors provide twenty-eight (28) days' notice by mail to all creditors, equity security holders, and other parties in interest of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to this Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1). Section 1128(a) further provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Local Rule 3017-1 provides that "[u]nless ordered otherwise, the notice served under Fed. R. Bankr. P. 2002(b) and 3017 must provide at least 35 days' notice of the disclosure statement hearing and at least 28 days' notice of the deadline to object to approval of the disclosure statement." Local Rule 3017-1. Additionally, § 105(d)(2)(B)(vi) permits the Court to combine the hearing on the adequacy of a disclosure statement with the hearing on confirmation of the related plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi).

22.     The Debtors respectfully submit that it is appropriate to set the Confirmation Hearing, subject to the Court's availability, as not less than 28 days after filing the Plan and Disclosure Statement, for at least three reasons. First, the milestones set forth in the DIP facility documents require the Debtors to seek a combined hearing on the Plan and Disclosure Statement and obtain confirmation of the Plan on or before 45 days from the Petition Date (*i.e.*, by June 10, 2026), and to substantially consummate the Plan on or before 60 days from the Petition Date (*i.e.*,

by June 25, 2026). The Debtors therefore request that the Court set the date for the Confirmation Hearing as not less than 28 days after filing the Plan and Disclosure Statement (or as soon thereafter as possible) to enable the Debtors to meet the deadlines set forth in the DIP Credit Agreement.

23.     Second, the proposed scheduling is appropriate because the Debtors have already substantially completed one of the most significant and complex tasks required to effectuate a successful reorganization—the negotiation, formulation, and solicitation of a consensual joint chapter 11 plan of reorganization. Specifically, the Debtors distributed the Solicitation Packages to the Voting Class on April 24, 2026. The Disclosure Statement contained in the Solicitation Package notified parties of a projected hearing date to consider the adequacy of the information in the Disclosure Statement and confirmation of the Plan once these Chapter 11 Cases were commenced. Therefore, each Holder of Impaired Claims received at least 28 days' notice of the proposed Confirmation Hearing, and, significantly, all Holders of Claims entitled to vote have already submitted Ballots accepting the Plan, evidence that sufficient notice was actually received by all impacted stakeholders. The Debtors have received sufficient votes in favor of the Plan from the Voting Classes to confirm the Plan, consistent with § 1126(c). Accordingly, no party should require additional time, and there is no reason to delay consideration of the adequacy of the Disclosure Statement and confirmation of the Plan.

24.     Third, a combined hearing on the Disclosure Statement and Plan will allow the Debtors to effectuate their restructuring expeditiously, preserve and maximize value for all parties, and ensure minimal disruption to the Debtors' businesses. The proposed schedule will serve to minimize administrative expenses—thereby benefiting parties in interest in the Chapter 11 Cases, which is the hallmark of a prepackaged plan of reorganization.

25.     Courts in this and other districts have routinely permitted combined hearings in similar fashion in other prepackaged chapter 11 cases. *See, e.g., In re iRobot Corp.,* No. 25-12197 (BLS) (Bankr. D. Del. Dec. 14, 2025) (scheduling a combined hearing 39 days from petition date); *In re Wag Group, Co.*, No. 25-11358 (TMH) (Bankr. D. Del. Jul. 21, 2025) (scheduling a combined hearing 40 days from petition date); *In re Wheel Pros, LLC.*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 8, 2024) (scheduling a combined hearing 37 days from petition date); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (scheduling a combined hearing 39 days from petition date); *In re Pa. Real Estate Inv. Tr.*, No. 20-12737 (KBO) [D.I. 83] (Bankr. D. Del. Nov. 3, 2020) (scheduling a combined hearing 23 days from petition date); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (scheduling a combined hearing 15 days from petition date); *In re Joerns Woundco Holdings, Inc.*, No. 19-11401 (JTD) [D.I. 66] (Bankr. D. Del. June 26, 2019) (scheduling a combined hearing 31 days from petition date); *In re Arsenal Energy Holdings LLC*, No. 19-10226 (BLS) [D.I. 30] (Bankr. D. Del. Feb. 6, 2019) (scheduling a combined hearing 9 days from petition date); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) [D.I. 47] (Bankr. D. Del. Jan. 31, 2018) (scheduling a combined hearing 29 days from petition date).

26.     The Debtors also request that the Court set the Objection Deadline for filing responses or objections to approval of the Disclosure Statement or confirmation of the Plan as 4:00 p.m. (prevailing Eastern Time) no less than seven (7) days before the Confirmation Hearing. The proposed Objection Deadline will provide holders of Claims and Interests with sufficient notice of the deadline, while still affording the Debtors and any parties in interest time to file a reply brief and attempt to consensually resolve as many of those objections as possible.

16

27. The Debtors further request that the Court require any responses or objections to either approval of the Disclosure Statement or confirmation of the Plan to: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (iv) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to either the Disclosure Statement or Plan that would resolve such objections; and (v) be filed with the Court with proof of service thereof and served on the following parties (the "Notice Parties") so as to be actually received by the Objection Deadline. The Notice Parties are: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) proposed counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002.

28. In addition, the Debtors request that they (and other parties that support the Plan, including the Plan Sponsor) be permitted to file a combined brief in support of confirmation of the Plan and final approval of the Disclosure Statement, as well as replies to any objections or

17

responses to approval of the Disclosure Statement and/or confirmation of the Plan received by the Objection Deadline until not less than two (2) days in advance of the Confirmation Hearing.

29.     Given the circumstances of the Chapter 11 Cases, the relief requested herein is appropriate and consistent with Bankruptcy Rule 9006(c)(1). The relief requested will assist the Debtors in moving toward expeditious confirmation of the Plan and implementation of the transactions contemplated thereby, with the least possible disruption or harm to their businesses, for the benefit of all stakeholders.

30.     **The Court Should Approve the Form and Manner of Notice of the Confirmation Hearing**. A debtor is typically required to provide notice of a hearing to consider the adequacy of the disclosure statement and a hearing to consider confirmation of a plan to all creditors, equity security holders, and the U.S. Trustee. *See* Bankruptcy Rules 2002(b), 3017(d). Additionally, Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors. Fed. R. Bankr. P. 2002(f)(1). Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders. Fed. R. Bankr. P. 2002(d).

31.     To reduce administrative costs and expedite the Debtors' restructuring, the Debtors are seeking this Court's approval to serve the Notice of Commencement & Confirmation Hearing Notice to all creditors, equity security holders, and the office of the United States Trustee for Region 3 (the "U.S. Trustee"). The Debtors request approval of the Notice of Commencement & Confirmation Hearing Notice, substantially in the form attached to the Order as **Exhibit 3**, and the Publication Notice, substantially in the form attached to the Order as **Exhibit 4**.

32.     In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice of Commencement & Confirmation Hearing Notice will: (a) provide notice of the commencement of

18

these Chapter 11 Cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide instructions for obtaining copies of the Disclosure Statement and Plan.

33.     The Notice of Commencement & Confirmation Hearing Notice will be served upon all known Holders of Claims against or Interests in the Debtors, which service will occur no later than three (3) business days following entry of the Order, or as soon as reasonably practicable thereafter. The Notice of Commencement & Confirmation Hearing Notice likewise will be served upon both the Voting Classes and Non-Voting Classes.

34.     In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors request that the Court authorize them, in their sole discretion, to provide the Publication Notice as soon as reasonably practicable following the entry of the Order in the *Wall Street Journal* to inform (a) those creditors who are unknown to, or not reasonably ascertainable by, the Debtors and (b) those creditors with potential claims unknown to the Debtors. *See* Fed. R. Bankr. P. 2002(l). In addition, the Debtors will cause the Notice of Commencement & Confirmation Hearing Notice to be posted electronically on the case website maintained by the Claims Agent.

35.     To provide another layer of notice to parties in interest in the Chapter 11 Cases, the Debtors will post to the Claims Agent's website various chapter 11 documents, including the following: (i) the Plan; (ii) the Disclosure Statement (with all exhibits); (iii) this Motion and any orders entered in connection with this Motion; and (iv) the Notice of Commencement & Confirmation Hearing Notice.

36.     Therefore, the Debtors respectfully submit that the proposed service of the Notice of Commencement & Confirmation Hearing Notice will provide sufficient notice to all parties in interest in the Chapter 11 Cases of the commencement of such cases, the date, time, and place of the Confirmation Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.

37.     With respect to the data breach in 2024 (the "Data Breach") disclosed in the Debtors' Disclosure Statement at page 30, the Debtors propose to include information about these Chapter 11 Cases on the website that Cyberscout maintains with respect to the Data Breach and the Debtors will include information about Cyberscout's services for the Debtors on the website that the Debtors' Claims Agent will maintain regarding the Chapter 11 Cases. As the Debtors already provided impacted individuals with direct personal notice of the Data Breach, as well as an opportunity to participate in a free credit monitoring, it would be redundant, unduly burdensome and prohibitively expensive for the Debtors to provide such parties with additional notice other than that proposed herein on the various website and that already received regarding the Data Breach. The Debtors will continue to honor the Cyberscout creditor monitoring.  Consequently, the Debtors respectfully request that the Court find that such notice is sufficient.

**C.      THE COURT SHOULD APPROVE THE SOLICITATION PROCEDURES.**

38.     Section 1126(f) states that "a class that is not impaired under a plan . . . [is] conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f). Additionally, § 1126(g) states that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." *Id.* § 1126(g).

20

39.    As set forth above, the Plan provides that Classes 1, 2(a), 2(b) and 8(b) are unimpaired (the "Unimpaired Classes"). Pursuant to § 1126(f), the Holders of Claims or Interests in each of the Unimpaired Classes are conclusively presumed to have accepted the Plan and thus are not entitled to vote. Accordingly, the Debtors have not solicited votes from such Holders. Nor have the Debtors solicited votes from Holders of Claims or Interests in Classes 5, 6, 7 and 8(a) (the "Rejecting Classes"), which are deemed to reject the Plan. *See* 11 U.S.C. §1126(g). It would have been unnecessarily expensive and burdensome to solicit votes from Class 5 both on a substantive basis and due to the additional month delay necessary to solicit votes from Class 5, which would have exacerbated the Debtors' already tight liquidity constraints. Specifically, although the bulk of the Debtors' restructuring transaction focuses on claims against the Debtors for borrowed money, all of which are held by the Plan Sponsor, its affiliates, or entities under common ownership with the Plan Sponsor, there was no exemption available for the prepetition solicitation of holders of claims in Class 5. Under such circumstances, bankruptcy courts  often approve the deemed rejection of similar classes even where the class is intended to receive a modest distribution under a plan, as is the case here. *See In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Nov. 19, 2025) (approving plan providing that claims in class 8 were deemed to reject and not entitled to vote even where holders would receive a distribution, to the extent funds were available, from the 'equity liquidating trust interests'); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D. N.J. May 30, 2024) (approving plan where two classes were not entitled to vote, deemed to accept or reject plan, and if deemed to reject, each class may have been "set off, settled, or distributed" as applicable); *In re W.E. Parks Lumber Co., Inc.*, 19 B.R. 285, 290 (Bankr. W.D. La. 1982) (approving plan where class was receiving value but was not entitled to vote).

40.     With respect to the Unimpaired Classes and the Rejecting Classes, the Solicitation Procedures undertaken by the Debtors and described herein comply with the Bankruptcy Code and should be approved. The Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these classes at the Confirmation Hearing.

41.     **Solicitation of Voting Classes**. Section 1126(b) expressly permits a debtor to solicit votes from holders of claims or interests prepetition and without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of § 1125(a). *Id.* § 1126(b).

42.     The Debtors commenced solicitation of the Voting Classes prior to the Petition Date in accordance with the Solicitation Procedures described herein, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Specifically, on April 24, 2026, the Debtors distributed solicitation packages via e-mail (the "Solicitation Packages") to the Holders of Class 3 and Class 4 Claims. Each Solicitation Package included (i) the Plan, (ii) the Disclosure Statement, together with the exhibits thereto, and (iii) Ballots in the form attached to the Order at **Exhibits 1A** and **1B** (the "Ballots").

43.     The Solicitation Packages clearly disclosed the Debtors' expectations and intentions to: (a) commence the Chapter 11 Cases; (b) request that the Court approve the Solicitation Procedures as set forth in the Disclosure Statement, including setting April 20, 2026, at 4:00 p.m. (prevailing Eastern Time) as the Voting Deadline; (c) request that the Court set an Objection Deadline; and (d) request that the Court set a Confirmation Hearing. Holders in the Voting Classes that received the Solicitation Package were directed in the Disclosure Statement and applicable Ballot to follow the instructions contained therein (and described in the Disclosure

Statement) to complete and submit their Ballots to cast a vote to accept or reject the Plan. Each Holder was informed in the Disclosure Statement and applicable Ballot that such Holder needed to submit its Ballot so that it was actually received by the Debtors (with a copy to the Claims Agent) on or before the Voting Deadline in order to be counted. Holders of Claims and Interests in Classes presumed to accept the Plan under § 1126(f), or deemed to reject the Plan under § 1126(g), were not provided a Solicitation Package.

44.     As described above, the Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with §§ 1125 and 1126 of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).

45.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization. Bankruptcy Rule 3017(e) provides that "the court must . . . determine the adequacy of the procedures for sending the documents and information listed in (d)(1) to beneficial holders of stock, bonds, debentures, notes, and other securities; and issue any appropriate orders." Fed. R. Bankr. P. 3017(e). As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the Bankruptcy Rules. Accordingly, the Debtors seek approval of such Solicitation Procedures.

46.     Indeed, similar procedures have been approved in other chapter 11 cases in this District. *See, e.g., In re View, Inc.*, No. 24-10692 (CTG) [D.I. 201] (Bankr. D. Del. May 20, 2024) (approving solicitation procedures and deadlines similar to those utilized here); *In re Secure Home*

23

*Holdings LLC*, No. 21-10745 (JKS) [D.I. 170] (Bankr. D. Del. May 25, 2021) (same); *In re TNT Crane & Rigging, Inc.*, Case. No. 20-11882 (BLS) [D.I. 71] (Bankr. D. Del. Aug. 25, 2020) (same); *In re Pace Industries*, No. 20-10927 (MFW) [D.I. 79] (Bankr. D. Del. Apr. 15, 2020) (same).

47.     **Voting Record Date**. Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b). The Disclosure Statement and the Ballots clearly identify April 22, 2026, as the Voting Record Date, or the date for determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan. The Ballots also require each Holder completing a Ballot to certify the amount of its Claim as of the Voting Record Date.

48.     **Plan Distribution and Voting Deadline**. Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are only valid if the plan was transmitted to substantially all the holders of claims or interests in the same voting class, the time for voting was not unreasonably short, and the solicitation complied with § 1126(b) of the Bankruptcy Code. The Solicitation Packages were distributed to all Holders of Claims in the Voting Classes on April 24, 2026. As clearly set forth in the Disclosure Statement and the Ballots, the Voting Deadline is April 24, 2026, at 4:00 p.m. (*prevailing* Eastern Time).

49.     As the Voting Classes had approximately 1 day to review the materials, the Debtors respectfully submit that the Holders of Claims in the Voting Classes had adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the Voting Deadline. The Debtors further submit that the Holders of Claims in the Voting Classes are sophisticated market participants, represented by sophisticated counsel, and/or are able to evaluate the merits of the

Plan. Moreover, the actions proposed in the Plan are the product of extensive arm's-length negotiations among the Debtors and members of the Voting Classes, who also constitute the Plan Sponsor, affiliates thereof, or entities under common ownership with the Plan Sponsor prior to the commencement of solicitation, and that the Plan and Disclosure Statement were subject to review and comment by representatives of such parties. Thus, the Debtors respectfully submit that the voting period in the Solicitation Procedures satisfies the minimum voting period and that Holders of Claims in the Voting Classes have had adequate time to consider the Plan and Disclosure Statement and submit an applicable Ballot before the Voting Deadline. Additionally, the voting period was agreed to by 100% of the holders of all Voting Classes, and all such holders agree that such period was not "unreasonably short" as contemplated by Rule 3018(b)(2)(B).

50.     **The Ballots, Solicitation Package, Additional Materials, and Transmittal Thereof**. Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection must . . . be in writing; identify the plan or plans [accepted or rejected]; be signed by the creditor or equity security holder—or an authorized agent; and conform to Form 314." Fed. R. Bankr. P. 3018(c).

51.     The Debtors caused the Solicitation Packages to be transmitted to Holders of Class 3 and Class 4 Claims on April 24, 2026. The Solicitation Packages contained the Ballots and the Disclosure Statement with the exhibits thereto (which include the Plan, the Financial Projections, the Feasibility Analysis, and the Liquidation Analysis). The Debtors believe that providing electronic delivery of the Solicitation Packages has provided the most effective and efficient means to provide notice to each Holder of Class 3 and Class 4 Claims.

52.     The Ballots used in the Solicitation Packages are based on Official Form No. 314 and have been modified, as applicable, to address the particular circumstances of the Chapter 11 Cases to include certain information that the Debtors believe is relevant and appropriate for Holders of Claims and Interests entitled to vote to accept or reject the Plan. *See* Fed. R. Bankr. P. 3017(d). The forms of the Ballots used in the solicitation are attached as **Exhibits 1A** and **1B** to the Order. The Debtors respectfully submit that each form of Ballot complies with the Bankruptcy Rules and, therefore, should be approved.

53.     **Vote Tabulation**. The Bankruptcy Code states that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class . . . that have accepted or rejected such plan."  11 U.S.C. § 1126(c); *see also* Fed. R. Bankr. P. 3018(a).

54.     The Debtors request that the Court approve the Tabulation Procedures, which include the following standard assumptions to tabulate the Ballots, subject to the Debtors' right to waive any of the below specified requirements for the completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:[5]

| **Votes Not Counted** | <ul><li>Any Ballot that partially rejects and partially accepts the Plan.</li><li>Any Ballot not marked to accept or reject the Plan, or any Ballot marked both to accept and reject the Plan.</li><li>Any unsigned Ballot or Ballot lacking an original signature.</li></ul> |
| --- | --- |

---

[5] The Claims and Notice Agent will file a declaration regarding the solicitation of votes and tabulation of Ballots cast with respect to the Plan (the "Voting Report"). The Voting Report shall, among other things, set forth any aggregation of votes, as well as delineate every Ballot that did not conform to the voting instructions or that contained any form of irregularity, including, but not limited to, those Ballots that were late, (in whole or in material part) illegible, unidentifiable, lacking signatures, lacking necessary information, received via facsimile, or damaged (collectively, in each case, the "Irregular Ballots"). The Voting Report shall indicate the Debtors' intentions with regard to each Irregular Ballot.

26

| | |
|---|---|
| | • Any Ballot that was illegible or contained insufficient information to permit identification of the Holder of the Claim. |
| | • Ballots sent to the Debtors, the Debtors' agents, or the Debtors' financial or legal advisors. |
| | • Ballots sent by facsimile or email. |
| | • Any Ballot cast by a Person or Entity that did not hold a Claim in a Class entitled to vote on the Plan. |
| | • Any Ballot submitted by any Person or Entity not entitled to vote pursuant to the Solicitation Procedures. |
| **No Vote Splitting** | • Holders were required to vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and were not permitted to split any votes. |
| **Vote Aggregation** | • Separate Claims held by a single creditor in a particular Class may have been aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim were treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities, including any funds or accounts advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims were not aggregated and were not treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity or managed fund or account was counted separately as a vote to accept or reject the Plan. |

55.     As described above, the Debtors used standard tabulation procedures in tabulating votes and the proposed Tabulation Procedures are consistent with those previously approved in cases in this District. *See*, *e.g.*, *In re View, Inc.*, No. 24-10692 (CTG) [D.I. 201] (Bankr. D. Del. May 20, 2024) (approving tabulation procedures similar to those utilized here); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) [D.I. 170] (Bankr. D. Del. May 25, 2021) (same); *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 [D.I. 83] (Bankr. D. Del. Nov. 3, 2020) (same); *In re Pyxus Int'l, Inc.*, No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020) (approving vote tabulation procedures substantially similar to those utilized here); *In re Anna*

*Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC,* No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019) (same). These procedures are consistent with § 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).

56.     **Approval of the Opt-In Release Form**. The Debtors have proposed third-party releases that are strictly consensual and will bind only those parties that affirmatively opt in to such releases. Accordingly, the proposed releases comply with the formulation recognized as permissible under *Harrington v. Purdue Pharma L.P.*, which held that the Bankruptcy Code does not authorize a bankruptcy court to approve non-consensual releases or injunctions that extinguish claims against non-debtor third parties without the consent of the affected claimants. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 215 (2024). Because the releases here require express, affirmative consent, they do not implicate the concerns identified in *Purdue* and are properly included in the Debtors' proposed voting procedures. *See id.*; *see also In re Smallhold, Inc.*, 665 B.R. 704, 717 (Bankr. D. Del. 2024) ("As a general proposition, creditors must affirmatively express consent to the release in order to be bound by it.").

57.     The Opt-In Release Form affords parties in interest a clear and affirmative opportunity to elect whether they wish to grant the third-party releases. The form is structured to require an express, voluntary indication of consent and does not presume acceptance through inaction. The notices and descriptions of the applicable releases are prominently displayed, written in plain and conspicuous language, and specifically designed to stand out so that recipients are fully informed of the nature and consequences of granting such releases. The ballot materials clearly explain that granting the release is optional and that a holder's decision whether or not to opt in will not affect the allowance of its Claim or its entitlement to distributions under the Plan.

28

58.     The Debtors respectfully submit that the Opt-In Release Form, substantially in the form attached to the Order as **Exhibit 2**, provides adequate and appropriate notice, satisfies the requirements of the Bankruptcy Rules, and comports with applicable law governing consensual third-party releases.[6] Because the form ensures that any release is the product of an informed and affirmative election, the Debtors submit that it is procedurally proper and should be approved.

59.     **Inapplicability of or Exemption from Nonbankruptcy Registration and Disclosure Requirements**. The Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

11 U.S.C. § 1125(g).

60.     It further provides, in § 1126, that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

*Id*. at § 1126(b).

61.     The Debtors believe that the issuance of Plan Sponsor Common Stock will be an issuance of "securities" as defined in the Securities Act, § 101, and any applicable state securities laws (the latter, "Blue Sky Laws"). The Debtors further believe that the issuance of Plan Sponsor Common Stock will be exempt from federal and state securities registration under the Securities Act, the Bankruptcy Code, and applicable Blue Sky Laws because it complies with applicable

---

[6] The law regarding permissible releases after the Purdue decision continues to evolve. The adoption of an "opt-in" mechanic in the Chapter 11 Cases shall not be deemed an admission or commentary on alternative approaches in future chapter 11 cases.

bankruptcy and non-bankruptcy laws. The Securities Act, at § 77d(a)(2), provides that the registration requirements of the Securities Act do not apply to "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2); *see also* 11 U.S.C. § 1145(a)(1) (exempting securities issued under a plan of reorganization by a debtor or its successor). Prepetition solicitation must either comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under § 1125 of the Bankruptcy Code.

62. The prepetition solicitation of votes on the Plan is exempt from registration under the Securities Act and Blue Sky Laws, including, without limitation, 15 U.S.C. § 77f and similar Blue Sky Laws, and any similar rules, regulations, or statutes. The Debtors are issuing securities under a Plan. Further, the Debtors do not have any contract, arrangement, or understanding relating to, and will not, directly or indirectly, pay any commission or other remuneration to any broker, dealer, salesperson, agent, or other person for soliciting votes to accept or reject the Plan, and no broker, dealer, salesperson, agent, or any other person is engaged or authorized to express any statement, opinion, recommendation, or judgment with respect to the relative merits and risks of the Plan. Accordingly, the Debtors' solicitation of votes to accept or reject the Plan is exempt from the registration requirements of the Securities Act and any otherwise applicable Blue Sky Laws.

63. Debtors frequently rely on § 77d(a)(2) of the Securities Act to exempt the prepetition solicitation of votes on a plan from the registration and disclosure requirements of the Securities Act and Blue Sky Laws. *See, e.g., In re 2U, Inc.*, No. 24-11279 (MEW) (Bankr. D. Del. Sept. 9, 2024); *In re View, Inc.*, No. 24-10692 (CTG) (Bankr. D. Del. May 15, 2024); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Feb. 23, 2021); *In re Key Energy Servs., Inc.*, No. 16-

12306 (BLS) (Bankr. D. Del. Oct. 25, 2016); *In re Physiotherapy Holdings, Inc., et al.*, No. 13-12965 (Bankr. D. Del. Nov. 14, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013).

64. Therefore, the Debtors submit that the requirements of § 1126(b)(1) are inapplicable to the Debtors' prepetition solicitation. As discussed more fully below, the Debtors will seek a determination from the Court at the Confirmation Hearing that all solicited Holders received "adequate information" as defined by § 1125(a) and in accordance with § 1126(b)(2).

65. **Waiver of Certain Solicitation Package Mailing Requirements**. The Debtors respectfully request that the Court waive the requirement that they mail a copy of the Solicitation Package to Non-Voting Holders. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise). Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement." Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here, considering the prepetition solicitation process employed. *See also* 11 U.S.C. §§ 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).

66. Similar waivers to those requested by the Debtors have been granted in other chapter 11 cases in this District. *See, e.g., In re View, Inc.*, No. 24-10692 (CTG) [D.I. 68] (Bankr. D. Del. April 4, 2024); *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 [D.I. 83] (Bankr. D. Del. Nov. 3, 2020); *Pyxus Int'l, Inc.*, No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) [D.I. 82] (Bankr. D. Del. June 16, 2020); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019); *In*

31

*re Blackhawk Mining LLC*, No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019); *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS) [D.I. 61] (Bankr. D. Del. May 24, 2019).

67.     The Plan provides that, except for Class 3 and Class 4, the remaining Classes are either Unimpaired Classes or Rejecting Classes. Pursuant to §§ 1126(f) and (g), Holders of Claims and Interests in the Non-Voting Classes (the "Non-Voting Holders") were not solicited. Nevertheless, the Debtors are making this request out of an abundance of caution, and to avoid unnecessary expense.

68.     In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to serve such Non-Voting Holders by mail with the Notice of Commencement & Confirmation Hearing Notice, which sets forth, among other things, a summary of the Plan and the treatment of such Non-Voting Holders' Claims or Interests, the manner in which a copy of the Plan and the Disclosure Statement may be obtained, and the manner in which such Non-Voting Holders may object to confirmation of the Plan. The Debtors also have made the Solicitation Package (excluding the Ballots) publicly available to all parties at no cost on their restructuring website maintained by the Claims Agent.

69.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved. Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Non-Voting Holders.

**D.     PROCEDURES IN RESPECT OF ASSUMPTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES PURSUANT TO THE PLAN.**

70.     The Plan provides that, as of the Effective Date, the Debtors shall be deemed to have rejected each Executory Contract and Unexpired Lease to which they are parties in accordance with, and subject to, the provisions and requirements of §§ 365 and 1123, without the

need for any further notice to or action, order, or approval of the Court. The exceptions to this deemed rejection are: (a) if the Plan specifically provides otherwise; or (b) such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtors pursuant to a final order of the Court, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed on or before the Effective Date, or (iv) is identified on the Assumption Schedule to be filed in the Plan Supplement. The assumption of Executory Contracts and Unexpired Leases under the Plan may include the assignment of contracts with the Reorganized Debtors. The order confirming the Plan will constitute an order of the Court approving the above-described assumptions and assignments.

71.     In addition to the Notice of Commencement & Confirmation Hearing Notice, the Debtors will provide notices to counterparties to Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned under the Plan, in substantially the form attached as **Exhibit 5** to the Order. Any objection by an Executory Contract or Unexpired Lease counterparty to a proposed assumption, assumption and assignment, or related cure cost, on any grounds, including those set forth in § 365, must be filed, served, and actually received by the Debtors within fourteen (14) days after service of the Assumption Notice on such counterparties. Any objections to cure costs may be scheduled for a separate hearing in the Debtors' discretion.

72.     The Debtors respectfully submit that the Assumption Notice complies with the Bankruptcy Code and, therefore, should be approved.

E.     **THE COURT SHOULD EXCUSE THE DEBTORS FROM CONVENING A MEETING OF CREDITORS OR EQUITY HOLDERS AND FROM FILING SOFAS AND SCHEDULES BECAUSE CAUSE EXISTS.**

73.     Section 341 allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case. Specifically, § 341(e) provides that:

33

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States Trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

*Id.* §341(e).

74.     Because votes on the Plan were solicited prior to the Petition Date and the Debtors' only voting creditors have voted to accept the Plan, the Debtors' aim is to confirm the Plan in thirty (30) days and emerge from the Chapter 11 Cases immediately thereafter. As a result, the Debtors request that the requirement to file Schedules, 2015.3 Reports, and SOFAs be waived in the event that the Plan is confirmed within seventy-five (75) days of the Petition Date.

75.     The Court has authority to grant an extension of the deadline for filing such documents "for cause" pursuant to Bankruptcy Rule 1007(c). Here, cause exists to extend the deadlines, given the prepackaged and substantially consensual nature of the Chapter 11 Cases. Moreover, the Debtors will be filing on the docket a schedule of general unsecured claims, which will indicate whether such claims are disputed, unliquidated or contingent. That schedule will, from the perspective of creditors, serve the key purpose of allowing creditors to determine whether they will need to file a proof of claim in the Debtors' cases. Accordingly, the Schedules, 2015.3 Reports, and SOFAs would be of limited utility to most parties in interest, as the Debtors already have enough support to meet the voting requirements of §§ 1126(c) and (d). The minimal benefit of requiring the Debtors to prepare the Schedules, 2015.3 Reports, and SOFAs would be significantly outweighed by the expenditure of time and resources the Debtors would be required to devote to the preparation and filing of these documents at the same time as they focus on their restructuring. For these reasons, the Court should only conditionally require the Debtors to file Schedules, 2015.3 Reports, and SOFAs if the Plan is not confirmed within seventy-five (75) days of the Petition Date.

76. Courts have frequently waived the requirements for the U.S. Trustee to convene a meeting of creditors and for a debtor to file Schedules, 2015.3 Reports, and SOFAs in other prepackaged chapter 11 cases. *See, e.g., In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. May 25, 2021); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (conditionally waiving requirement to convene § 341 creditors' meeting and filing of schedules and statements subject to plan confirmation within 75 days); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 4, 2018) (granting contingent 72-day extension to convene § 341 creditors' meeting and file schedules and statements); *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (granting 100-day contingent extension). For the reasons discussed above, similar relief is appropriate in these Chapter 11 Cases as well.

77. The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a meeting of creditors and for the Debtors to file Schedules, 2015.3 Reports, and SOFAs. The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a meeting of creditors and file Schedules, 2015.3 Reports, and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## VI.

## NON-SUBSTANTIVE MODIFICATIONS

78.     The Debtors request authorization to make changes to the Plan and Disclosure Statement, Notice of Commencement & Confirmation Hearing Notice, Solicitation Packages, Ballots, Publication Notice, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to any other materials in the Solicitation Packages before distribution.

## VII.

## RESERVATION OF RIGHTS

79.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection of, or seek avoidance of, all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

36

## VIII.

## NO PRIOR REQUEST

80.     No prior request for the relief sought in this Motion has been made to this or any other court.

## IX.

## NOTICE

81.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' prepetition and postpetition lenders; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

# X.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order.

Dated: April 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (pro hac vice pending)
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
        debertenthal@pszjlaw.com
        tcairns@pszjlaw.com
-and-

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Email: john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING, (II) ESTABLISHING PLAN AND DISCLOSURE STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED PROCEDURES, (III) APPROVING THE PREPETITION SOLICITATION PROCEDURES, (IV) APPROVING THE NOTICE OF COMMENCEMENT & CONFIRMATION HEARING NOTICE, AND FINDING NOTICE SUFFICIENT, (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) WAIVING THE REQUIREMENT OF FILING SCHEDULES, STATEMENTS OF FINANCIAL AFFAIRS, RULE 2015.3 REPORTS AND SECTION 341 MEETING OF CREDITORS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the Debtors for entry of an order (this "<u>Order</u>"), pursuant to §§ 105, 1107, 1108, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, and Local Rules 2002-1 and 3017-1, (i) scheduling a combined disclosure statement approval and plan confirmation hearing, (ii) establishing plan and disclosure statement objection and reply deadlines and related procedures, (iii) approving the prepetition solicitation procedures, (iv) approving the combined hearing notice, (v) approving notice and objection procedures for the assumption of executory contracts and unexpired leases,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Plan, as applicable.

(vi) waiving the requirement of filing Schedules, Statements of Financial Affairs, Rule 2015.3 reports and § 341 meeting of creditors, and (vii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and venue of these proceedings and the Motion in this District being proper under 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding under 28 U.S.C. § 157(b)(2)(A); and due and proper notice of the Motion having been given to the parties listed therein; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court (the "Hearing"); and having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted in this Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest in these cases; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Confirmation Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held not less than 28 days after filing the Plan and Disclosure Statement. The Confirmation Hearing may be continued from time to time by this Court without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in these Chapter 11 Cases, and notice of such adjourned date(s) will be available on the electronic case filing docket.

3.      Any responses or objections to adequacy of the Disclosure Statement or confirmation of the Plan must have been received as set forth in paragraph 4 of this Order by 4:00 p.m. (prevailing Eastern Time) on the date not less than seven (7) days before the Confirmation Hearing.

4.      Any responses or objections to (i) the adequacy of the Disclosure Statement, (ii) confirmation of the Plan, or (iii) the assumption of Executory Contracts and Unexpired Leases, must:

a.  be in writing;

b.  comply with the Bankruptcy Rules and the Local Rules;

c.  state the name and address of the objecting party and the amount and nature of the Claim or Interest owned by such entity;

d.  state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Disclosure Statement or Plan, as applicable, that would resolve such objections; and

e.  be filed with the Court and served so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) no less than seven (7) days before the Confirmation Hearing, by: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) proposed counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002.

5.      Any brief in support of confirmation of the Plan or any reply to any objections to confirmation of the Plan or the adequacy of the Disclosure Statement must be filed by **4:00 p.m.**

3

(*prevailing* **Eastern** **Time)** **on**_____**, 2026**. To the extent applicable, Local Rule 9006-1 is hereby waived in its entirety.

6. Any objections not timely filed and served in the manner set forth in this Order may, in the Court's discretion, not be considered and may be overruled.

7. The Proposed Confirmation Schedule, as set forth below relating to confirmation of the Plan and final approval of the Disclosure Statement, is hereby approved in its entirety, and the Court hereby finds that the following schedule of events is consistent with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Voting Record Date[3] | April 22, 2026 | The date for determining (i) which holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan, opt-in to the Third-Party Release, and receive Solicitation Packages in connection therewith, (ii) which holders of Claims and Interests in the Non-Voting Classes are entitled to opt-in to the Third-Party Release, and (iii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of the respective Claim. |
| Filing of Plan & Disclosure Statement | Petition Date | |
| Confirmation Hearing | Not less than 28 days after filing the Plan and Disclosure Statement | The date for the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement. |
| Publication Deadline | Two (2) business days following entry of the Confirmation Procedures Order Order (or as soon as reasonably practicable thereafter) | The last date by which the Debtors will submit the Notice of Commencement & Confirmation Hearing Notice in a format modified for publication. |
| Plan Supplement Filing Date | Not less than fourteen (14) days before the Confirmation Hearing | The date by which the Debtors shall file the Plan Supplement. |

---

[3] The "Voting Record Date" is the date as of which a holder of record of a claim or interest entitled to vote on the Plan must have held such claim or interest to cast a vote to accept or reject the Plan.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Confirmation Objection Deadline | Not less than seven (7) days (at 4:00 p.m. prevailing Eastern Time) before the Confirmation Hearing | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| Opt-In Deadline | Not less than seven (7) days (at 4:00 p.m., prevailing Eastern Time) before the Confirmation Hearing | The deadline by which all opt-in forms (the "Opt-In Forms") must be properly executed, completed, and electronically submitted so that they are **actually received** by the Claims Agent. |
| Confirmation Brief and Plan and Disclosure Statement Objection Reply Deadline | Not less than 2 days in advance of the Confirmation Hearing | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan and deadline by which replies to objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court. |

8.      The Debtors are authorized to combine the notice of the Confirmation Hearing and the Objection Deadline (and related procedures) with the notice of the commencement of the Chapter 11 Cases.

9.      The Notice of Commencement & Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 3**, and service thereof comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved as sufficient and appropriate notice of the Confirmation Hearing under the circumstances. The Debtors shall cause the Claims Agent to serve a copy of the Notice of Commencement & Confirmation Hearing Notice by no later than one business day, or as soon as reasonably practicable, after entry of this Order.

10.      The Debtors are authorized to e-mail or mail the Notice of Commencement & Confirmation Hearing Notice to the Non-Voting Holders, in accordance with the terms of this Order, in lieu of sending such Non-Voting Holders a copy of the Plan or the Disclosure Statement and, except to the extent necessary to comply with Local Rule 3017-1(c), the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit a copy of the Plan and the Disclosure Statement to Non-Voting Holders are hereby waived with respect

5

to such Non-Voting Holders; *provided*, *however*, that the Debtors will do so upon request from such parties.

11.    The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(a), to publish the Publication Notice, substantially in the form attached hereto as **Exhibit 4**, as soon as reasonably practicable following the entry of this Order in the [•] or another nationally circulated newspaper and/or regional newspapers and electronically on the Debtors' restructuring website maintained by the Claims Agent, and file the same on this Court's docket, which Publication Notice shall constitute good and sufficient notice of the Confirmation Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Notice of Commencement & Confirmation Hearing Notice by mail.

12.    For avoidance of doubt, the Debtors shall also serve the Notice of Commencement & Confirmation Hearing Notice on: (a) the U.S. Trustee, (b) the Office of the United States Attorney for the District of Delaware, (c) the Internal Revenue Service; (d) the United States Securities and Exchange Commission; (e) any statutory committee appointed in these Chapter 11 Cases; (f) all state and local taxing authorities in the states in which the Debtors have tax liability; (g) all federal, state and local authorities that regulate any portion of the Debtors' businesses; and (h) all counterparties to Executory Contracts and Unexpired Leases.

13.    Service of the Notice of Commencement & Confirmation Hearing Notice as set forth in the Motion and herein is sufficient notice of the Petition Date, the Confirmation Hearing, the Objection Deadline, and the procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan.

14.    The Debtors are not required to serve the Notice of Commencement & Confirmation Hearing Notice on the individuals that received notice of the Data Breach; provided

that the Debtors shall provide information regarding these Chapter 11 Cases on the Cyberscout website regarding the Data Breach and the website maintained by the Debtors' Claims Agent.

15. The Voting Record Date of April 22, 2026, and the Voting Deadline of April 24, 2026, at 4:00 p.m. (*prevailing* Eastern Time) with respect to Class 3 and Class 4 Claims, is approved.

16. The contents of the Solicitation Package, as set forth in the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties entitled to vote on the Plan.

17. The Debtors are authorized to make non-substantive modifications and ministerial changes to the Notice of Commencement & Confirmation Hearing Notice or Publication Notice without further approval of the Court prior to the dissemination of such documents, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes to the Plan, the Disclosure Statement, and any other materials included in the Solicitation Package prior to their dissemination.

18. The Solicitation Procedures set forth in the Motion that the Debtors used to distribute the Solicitation Packages, including providing electronic access thereto, and to solicit acceptances and rejections of the Plan, as well as the Tabulation Procedures used to tabulate votes to accept or reject the Plan, satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and those Solicitation Procedures are approved.

19. The Ballots, substantially in the forms attached hereto as **Exhibits 1A** and **1B**, and the terms and conditions therein, are approved.

20. The Opt-In Releases, substantially in the form attached hereto as **Exhibit 2**, and the terms and conditions therein, are approved.

21.     The Tabulation Procedures are approved.

22.     Pursuant to §§ 1125 and 1126 and applicable nonbankruptcy law, the Debtors are authorized to continue their prepetition solicitation in respect of the Plan, commenced on April 24, 2026, after the Petition Date.

23.     The Executory Contract Procedures are approved; *provided*, *however*, that this Court retains jurisdiction after the Effective Date to address any dispute between the Debtors and a counterparty to an Executory Contract or Unexpired Lease regarding amounts allegedly due as a result of a Debtor's pre-assumption default thereunder, regardless of whether that counterparty has filed an objection.

24.     The Assumption Notice, substantially in the form attached hereto as **Exhibit 5**, is approved. The Debtors shall serve each non-Debtor party to an Executory Contract or Unexpired Lease that the Debtors propose to assume with an Assumption Notice.

25.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims or Interests in the Non-Voting Classes but shall do so upon request from any such party or as provided in the Notice of Commencement & Confirmation Hearing Notice.

26.     The Debtors shall cause to be posted to their restructuring website, maintained by the Claims Agent, various chapter 11 related documents, including the following: (a) the Plan; (b) the Disclosure Statement; (c) the Motion and any orders entered in connection with the Motion; and (d) the Notice of Commencement & Confirmation Hearing Notice.

27.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Confirmation Hearing; commencement of these Chapter 11 Cases; and the deadline and procedures for objection to approval of the Solicitation

Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan. No other or further notice shall be necessary.

28.     The U.S. Trustee need not, and shall not, convene a meeting of creditors or equity holders pursuant to § 341(e) of the Bankruptcy Code if the Plan is confirmed within seventy-five (75) days of the Petition Date; *provided* that such date may be further extended without further motion by the Debtors and without further order from the Court, upon written agreement between the Debtors and the U.S. Trustee (which written agreement may be by email) and upon notice filed on the docket and served on the Notice Parties and the Court.

29.     Cause exists to waive the requirement that the Debtors file Schedules, 2015.3 Reports, and SOFAs if the Plan is confirmed within seventy-five (75) days of the Petition Date, without prejudice to the Debtors' rights to request further extensions thereof; *provided* that such deadline to file the Schedules, 2015.3 Reports, and SOFAs may be further extended without further motion by the Debtors, upon written agreement between the Debtors and the U.S. Trustee (which written agreement may be by email) and upon notice filed by the Debtors on the docket and served on the Notice Parties and the Court; *provided*, *further*, that this relief is without prejudice to the Debtors' rights to request further extensions thereof (including if the Debtors and the U.S. Trustee are unable to reach an agreement pursuant to the preceding proviso).

30.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, including Bankruptcy Rule 6004(h), (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

31.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

33.     Nothing in this Order shall be deemed to constitute (i) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, or (ii) a waiver of any rights, claims, or defenses of the Debtors or any other party in interest.

34.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

10

**Exhibit 1A**

**Class 3 (Senior Indebtedness Claims) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
| Debtors. | |

**CLASS 3 (SENIOR INDEBTEDNESS CLAIMS)
BALLOT TO ACCEPT OR REJECT THE
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

As you have been informed, on or before April 26, 2026, Impac Mortgage Holdings, Inc. ("Impac"), Impac Funding Corporation ("IFC"), Impac Mortgage Corp. ("IMC"), Copperfield Financial, LLC ("CFLLC"), IMH Assets Corp. ("IMHAC"), Integrated Real Estate Service Corp. ("IRES"), Integrated Warehouse Lending Group, Inc. ("IWLG"), Copperfield Capital Corporation ("CCC"), Impac Commercial Capital Corporation ("ICCC"), Impac Secured Assets Corp. ("ISAC"), Synergy Capital Mortgage Corp. ("Synergy") and Impac Warehouse Lending, Inc. ("Warehouse"), the debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), will file their petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Petitions"). Contemporaneously with the Petitions, the Debtors will file the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be subsequently amended, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc.* (the "Disclosure Statement"). You should have received a copy of the Plan and Disclosure Statement included in the packet you are receiving with this Ballot (collectively, the "Solicitation Package").

This ballot is being provided to you because records indicate that you are the Holder of a Class 3 Claim (Senior Indebtedness Claims) as of April 22, 2026 (the "Pre-Petition Voting Record Date"), and, accordingly, you have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. You agree that your vote on the Plan before the filing of the Petition shall be deemed to be your vote on the Plan for purposes of subsection (c) of section 1126 of the Bankruptcy Code.

**Your rights are described in the Disclosure Statement and the Plan. Please read the Disclosure Statement and the Plan and follow the enclosed voting instructions carefully before completing this ballot.**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Services Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

If you have any questions regarding this ballot (the "Ballot") or the voting procedures, please contact Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, California 90017-5704, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com), or Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com).

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026 (the "Voting Deadline").**

If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you have voted.

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the materials delivered with this ballot.

**Item 1. Amount of Class 3 (Senior Indebtedness Claims) Claim.**

The undersigned hereby certifies that as of April 22, 2026, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Claim in the following principal amount (insert amount in box below).

| |
|---|
| Not less than $23,950,000, consisting of principal in the amount of $20,000,000, plus interest, fees, and costs. |

**Item 2. Vote of Class 3 Claim.**

The Holder of the Class 3 Claim set forth in Item 1 votes to (please check one):

| Accept the Plan | Reject the Plan |
|---|---|
| ☐ | ☐ |

**Subject to the limitations set forth herein, you have the right to opt-in to the Third-Party Release set forth in Section 10.5(b) of the Plan. You shall not be deemed to have consented to the Third-Party Release unless you check the box in Item 3 below.**

**Item 3. Release Opt-In Election.**

| | |
|---|---|
| ☐ | **The undersigned Claimant elects to grant (*i.e.*, OPTS IN to) the Third-Party Release provision set forth in Section 10.5(b) of the Plan.** |

**Item 4. Important Information Regarding Injunction, Release, and Exculpation Under the**

2

**Plan.**

Sections 10.4, 10.5, and 10.6 of the Plan provide as follows:

**Section 10.4        *Injunction*.**

**No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan.  Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "Enjoined Matters"): (a) asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly; (b) commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (c) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (d) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or (e) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.**

**Notwithstanding the foregoing, nothing in this Section 10.4 is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.**

**Section 10.5        *Releases*.**

**(a) *Releases by the Debtors*. As of the Effective Date, for good and valuable consideration, pursuant to the Plan and the Confirmation Order, the Debtor Released Parties are forever released the ("Debtor/Estate Release") by the Debtors and the Estates, and anyone claiming by or through the Debtors and the Estates, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including, without limitation, any and all Avoidance Actions), remedies and liabilities whatsoever, including, without limitation, any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in**

3

law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that a Holder of any Claim or Interest would have been legally entitled to assert derivatively on behalf of the Debtors or otherwise by or through the Debtors, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct.

(b) *Releases by Holders of Claims*. As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "**Third Party Release**") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.

(c) *Binding Nature of Opt-In Release; Waiver of Unknown Claims*. Each Person and Entity deemed to grant a release under this Section 10.5 shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.

(d) *Approval of Releases*. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Section 10.5, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for

4

**hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

<u>**Section 10.6**</u>        *<u>Exculpation and Limitation of Liability</u>.*

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created, executed or contemplated in connection with the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement, related agreements, instruments or other documents in the Chapter 11 Cases, or the administration of the Plan or the Assets to be distributed under the Plan; provided, however, that the exculpation provisions of this Section 10.6 shall not apply to acts or omissions constituting actual fraud, willful misconduct or gross negligence by any Exculpated Party, as determined by a Final Order.  The Confirmation Order and the Plan shall serve as a permanent injunction against any Person or Entity commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Exculpated Parties that has been exculpated pursuant to this Section 10.6 of the Plan.**

<u>**Section 1.1**</u>        *<u>Definitions</u>.*

"*Released Parties*" means, collectively, the Debtor Released Parties and the Third-Party Released Parties.

"*Debtor Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Debtor Released Party if it objects to the Plan's release provisions; provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the Debtors to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Debtors to whom they are related.

"*Third-Party Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Third-Party Released Party if it objects to the Plan's release provisions;

5

provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

"*Releasing Parties*" means, individually and collectively: (i) each party to the RSA; (ii) each Holder of a Claim or Interest that opts in to the Third Party Release; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons; provided that, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (iii), the subject release will apply only to claims and causes of action of such party that (a) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (b) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

**Item 5**. **Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Pre-Petition Voting Record Date, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Class 3 Claim in the amount set forth in Item 1;

2. the Holder is eligible to be treated as the Holder of the Class 3 Claim set forth in Item 1 for the purposes of voting on the Plan;

3. the Holder has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

5. the Holder understands and acknowledges that only the latest-dated Ballot cast and actually received by the Pre-Petition Voting Deadline with respect to the Class 3 Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class 3 Claim set forth in Item 1, such other Ballot shall be deemed revoked;

6. the Holder understands and acknowledges that the Debtors shall verify the amount of the Class 3 Claim held by the Holder as of the Pre-Petition Voting Record Date set forth in Item 1; and

7.      the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

**Item 6. Holder Information and Signature.**

Name of Holder: _____

Signature: _____

Name of Signatory: _____
                            (if other than Holder)

Title: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY BY MAIL, HAND DELIVERY, OVERNIGHT DELIVERY, OR ELECTRONIC MAIL TO**

> Impac Ballot Processing Center
> c/o KCC dba Verita Global
> 222 N. Pacific Coast Highway,
> Suite 300
> El Segundo, CA 90245
>
> -Or-
>
> ImpacMortgageInfo@veritaglobal.com

**BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT DENTONS US LLP OR PACHULSKI STANG ZIEHL & JONES LLP AS SET FORTH ABOVE**

**VOTING INSTRUCTIONS FOR
CLASS 3 (SENIOR INDEBTEDNESS CLAIMS) CLAIM**

1. As described in the Disclosure Statement, the Debtors are soliciting the votes of the Holders of Class 3 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one impaired class that votes on the Plan, determined without including any acceptance of the Plan by any insider, and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 3 of the Ballot; and (c) sign and return the Ballot in accordance with the instructions on the Ballot by mail, hand delivery, overnight delivery, or email so that it is actually received by the Voting Deadline, to: ImpacMortgageInfo@veritaglobal.com or Impac Ballot Processing Center, c/o KCC dba Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 (the "Voting Agent").

4. The time by which a Ballot is actually received by the Voting Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. The Voting Deadline is April 24, 2026 at 5:00 p.m. (Prevailing Eastern Time).

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery.

6. If multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

7. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8. The Ballot does not constitute, and shall not be deemed to be: (a) a proof of claim or interest; or (b) an assertion or admission with respect to any claim or interest.

9. Please be sure to sign or electronically sign (DocuSign or similar) and date your Ballot. If you are completing the Ballot on behalf of an Entity, indicate your relationship with that

8

Entity and the capacity in which you are signing.

10. You must vote your entire Class 3 Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11. Any Ballot that is properly completed, executed, and timely returned to the Voting Agent that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12. Subject to the discretion of the Debtors or authority of the Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Equity Interest in a Class that is entitled to vote on the Plan, (c) any unsigned Ballot; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

**Exhibit 1B**

**Class 4 (Subordinated Notes Claims) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
| Debtors. | |

**CLASS 4 (SUBORDINATED NOTEHOLDER CLAIMS)
BALLOT TO ACCEPT OR REJECT THE
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

As you have been informed, on or before April 26, 2026, Impac Mortgage Holdings, Inc. ("Impac"), Impac Funding Corporation ("IFC"), Impac Mortgage Corp. ("IMC"), Copperfield Financial, LLC ("CFLLC"), IMH Assets Corp. ("IMHAC"), Integrated Real Estate Service Corp. ("IRES"), Integrated Warehouse Lending Group, Inc. ("IWLG"), Copperfield Capital Corporation ("CCC"), Impac Commercial Capital Corporation ("ICCC"), Impac Secured Assets Corp. ("ISAC"), Synergy Capital Mortgage Corp. ("Synergy") and Impac Warehouse Lending, Inc. ("Warehouse"), the debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), will file their petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Petitions"). Contemporaneously with the Petitions, the Debtors will file the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be subsequently amended, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc.* (the "Disclosure Statement"). You should have received a copy of the Plan and Disclosure Statement included in the packet you are receiving with this Ballot (collectively, the "Solicitation Package").

This ballot is being provided to you because records indicate that you are the Holder of a Class 4 Claim (Subordinated Noteholder Claims) as of April 22, 2026 (the "Pre-Petition Voting Record Date"), and, accordingly, you have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. You agree that your vote on the Plan before the filing of the Petition shall be deemed to be your vote on the Plan for purposes of subsection (c) of section 1126 of the Bankruptcy Code.

**Your rights are described in the Disclosure Statement and the Plan. Please read the Disclosure Statement and the Plan and follow the enclosed voting instructions carefully before completing this ballot.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Services Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

If you have any questions regarding this ballot (the "Ballot") or the voting procedures, please contact Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, California 90017-5704, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com), or Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com).

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026 (the "Voting Deadline").**

If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you have voted.

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the materials delivered with this ballot.

**Item 1. Amount of Class 4 (Subordinated Noteholder Claims) Claim.**

The undersigned hereby certifies that as of April 22, 2026, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Claim in the following principal amount (insert amount in box below).

| |
|---|
| Not less than $_____, consisting of principal in the aggregate amount of $_____, plus interest, fees, and costs. |

**Item 2. Vote of Class 4 Claim.**

The Holder of the Class 4 Claim set forth in Item 1 votes to (please check one):

| Accept the Plan | Reject the Plan |
|:---:|:---:|
| ☐ | ☐ |

**Subject to the limitations set forth herein, you have the right to opt-in to the Third-Party Release set forth in Section 10.5(b) of the Plan. You shall not be deemed to have consented to the Third-Party Release unless you check the box in Item 3 below.**

**Item 3. Release Opt-In Election.**

| | |
|---|---|
| ☐ | **The undersigned Claimant elects to grant (*i.e.*, OPTS IN to) the Third-Party Release provision set forth in Section 10.5(b) of the Plan.** |

**Item 4. Important Information Regarding Injunction, Release, and Exculpation Under the**

**Plan.**

Sections 10.4, 10.5, and 10.6 of the Plan provide as follows:

**Section 10.4**         *Injunction*.

**No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan.  Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "Enjoined Matters"): (a) asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly; (b) commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (c) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (d) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or (e) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.**

**Notwithstanding the foregoing, nothing in this Section 10.4 is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.**

**Section 10.5**         *Releases*.

*(a) Releases by the Debtors*. **As of the Effective Date, for good and valuable consideration, pursuant to the Plan and the Confirmation Order, the Debtor Released Parties are forever released the ("Debtor/Estate Release") by the Debtors and the Estates, and anyone claiming by or through the Debtors and the Estates, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including, without limitation, any and all Avoidance Actions), remedies and liabilities whatsoever, including, without limitation, any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in**

3

law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that a Holder of any Claim or Interest would have been legally entitled to assert derivatively on behalf of the Debtors or otherwise by or through the Debtors, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct.

(b) *Releases by Holders of Claims*. As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "Third Party Release") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.

(c) *Binding Nature of Opt-In Release; Waiver of Unknown Claims*. Each Person and Entity deemed to grant a release under this Section 10.5 shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.

(d) *Approval of Releases*. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Section 10.5, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for

4

hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

**Section 10.6**          *Exculpation and Limitation of Liability.*

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created, executed or contemplated in connection with the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement, related agreements, instruments or other documents in the Chapter 11 Cases, or the administration of the Plan or the Assets to be distributed under the Plan; provided, however, that the exculpation provisions of this Section 10.6 shall not apply to acts or omissions constituting actual fraud, willful misconduct or gross negligence by any Exculpated Party, as determined by a Final Order. The Confirmation Order and the Plan shall serve as a permanent injunction against any Person or Entity commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Exculpated Parties that has been exculpated pursuant to this Section 10.6 of the Plan.**

**Section 1.1**          *Definitions.*

"*Released Parties*" means, collectively, the Debtor Released Parties and the Third-Party Released Parties.

"*Debtor Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Debtor Released Party if it objects to the Plan's release provisions; provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the Debtors to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Debtors to whom they are related.

"*Third-Party Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Third-Party Released Party if it objects to the Plan's release provisions;

5

provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

"*Releasing Parties*" means, individually and collectively: (i) each party to the RSA; (ii) each Holder of a Claim or Interest that opts in to the Third Party Release; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons; provided that, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (iii), the subject release will apply only to claims and causes of action of such party that (a) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (b) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

**Item 5. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Pre-Petition Voting Record Date, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Class 4 Claim in the amount set forth in Item 1;

2. the Holder is eligible to be treated as the Holder of the Class 4 Claim set forth in Item 1 for the purposes of voting on the Plan;

3. the Holder has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

5. the Holder understands and acknowledges that only the latest-dated Ballot cast and actually received by the Pre-Petition Voting Deadline with respect to the Class 4 Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class 4 Claim set forth in Item 1, such other Ballot shall be deemed revoked;

6. the Holder understands and acknowledges that the Debtors shall verify the amount of the Class 4 Claim held by the Holder as of the Pre-Petition Voting Record Date set forth in Item 1; and

6

7. the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

**Item 6. Holder Information and Signature.**

Name of Holder: _____

Signature: _____

Name of Signatory: _____
(if other than Holder)

Title: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY BY MAIL, HAND DELIVERY, OVERNIGHT DELIVERY, OR ELECTRONIC MAIL TO**

> Impac Ballot Processing Center
> c/o KCC dba Verita Global
> 222 N. Pacific Coast Highway,
> Suite 300
> El Segundo, CA 90245
>
> -Or-
>
> ImpacMortgageInfo@veritaglobal.com

**BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT DENTONS US LLP OR PACHULSKI STANG ZIEHL & JONES LLP AS SET FORTH ABOVE**

7

**VOTING INSTRUCTIONS FOR
CLASS 4 (SUBORDINATED NOTEHOLDER CLAIMS) CLAIM**

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of the Holders of Class 4 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one impaired class that votes on the Plan, determined without including any acceptance of the Plan by any insider, and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.

3.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 3 of the Ballot; and (c) sign and return the Ballot in accordance with the instructions on the Ballot by mail, hand delivery, overnight delivery, or email so that it is actually received by the Voting Deadline, to: ImpacMortgageInfo@veritaglobal.com or Impac Ballot Processing Center, c/o KCC dba Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 (the "Voting Agent").

4.  The time by which a Ballot is actually received by the Voting Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. The Voting Deadline is April 24, 2026 at 5:00 p.m. (Prevailing Eastern Time).

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery.

6.  If multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

7.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8.  The Ballot does not constitute, and shall not be deemed to be: (a) a proof of claim or interest; or (b) an assertion or admission with respect to any claim or interest.

9.  Please be sure to sign or electronically sign (DocuSign or similar) and date your Ballot. If you are completing the Ballot on behalf of an Entity, indicate your relationship with that

8

Entity and the capacity in which you are signing.

10. You must vote your entire Class 4 Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11. Any Ballot that is properly completed, executed, and timely returned to the Voting Agent that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12. Subject to the discretion of the Debtors or authority of the Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Equity Interest in a Class that is entitled to vote on the Plan, (c) any unsigned Ballot; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

**Exhibit 2**

**Opt-In Release Form**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

## THIRD PARTY RELEASE OPT-IN FORM

**THE PLAN PROVIDES FOR THE RELEASE OF CERTAIN PARTIES INVOLVED IN THE CHAPTER 11 CASES. PARTIES SHOULD THEREFORE BE AWARE THAT IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OF THE PLAN OCCURS, CERTAIN PARTIES WILL RECEIVE THE BENEFITS OF THE RELEASE PROVISIONS AND CERTAIN PARTIES WILL BE BOUND BY THE RELEASE PROVISIONS AS SET FORTH IN SECTION 10.5(B) OF THE PLAN.**

You are **not** required to opt in to the Third-Party Release under the Plan. Your decision whether to opt in will not affect the allowance of your Claim or your right, if any, to receive distributions under the Plan. If you affirmatively elect to opt in, you will be deemed a "Releasing Party" under the Plan and, subject to the terms and conditions therein, will grant the Third-Party Release and, in turn, be deemed a "Released Party" under the Plan and receive the benefit of the mutual releases provided by the Debtors and the other Released Parties; *provided, however*, that such mutual releases shall apply only to the extent that you do not hold a Disputed Claim and do not object to the releases as set forth in the Plan.

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a) ***Defined Terms.*** As used in the Plan, capitalized terms have the meanings set forth below.

    (i) "*Released Parties*" means, collectively, the Debtor Released Parties and the Third-Party Released Parties.

    (ii) *"Releasing Parties*" means, individually and collectively: (i) each party to the RSA; (ii) each Holder of a Claim or Interest that opts in to the Third Party Release; and (iii) with respect to each of the foregoing Entities in

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action by, through, for, or because of such Entities or Persons.

(iii)    "*Third-Party Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the Plan Sponsor, (c) the Subordinated Noteholders, (d) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (e) Professionals and (f) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(e); provided, however, that in each case a person or entity shall not be a Third-Party Released Party if it objects to the Plan's release provisions.

**Note: This provision describes the releases that the Plan Proponents will seek under the Plan. This language has not been considered or approved by the Bankruptcy Court and remains subject to consideration at the Confirmation Hearing.**

**THIRD-PARTY RELEASES**

**Releases by Holders of Claims. As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "Third Party Release") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.**

**Each Person and Entity deemed to grant a release under Section 10.5(b) of the Plan shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law**

2

**principle, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Section 10.5(b) of the Plan, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

**Third Party Release Opt-In Election (<u>Optional</u>).**

PLEASE TAKE NOTICE THAT you may affirmatively opt-in to the Third Party Release provision contained in Section 10.5(b) of the Plan and set forth above. In so doing, you will also be deemed a "Released Party" to the extent that you do not hold a Disputed Claim.

**IF YOU OPT IN TO THE THIRD-PARTY RELEASE PROVISIONS IN SECTION 10.5(B) OF THE PLAN BY PROPERLY AND TIMELY SUBMITTING THIS OPT IN ELECTION, YOU WILL BE DEEMED, AS OF THE EFFECTIVE DATE OF THE PLAN, TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL CLAIMS AND ALL CAUSES OF ACTION (TO THE EXTENT AND AS SET FORTH IN THE PLAN AND AS PERMITTED BY APPLICABLE LAW) AGAINST THE RELEASED PARTIES (AS DEFINED IN THE PLAN).**

| | |
|---|---|
| ☐ | **OPT IN** to the Third Party Release set forth in Section 10.5(b) of the Plan |

<u>**Exhibit 3**</u>

**Notice of Commencement & Confirmation Hearing Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11 BANKRUPTCY CASE, (II) COMBINED HEARING ON THE DISCLOSURE STATEMENT, CONFIRMATION OF THE PREPACKAGED JOINT CHAPTER 11 PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINE**

**NOTICE IS HEREBY GIVEN AS FOLLOWS:**

1. On April 24, 2026, Impac Mortgage Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") commenced a solicitation of votes from Holders of Class 3 and Class 4 Claims pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Plan"),[2] in connection with the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement").

2. On April 26, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

3. On the Petition Date, the Debtors filed the Plan [Docket No. [•]] and the Disclosure Statement [Docket No. [•]]. Copies of the Plan and the Disclosure Statement may be obtained free of charge from the Debtors' Claims Agent by (a) visiting the Claims Agent's website at https://www.veritaglobal.net/ImpacMortgage, (b) calling 866-967-0676 (U.S. & Canada) or 310-751-2676 (International), or (c) sending an electronic message to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan. The summaries of the Plan and Disclosure Statement in this Notice are not precise or complete statements of all terms and provisions of the Plan or the documents referred to therein. If there is any discrepancy between this Notice and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

impacmortgageinfo@veritaglobal.com with "In re Impac Mortgage Holdings" in the subject line and requesting a copy be provided to you, or contacting the Debtors' proposed counsel, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com). You may also obtain these documents and any other pleadings filed in the Debtors' chapter 11 cases (for a fee) via PACER at http://www.deb.uscourts.gov.

## INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT

**Voting Record Date**. The voting record date was April 22, 2026, which was the date for determining which Holders of Claims in Class 3 and Class 4 were entitled to vote.

**Combined Hearing**. A combined hearing to consider the adequacy of the Disclosure Statement, confirmation of the Plan, any objections to any of the foregoing, and any other matter that may properly come before the Court, will be held before The Honorable [•], at the Court, 824 North Market Street, [•] Floor, Courtroom [•], Wilmington, Delaware 19801, on May [•], 2026 at [•] __.m. (*prevailing* Eastern Time) (the "Confirmation Hearing"). The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Confirmation Hearing and will be available on the electronic case filing docket and the Claims Agent's website at https://www.veritaglobal.net/ImpacMortgage.

**Objections to the Plan and Disclosure Statement**. Any responses or objections (each an "**Objection**") to the Disclosure Statement and/or Plan must be filed with the Court and served so as to be **actually received** no later than 4:00 p.m. (prevailing Eastern Time) on May [•], 2026, by the following parties: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) *proposed* counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Any such Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest held by such entity; (d) state with particularity the legal and factual basis for such objection, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (e) be filed with the Court with a proof of service and served upon the Notice Parties so as to be actually received by the Objection Deadline.

2

**UNLESS A RESPONSE OR OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### SUMMARY OF PLAN TREATMENT[3]

The table below provides a summary of the classification, description, treatment, and anticipated recovery of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see § 2 of the Disclosure Statement, entitled "Summary of Classification and Treatment of Claims and Interests Under Plan."

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Administrative Claims | Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Reorganized Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date; and (ii) the first Business Day after the date that is fifteen (15) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable. | Unclassified— not entitled to vote |
| Unclassified | DIP Claims | Proceeds of the Exit Loan Facility shall be used to refinance the DIP Claims on account of, in full and complete discharge of, and in exchange for, such DIP Claims. | Unclassified— not entitled to vote |

---

[3] The statements contained herein are summaries of the provisions in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all terms and provisions of the Plan or the documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

3

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, release and discharge of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim; or (b) such other treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code. | Unclassified—not entitled to vote |
| Unclassified | Professional Fee Claims | Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to the Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. | Unclassified—not entitled to vote |
| 1 | Priority Non-Tax Claims | The legal, equitable and contractual rights of the Holders of Allowed Class 1 Priority Non-Tax Claims are unaltered by the Plan. Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, release and discharge of and in exchange for such Allowed Priority Non-Tax Claim, the | Unimpaired—deemed to accept the Plan, not entitled to vote |

4

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| | | Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim. | |
| 2(a) | Enterprise Claims | The Enterprise Obligations will be Reinstated under the Plan, subject to a consensual five-year extension of the maturity date on the Enterprise Obligations. | Unimpaired— deemed to accept the Plan, not entitled to vote |
| 2(b) | Unimpaired Secured Claims | Each Holder of an Allowed Unimpaired Secured Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Unimpaired Secured Claims, at the option of the Reorganized Debtors: (i) payment in full in Cash; (ii) the collateral securing its Allowed Unimpaired Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Unimpaired Secured Claim; or (iv) such other treatment rendering such Allowed Unimpaired Secured Claim unimpaired. | Unimpaired— deemed to accept the Plan, not entitled to vote |
| 3 | Senior Indebtedness Claims | Each Holder of an Allowed Senior Indebtedness Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Senior Indebtedness Claim, its pro rata share of the Plan Sponsor Common Stock on the terms set forth in Section 5.2(b) of the Plan. | Impaired – entitled to vote |
| 4 | Subordinated Notes Claims | Each Holder of a Subordinated Notes Claim against the Debtors shall receive on or as soon as reasonably practicable after the | Impaired – entitled to vote |

5

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
|  |  | Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Subordinated Notes Claims, its pro rata share in the Contingent Payment Certificate. |  |
| 5 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive on account of, in full and complete satisfaction, release and discharge of, and in exchange for its Allowed General Unsecured Claim, a Pro Rata share of the GUC Consideration after payment in full of all GUC Expenses. | Impaired – deemed to reject |
| 6 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall, at the option of the applicable Debtor or Reorganized Debtor, be adjusted, Reinstated, or canceled and released without any distribution; except as necessary or appropriate for tax efficiency; provided, however, that no Distribution will be in Cash. | Impaired – deemed to reject |
| 7 | 510(b) Claims | 510(b) Claims are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. On the Effective Date, each 510(b) Claim shall be canceled, released and discharged and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) Claims. Accordingly, Holders of 510(b) Claims are not entitled to vote to accept or reject the Plan. | Impaired – deemed to reject |
| 8(a) | Interests in Impac | All Interests in Impac will be cancelled, released, and extinguished, and will be of no further force or effect, and the Holders of Interests in Impac will receive no distribution on account of such Interests. | Impaired – deemed to reject |
| 8(b) | Interests in Debtor Subsidiaries | On the Effective Date, Interests in the Debtor Subsidiaries shall be Reinstated without any distribution. | Unimpaired – deemed to accept |

## ENTITLEMENT TO VOTE ON THE PLAN

In accordance with the terms of the Plan, Holders of Claims or Interests in Classes 1, 2(a), 2(b), 5, 6, 7, 8(a), and 8(b) (collectively, the "Non-Voting Classes") are (i) conclusively deemed to have accepted or rejected the Plan, as applicable, and (ii) not entitled to vote to accept or reject the Plan, as further described below.

## EXCULPATION, INJUNCTION, AND RELEASE PROVISIONS IN PLAN

**PLEASE BE ADVISED THAT SECTION 10 OF THE PLAN CONTAINS CERTAIN EXCULPATION, INJUNCTION, AND RELEASE PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE 10 OF THE PLAN, AS YOUR RIGHTS MAY BE AFFECTED.**

**BINDING NATURE OF THE PLAN: IF CONFIRMED, ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (1) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN OR (2) VOTED TO ACCEPT OR REJECT THE PLAN.**

## EXCULPATION

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created, executed or contemplated in connection with the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement, related agreements, instruments or other documents in the Chapter 11 Cases, or the administration of the Plan or the Assets to be distributed under the Plan; provided, however, that the exculpation provisions of Section 10.6 of the Plan shall not apply to acts or omissions constituting actual fraud, willful misconduct or gross negligence by any Exculpated Party, as determined by a Final Order. The Confirmation Order and the Plan shall serve as a permanent injunction against any Person or Entity commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Exculpated Parties that has been exculpated pursuant to Section 10.6 of the Plan.**

**RELEASES**

**Releases by the Debtors.** As of the Effective Date, for good and valuable consideration, pursuant to the Plan and the Confirmation Order, the Debtor Released Parties are forever released the ("**Debtor/Estate Release**") by the Debtors and the Estates, and anyone claiming by or through the Debtors and the Estates, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including, without limitation, any and all Avoidance Actions), remedies and liabilities whatsoever, including, without limitation, any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that a Holder of any Claim or Interest would have been legally entitled to assert derivatively on behalf of the Debtors or otherwise by or through the Debtors, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct.

**Releases by Holders of Claims.** As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "**Third Party Release**") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.

Each Person and Entity deemed to grant a release under Section 10.5 of the Plan shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, to the extent such section is applicable, which would limit the effect of such releases

to those claims or causes of action actually known or suspected to exist at the time of Confirmation.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Section 10.5 of the Plan, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

### Discharge of Claims Against and Interests in the Debtors

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a Holder (as well as any trustees and agents acting on behalf of such Person) of a Claim or Interest shall be deemed to have forever discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims and Interests and related rights, and liabilities that arose prior to the Effective Date, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed or Disallowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such Holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claims and Interests and related rights and liabilities. Notwithstanding the foregoing, nothing in Section 10.3 of the Plan is intended or shall be deemed to (i) discharge the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) preclude and enjoin such Holders from enforcing such obligations.

### INJUNCTION

No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan. Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "Enjoined Matters"):

9

a.       asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly;

b.       commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

c.       enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

d.       creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or

e.       asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.

Notwithstanding the foregoing, nothing in Section 10.4 of the Plan is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.

Dated: April 26, 2026                          **PACHULSKI STANG ZIEHL & JONES LLP**

                                               */s/ Laura Davis Jones*

                                               Laura Davis Jones (DE Bar No. 2436)
                                               David M. Bertenthal (pro hac vice pending)
                                               Timothy Cairns (DE Bar No. 4228)
                                               919 North Market Street, 17th Floor
                                               Wilmington, DE 19899
                                               Telephone: (302) 652-4100
                                               Email: ljones@pszjlaw.com
                                                         debertenthal@pszjlaw.com
                                                         tcairns@pszjlaw.com

                                               -and-

10

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:    (213) 623-9300
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com


John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Tel:    (212) 768-6700
Email:  john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in
Possession*

11

<u>**Exhibit 4**</u>

**Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASE, (II) COMBINED HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE PREPACKAGED JOINT CHAPTER 11
PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINE**

**NOTICE IS HEREBY GIVEN AS FOLLOWS:**

1.      On April 24, 2026, Impac Mortgage Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") commenced a solicitation of votes from Holders of Class 3 and Class 4 Claims pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Plan"),[2] in connection with the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement").

2.      On April 26, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

3.      On the Petition Date, the Debtors filed the Plan [Docket No. [•]] and the Disclosure Statement [Docket No. [•]]. Copies of the Plan and the Disclosure Statement may be obtained free of charge from the Debtors' Claims Agent by (a) visiting the Claims Agent's website at https://www.veritaglobal.net/ImpacMortgage, (b) calling 866-967-0676 (U.S. & Canada) or 310-751-2676 (International), or (c) sending an electronic message to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan. The summaries of the Plan and Disclosure Statement in this Notice are not precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. If there is a discrepancy between this Notice and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

impacmortgageinfo@veritaglobal.com with "In re Impac Mortgage Holdings" in the subject line and requesting a copy be provided to you, or by contacting Debtors' proposed counsel, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com). You may also obtain these documents and any other pleadings filed in the Debtors' chapter 11 cases (for a fee) via PACER at http://www.deb.uscourts.gov.

**INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT**

**Voting Record Date**. The voting record date was April 22, 2026, which was the date for determining which Holders of Claims in Class 3 and Class 4 were entitled to vote.

**Combined Hearing**. A combined hearing to consider the adequacy of the Disclosure Statement, confirmation of the Plan, and any objections to any of the foregoing, and any other matter that may properly come before the Court, will be held before The Honorable [•], at the Court, 824 North Market Street, [•] Floor, Courtroom [•], Wilmington, Delaware 19801, on May [•], 2026 at [•] __.m. (*prevailing* Eastern Time) (the "Confirmation Hearing"). The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Confirmation Hearing, and will be available on the electronic case filing docket and the Claims Agent's website at https://www.veritaglobal.net/ImpacMortgage.

**Objections to the Plan and Disclosure Statement**. Any responses or objections (each an "**Objection**") to the Disclosure Statement and/or Plan must be filed with the Court and served so as to be **actually received** no later than 4:00 p.m. (*prevailing* Eastern Time) on May [•], 2026, by the following parties: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) *proposed* counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). Any such Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest held by such entity; (d) state with particularity the legal and factual basis for such objection, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (e) be filed with the Court with a proof of service and served upon the Notice Parties so as to be actually received by the Objection Deadline.

**UNLESS A RESPONSE OR OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## ENTITLEMENT TO VOTE ON THE PLAN

In accordance with the terms of the Plan, Holders of Claims or Interests in Classes 1, 2(a), 2(b), 5, 6, 7, 8(a), and 8(b) (collectively, the "Non-Voting Classes") are (i) conclusively deemed to have accepted or rejected the Plan, as applicable, and (ii) not entitled to vote to accept or reject the Plan, as further described below.

## EXCULPATION, INJUNCTION AND RELEASE PROVISIONS IN PLAN

**PLEASE BE ADVISED THAT SECTION 10 OF THE PLAN CONTAINS CERTAIN EXCULPATION, INJUNCTION AND RELEASE PROVISIONS. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE 10 OF THE PLAN, AS YOUR RIGHTS MAY BE AFFECTED.**

**BINDING NATURE OF THE PLAN: IF CONFIRMED, ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (1) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN OR (2) VOTED TO ACCEPT OR REJECT THE PLAN.**

**Exhibit 5**

**Assumption Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**NOTICE OF (I) POSSIBLE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES, (II) FIXING CURE AMOUNTS, AND (III) DEADLINE TO OBJECT THERETO**

**PLEASE TAKE NOTICE** that on April 26, 2026 (the "Petition Date"), Impac Mortgage Holdings, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors," or the "Company"), filed voluntary petitions for relief pursuant to the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Plan"),[2] in connection with the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing") will commence on May [•], 2026 at [•] (*prevailing* Eastern Time), before the Honorable [•], in the United States Bankruptcy Court for the District of Delaware. Additional information regarding the Confirmation Hearing is included in (i) the Notice of Commencement of Chapter 11 Cases, and (ii) the Notice of Confirmation Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, which was previously served on you.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan. The summaries of the Plan and Disclosure Statement in this Notice are not precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. If there is a discrepancy between this Notice and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because the Debtors' records reflect that you are a party to an Executory Contract or Unexpired Lease to be assumed or assumed and assigned by the Debtors under the Plan. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

**PLEASE TAKE FURTHER NOTICE** that receipt of this notice or the fact that an Executory Contract or Unexpired Lease is not included on the Rejection Schedule is not a guarantee that such Executory Contract or Unexpired Lease will ultimately be assumed or assumed and assigned. The Debtors have reserved the right to amend the Rejection Schedule following its filing as part of the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that § 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption (the "Cure Cost"). Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Exhibit A** (the "Proposed Cure Schedule"). Please note that if no amount (or zero) is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that no cure amount is outstanding for such contract or lease. The Proposed Cure Schedule is preliminary and subject to change until the date of confirmation of the Plan.

**PLEASE TAKE FURTHER NOTICE** that any objections by an Executory Contract or Unexpired Lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost, on any grounds, including those set forth in § 365, must:

(a)     Be in writing;

(b)     Set forth with specificity: (i) the basis for any objection to the Cure Cost listed by the Debtors, which objection must set forth the amount that the counterparty contends that the Debtors must pay to assume or assume and assign the Executory Contract or Unexpired Lease; (ii) the basis for any objection to the ability of the Debtors to assume or assume and assign the Executory Contract or Unexpired Lease and, including pursuant to § 365(c) of the Bankruptcy Code; (iii) the basis for any objection to the Debtors' ability to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease as required pursuant to § 365(b) of the Bankruptcy Code; (iv) any and all bases on which the objecting party asserts other or additional monetary amounts are required to be paid if the Executory Contract or Unexpired Lease is assumed or assumed and assigned pursuant to the Plan; and/or (v) the grounds for any other objection that may be raised under § 365 of the Bankruptcy Code or other applicable law to such assumption or assumption and assignment;

(c)     Comply with the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedures for the District of Delaware, and any other case management rules and orders of the Court; and

2

(d)      be served by personal service or by overnight delivery, so as to be **ACTUALLY RECEIVED no later than fourteen (14) days** after service of the Assumption Notice, by: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) *proposed* counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Debtors' proposed assumption, or assumption and assignment, of an Executory Contract or Unexpired Lease, or the related proposed Cure Cost, that remains unresolved as of the Confirmation Hearing shall be heard at the Confirmation Hearing (or at a later date as fixed by the Court), provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Debtors' chapter 11 cases and served on the affected counterparty.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Cost or (b) the potential assumption or assumption and assignment of any Executory Contract or Unexpired Lease is filed within fourteen (14) days after service of the Assumption Notice, then (i) you will be deemed to have stipulated that the Cure Cost as determined by the Debtors is correct and (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, or the proposed Cure Cost, will be deemed to have assented to such assumption or assumption and assignment, and the proposed Cure Cost.

**PLEASE TAKE FURTHER NOTICE** that assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.

3

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Kurtzman Carson Consultants LLC, dba Verita Global, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Claims Agent"), by: (a) calling the Claims Agent at 866-967-0676 (U.S. & Canada) or 310-751-2676 (International); (b) visiting the Debtors' restructuring website at: https://www.veritaglobal.net/ImpacMortgage; (c) sending an electronic message to impacmortgageinfo@veritaglobal.com with "In re Impac Mortgage Holdings" in the subject line and requesting a copy be provided to you; or (d) contacting Debtors' *proposed* counsel, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com). You may also obtain these documents and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) *via* PACER at http://www.deb.uscourts.gov.

Dated: April 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (pro hac vice pending)
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
      debertenthal@pszjlaw.com
      tcairns@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:   (213) 623-9300
Email: tania.moyron@dentons.com
      van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Tel:   (212) 768-6700

4

Email: john.beck@dentons.com
      geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*