# Exhibit 1

## Motion

4899-9896-1830.1 40173.00001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>IMPAC MORTGAGE HOLDINGS, INC.,<br>*et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**MOTION OF DEBTORS FOR APPROVAL TO (A) PAY EMPLOYEE OBLIGATIONS,
(B) CONTINUE EMPLOYEE BENEFIT PROGRAMS,
AND (C) RELATED RELIEF**

Impac Mortgage Holdings, Inc. ("Impac") and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"),[2] in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion") for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and a final order (substantially in the form attached hereto as **Exhibit B**, the "Final Order"): (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto (together, the "Employee Compensation & Benefits"); (ii) scheduling a final hearing (the "Final Hearing"); and (iii) granting related relief. In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code.

1

## I.     PRELIMINARY STATEMENT

1.     The relief sought in this Motion is critical for the Debtors to continue to operate their business and retain the morale and services of their employees (the "Employees"). In support of this Motion, the Debtors rely upon and refer this Court to the *First Day Declaration of George A. Mangiaracina* (the "First Day Declaration"). For these reasons, and as more fully explained below, the Debtors request that this Court grant the relief requested herein.

## II.     JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The predicates for the relief requested herein are: §§ 105, 362, 363, 503, 507, and 541, rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(m).

## III.     BACKGROUND

5.     On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue

operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

7.     Information regarding the Debtors, including their business and the events leading to the commencement of these Chapter 11 Cases, is set forth in the First Day Declaration filed concurrently herewith.

A.     The Debtors' Employees

8.     The Debtors' workforce has downsized in the years prior to the Petition Date.  As of the Petition Date, the Debtors have a total of eighteen (18) Employees.  Of this, ten (10) Employees are employed by Debtor Impac and eight (8) Employees are employed by Debtor Impac Mortgage Corp.

9.     The Debtors' Employees remain because they are skilled and are central to the Debtors' efforts to rapidly emerge from Chapter 11 in accordance with their proposed Plan and exit strategy.

10.    The Employees fill the following roles: corporate and administrative, accounting/finance, legal, information technology, loan processors and loan agents, and include upper-level management (comprised of two persons as described below).  The Debtors are not parties to any collective bargaining agreements.

B.     Obligations on Account of Employee Wages and Other Compensation, Business Expenses, Deductions and Payroll Taxes

**1.     Payroll Schedules**

11.    Traditionally, and with limited exception noted below, Employees receive wages and salaries, including base pay, and for certain employees, structured bonuses and commissions

(the "Wages") according to the following schedule: (i) Wages for work from the 1st day of each month through the 15th day of each month, including commissions on loans funded during this period, are paid on the 22nd day of each month (or, if the 22nd falls on a weekend, the preceding Friday) and (ii) Wages for work from the 16th day of each month through the end of each month, including commission on loans funded during this period, are paid on the 7th day of each subsequent month (or, if the 7th falls on a weekend, the preceding Friday).

12.     The Debtors fund their payroll approximately one to two days before the applicable payday.

13.     The Debtors' last payroll was April 22, 2026, and the Debtors fully paid amounts that were due and owing.  In addition, Debtors paid Wages (to the extent reasonably calculatable), through the April 22, 2026 as opposed to through April 15, 2026.  In the next regular payroll, employees will be paid from April 23, 2026 through April 30, 2026.  The primary reason for this special payroll was due to the change of Impac's primary bank following the April 22, 2026 payroll.

**2.     Outstanding Amounts to Employees and the Upcoming Payrolls**

14.     The Debtors estimate that they owe their Employees an aggregate of approximately $31,000 on account of accrued Wages, including unpaid wages, salaries, Commissions, paid leave, and other regular compensation earned before the Petition Date (collectively, the "Unpaid Employee Wages"), however, this amount may fluctuate depending on the contingencies of loan closings and submitted expenses.

15.     Post-petition, the Debtors estimate their average gross payroll for their Employees will be approximately $310,000 per month.

16. The next scheduled payrolls for the Debtors are May 7, 2026 and May 22, 2026, under which Employees may be owed both pre and post-petition Wages.

17. In these payrolls, Debtors would ordinarily pay Employees amounts that had been reconciled or adjusted as owed from any previous underpayment, including recently submitted expenses, uncalculated overtime, etc. (with these amounts as the "Adjustments" and which are included in the definition of Wages and Unpaid Employee Wages as applicable).

18. The Debtors, with the DIP Loans, have sufficient cash to pay Wages for these payrolls for Employees requested herein.

19. By this Motion, the Debtors seek authority, but not direction, (i) to pay the Unpaid Employee Wages (which arose pre-petition) in the ordinary course of business consistent with past practice, provided that no Employee shall be paid pre-petition Wages exceeding $17,150, absent specific order from this Court and (ii) to pay post-petition Wages in the ordinary course.

### 3. Payroll Costs

20. The Debtors subscribe to software from Paylocity ("Paylocity") to support payroll processing, payroll tax calculations and filings, and other payroll-related services (all such associated costs, collectively, the "Payroll Costs"). The Debtors pay Paylocity monthly a subscription fee of approximately $690, and the next payment will be due on or about May 20, 2026 for services to be provided in June 2026. The Debtors are current on payments to Paylocity. The Debtors seek authority to honor prepetition amounts of Payroll Costs, including amounts owed to Paylocity to ensure continued payroll services during the Chapter 11 Cases.

### 4. The Ordinary Course Payments

21. Historically, the Debtors have paid their non-insider Employees bonuses in the ordinary course of their business.

5

**5.    The Executive Agreements and Post-Effective Date Payments**

22.    In addition to rank-and-file employees, the Debtors employ two upper-level management employees, George A. Mangiaracina, the Debtors' Chief Executive Officer, and Joe Joffrion, the Debtors' Secretary and General Counsel (collectively, the "Executives," and each, an "Executive").  The Debtors employ the Executives under respective employment agreements, which were originally entered into on December 20, 2024 (and effective for the period of January 1, 2025 through December 31, 2026), and which were subsequently amended and restated on October 7, 2025, and further amended on April 21, 2026 (which amendment only becomes effective upon confirmation of the Plan) and still remain effective through September 30, 2026 with respect to Mr. Mangiaracina, and December 31, 2026 with respect to Mr. Joffrion (the "Executive Agreement(s)").  The Executives earn a salary and benefits under their Executive Agreement and are eligible for (i) a "Discretionary Annual Bonus" and (ii) a "Restructuring Success Bonus"; provided, however that the first amendment (once effective) eliminates any Discretionary Annual Bonus.

23.    The Executives were each eligible for a Discretionary Annual Bonus for 2025, payable in January 2026, with a target amount equal to 100% of their respective Base Salary; however, each Executive voluntarily waived their right to receive any such Discretionary Annual Bonus for 2025.

24.    The Executives each earn their Restructuring Success Bonus, equal to 100% of their respective base pay, if: (i) the Debtors implement a restructuring transaction in the Chapter 11 Cases while the Executive Agreement is effective, (ii) the Debtors confirm a bankruptcy plan (the "Plan") that becomes effective during the term of the Executive Agreement, and (iii) the Executive

6

remains actively employed by Debtors through the effective date of the Plan (the "Effective Date"). This amount will be paid on the first pay period following the Effective Date.

25.      The Debtors disclose this to be transparent concerning employee matters, and the Debtors do not currently seek to pay the Executives any retention or performance bonus during these Chapter 11 Cases.   However, as agreed with the Plan Sponsor and set forth in the Restructuring Support Agreement (as defined in the First Day Declaration), as part of the Plan the Debtors propose to assume the Executive Agreements, including bonus arrangements, to be paid after the Debtors' emergence from Chapter 11.  Such arrangement is sought to provide the parties with a universally beneficial outcome, without the expenditure of limited estate resources to obtain approval of a separate key employee incentive program or otherwise implicate § 503(c).  *See In re LATAM Airlines Group S.A.*, 2022 WL 2206829, at *43 (Bankr. S.D.N.Y. June 18, 2022) (subsequent history omitted) (following *In re Journal Register Co.*, 407 B.R. 520, 523 (Bankr. S.D.N.Y. 2009) (approving plan which included incentive plan agreed to in plan support agreement for post-effective date payments)).

### 6.      Supplemental Workforce

26.      The Debtors utilize independent contractors for services including information-technology. These independent contractors are paid by the Debtors as needed, and not based on any set payment schedule (these workers are the "Supplemental Workforce"). The Debtors estimate that they will pay the Supplemental Workforce approximately $15,000 per month post-petition. As of the Petition Date, the Debtors estimate that approximately $5,000 is owed to the Supplemental Workforce. If the Debtors do not pay these amounts, the Supplemental Workforce may stop working for the Debtors. Accordingly, the Debtors request authority to pay the remaining Supplemental Workforce, as part of their ordinary course of business, whether the amounts are for

services that arose pre or post-petition. The Debtors do not believe that any amounts to an individual member of their Supplemental Workforce exceeds the $17,150 priority cap under § 507(a)(4).

### 7. The Regal Contract

27. The Debtors are parties to a contract with Regal Resources, Inc. (respectively, "Regal" and the "Regal Contract"), whereby the Debtors are outsourcing certain payroll and human resources functions to Regal (separate from the software provided by Paylocity). The Debtors entered into the Regal Contract on November 13, 2023. The Debtors pay a flat fee of $6,500 (reduced to $5,500 effective May 1, 2026) on or about the first of every month for services to be incurred that month. The Debtors are current on payments to Regal. If the Debtors do not pay amounts going forward, then the Debtors' transition and business could be negatively impacted. Accordingly, the Debtors request authority to pay amounts connected to the Regal Contract, whether the amounts are for services that arose pre or post-petition.

### 8. Business Expense Reimbursements

28. The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtors. Such expenses typically include, but are not limited to, business-related travel expenses (including mileage), general corporate purchases, online payments and other items (the "Reimbursement Obligations"). Expense reports detailing the Reimbursement Obligations are submitted for reimbursement by the Employees and generally must be supported by copies of receipts. Expenses are reimbursed with payroll.

29. There is commonly delay between when an Employee incurs an expense and submits the corresponding expense report for processing. Therefore, it is difficult for the Debtors

to determine the exact amount of Reimbursement Obligations that are currently due and owing. However, with that caveat, the Debtors estimate that, as of the Petition Date, the Debtors owe at least $205 of Reimbursement Obligations, and also believe that few, if any, Employees may be owed expenses earned within 180 days of the Petition Date that would, with other amounts owed, require payment above the § 507(a)(4) cap. However, notwithstanding that caveat, the Debtors seek authority to pay Employees in the ordinary course all Reimbursement Obligations amounts, no matter when earned, and to continue to pay these amounts in the ordinary course of the Debtors' business.

### 9. Deductions and Withholding

30. Certain of these Employee Benefit Programs are funded by the Employees themselves through payroll deductions or a combination of payroll deductions and contributions from the Debtors (the "Deductions"). For instance, the Debtors are required by law to withhold from the Employees' wages amounts related to, among other things, national, regional, and local income tax (the "Employee Payroll Taxes") for remittance to the appropriate taxing authorities. The Employee Payroll Taxes are generally processed and forwarded to the appropriate federal, state, or local taxing authority when the Employees' payroll checks are disbursed.

31. The average amount of Deductions per pay period varies. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued, but unpaid, Deductions are approximately $30,000. The Debtors seek authority to continue deducting and remitting amounts to the appropriate third parties in a manner consistent with historical practice for any unpaid Deductions that relate to the period prior to the Petition Date and, post-petition, to continue the Deductions in the ordinary course of the Debtors' business.

9

C.    The Debtors' Employee Benefit Programs

32.    In addition to their wages and/or commissions, the Debtors' Employees also generally are entitled to receive other forms of compensation, including health benefits, paid time off, and reimbursement of certain business expenses (collectively, the "Employee Benefit Programs"). The Employee Benefit Programs include, but are not limited to: (i) paid time off; (ii) 401(k) retirement savings plan; (iii) a healthcare program, including dental and vision coverage; (iv) life and disability coverage; and (v) health savings accounts or flexible spending accounts.

**1.    PTO**

33.    The Debtors provide eligible Employees with paid time off ("PTO"). The ability to receive payments for unused PTO depends on whether the Employee is exempt or non-exempt. The Debtors cap PTO at 1.5 times the annual amount allotted, which is based upon years of service.

34.    As required by applicable law, non-exempt Employees accrue PTO each pay-cycle and are entitled to receive a payout of accrued, but unused, PTO for their final paycheck if they are terminated.   The Debtors cap PTO for non-exempt Employees as follows: (i) for one to four years of completed service, PTO is capped at 15 days; for five to nine years of completed service, PTO is capped at 22.5 days; and for ten or more years of completed service, PTO is capped at 30 days.

35.    Exempt Employees do not accrue PTO hours and therefore do not receive payment for unused PTO following a termination of their employment.  Exempt Employees have no set limit for using PTO, however taking PTO is subject to manager approval.

36.    As of the Petition Date, the Debtors have approximately $20,500 on their books as an accrued liability, for approximately 720 hours, for accrued PTO.

37.     The Debtors believe that the continuation of PTO policy in accordance with prior practice for their Employees is essential to maintaining Employee wellness and morale during the Chapter 11 Cases.  Further, the policies are broad-based programs upon which all Employees have come to depend, and the continuation of those programs will not create any material cash flow obligations beyond the Debtors' normal payroll obligations.  Moreover, disruptions or changes to these policies could have a direct impact on Employee commitment, morale, and retention, to the detriment of the Debtors.

38.     The Debtors therefore seek authority to honor their existing PTO policies to the extent it would permit continuing Employees to use their prepetition accrued leave in the ordinary course of business, and going forward.   Further, the Debtors are often required under applicable law to fully pay-out PTO upon termination of an Employee.  The Debtors seek authority to fully pay out PTO in these circumstances, regardless of whether the amount exceeds the statutory cap(s) of § 507(a).

**2.      Health Plans**

39.     The Debtors offer all Employees who are full-time and their eligible dependents (collectively, the "Dependents") the option of medical, dental and vision insurance.  For medical insurance, including prescription drug coverage, the Debtors offer coverage (the "Medical Plan") through Kaiser and Anthem (together, with VSP (defined below), the "Health Providers" and each a "Health Provider").  The Debtors bear 70% of the costs of the Medical Plan for eligible Employees, and the Employees bear the remainder of the costs, based on dependent elections.  If an Employee elects insurance coverage for dependents, the monthly cost for the premiums is deducted from payroll.

11

40. For dental insurance, the Debtors also offer coverage through the Health Provider of Anthem Blue Cross (the "Dental Plan"). The Debtors bear 70% of the costs of the Dental Plan for eligible Employees, and the Employees bear the remainder of the costs, based on dependent elections. If an Employee elects insurance coverage for dependents, the monthly cost for the premiums is deducted from payroll.

41. For vision insurance, Debtors offer coverage through VSP (the "Vision Plan," and, together with the Medical Plan and Dental Plan, and below-defined HSA & FSA Benefits, defined as the "Health Plans"). The Debtors bear 100% of the costs of the Vision Plan for eligible Employees if an Employee elects insurance coverage.

42. The Debtors' monthly cost for the premiums of the Health Plans is approximately $35,000 per month.

43. The Debtors also offer their Employees the benefit of maintaining a respective health-savings account through HSA Bank and a flexible savings account through WEX Health, Inc. (the "HSA & FSA Benefits").

44. As discussed above, the Debtors' Health Plans are fully insured, and there is no estate liability outside of payment of premiums.

45. In the ordinary course of their business, the Debtors pre-pay the Health Providers premiums for the following month, and, as of the Petition Date, the Debtors are current in payments to the Health Providers.

46. Therefore, as of the Petition Date, the Debtors believe they do not owe anything to the Health Providers on account of the portion of premiums that accrued and remain unpaid as of the Petition Date under the Health Plans. However, to the extent any amount is identified as payable, the Debtors seek authority to pay these amount(s). The Debtors also seek authority to

12

continue to pay, in their discretion and in the ordinary course of their business, the premiums for the Health Plans incurred postpetition and to maintain their Health Plans (including the HSA & FSA Benefits). The Debtors further seek authority to make payments due or that will be due to Alliant relating to the Health Plans.

47. Furthermore, and for similar reasons, the Debtors seek to continue to perform any obligations under § 4980B of the Internal Revenue Code to administer Continuation Health Coverage ("COBRA") (*see* 26 U.S.C. § 4980B) in respect to eligible former Employees. The Debtors believe that any prepetition costs related to COBRA coverage benefits are *de minimis*. The Debtors also employ Regal to assist with Family and Medical Leave and ADA administration and expenses are included within the Regal Contract fee. In order to maintain employee morale and ensure the orderly administration of the estate, the Debtors requests authority to pay in their discretion such prepetition costs and amounts discussed in this section and continue to pay post-petition in the ordinary course.

### 3. Employee Life and AD&D Insurance

48. The Debtors offer eligible Employees premium based group life insurance ("Life Insurance"), accidental death and dismemberment insurance, disability and other similar insurance ("AD&D Insurance") through New York Life Group. The amount of monthly premiums for Life Insurance and AD&D Insurance total approximately $3,600 per month, less voluntary employee deductions.

49. The Debtors' Employees and their families depend on insurance provided by the Debtors as a fundamental aspect of compensation. Any disruption or perceived disruption regarding insurance benefits or coverage would damage morale and may cause Employees to seek employment elsewhere. The Debtors believe that they are current on all the above-described

13

insurance policies and claims obligations.  To the extent they are not, however, the Debtors seek authority, in their discretion, to pay any accrued and unpaid prepetition premiums and related charges and to continue the above benefits post-petition and to deliver the Employees' portion of any accrued and unpaid prepetition premiums for the AD&D Insurance and Life Insurance to the corresponding administrators in connection with the payment of the Wages and withholding obligations.

### 4.    Retirement Plan

50.    The Debtors offer eligible Employees the opportunity to participate in a defined 401(k) contribution plan through Voya, which allows for voluntary employee pre-tax or post-tax deferrals (the "Retirement Plan").  Employees participating in this program may contribute up to the federal statutory caps per year, and the Debtors deduct the employee deferrals from Employee paychecks for each pay-cycle.  The Debtors' Retirement Plan includes a match by the Debtors of up to 100% of 1% of the Employees' salary and 50% of the next 5% contributed by the Employee, for a total match of up to 3.5% of salary.  Failure to timely forward the Employees' Retirement Plan deductions may be a violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), resulting in potential liabilities for the Debtors and personal liability for the Debtors' officers for such deducted amounts.  Maintaining the Retirement Plan as a part of the Employee Benefit Programs is critical to maintaining employee morale.

51.    The Debtors seek authority to deliver the Employee contributions in connection with the payment of Wages and withholding obligations described above.  Administration fees for the Retirement Plan are paid by the Employee participants.  The Debtors do not believe these additional payments will cause the total payments made for prepetition Employee obligations to exceed the statutory limit for priority claims of $17,150; however, if that is not the case, the

14

Debtors believe that any prepetition costs related to these retirement benefits are *de minimis*, and the Debtors request authority to pay in their discretion any such prepetition costs to maintain employee morale and ensure the orderly administration of the estates.

## IV. RELIEF REQUESTED

52.     By this Motion, the Debtors request the Court to enter the Interim Order and authorize, but not direct them, to pay the Employee Wages and Benefits on an interim basis, to schedule the Final Hearing and to enter the Final Order to authorize, but not direct the Debtors, to pay the Employee Wages and Benefits on a final basis.

53.     The relief sought in this Motion is critical for the Debtors' successful and rapid emergence from Chapter 11 by assuring the retention of services and morale of the Debtors' Employees. Moreover, the requested relief is warranted whether amounts are prepetition or postpetition.  All prepetition amounts fall within the requirements of Bankruptcy Code § 507(a)(4) and (5), or are otherwise necessitated by the facts of the case; all postpetition amounts are allowable administrative expenses payable under Bankruptcy Code §§ 503(b)(1) or 503(c) and 507(a)(2).  Moreover, none of the requested payments implicate a prohibition under § 503(c), because the payments are made in the ordinary course of business and the intended beneficiaries are either rank and file Employees, or, with respect to bonuses for the company's remaining insiders, are only payable post plan effective date.   Pursuant to Local Rule 9013-1(m)(ii), the Debtors seek authority to pay pre-petition amounts in the maximum aggregate amount of $100,000, unless otherwise required by applicable law, including without limitation, any PTO amounts due to an Employee upon termination of that Employee or ordered by this Court.

## V.  BASIS FOR RELIEF

54.     The relief requested is permitted under §§ 105, 363, 507(a)(4) to the extent such payments are prepetition in nature, and allowable administrative expenses under §§ 105 and 503

to the extent they are postpetition.[3] Sections 105(a) and 363(b)(1) and (c)(1) and the "necessity of payment" doctrine provide statutory support for the requested relief. Further, payments of the majority of the amounts of Employee Compensation & Benefits will be required either (i) to confirm a plan (requiring payment of all administrative expenses) and (ii) to comply with applicable, non-bankruptcy law in the operation of the Debtors' business.

A. Unpaid Prepetition Employee Compensation & Benefits are Entitled to Priority Treatment

55. As to qualifying pre-petition amounts, sections 507(a)(4) and 507(a)(5), and as to qualifying post-petition amounts, sections 507(a)(2) and 503(b)(1)(A)(i), entitle Employees' claims to priority treatment. The Debtors are required to pay these priority claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual, and (b) contributions to an employee benefit plan); 11 U.S.C. § 1129(a)(9)(A). Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees, and should not materially affect recoveries for general unsecured creditors. Indeed, payment of the Employee Compensation & Benefits at this time enhances value for the benefit of all interested parties.

56. The majority of Employee Compensation & Benefits and related taxes that the Debtors request authority to pay and/or honor are amounts entitled to priority in payment under §§ 507(a)(4), (5) and (8)(D). If the aggregate prepetition Wages, Employee Benefits and PTO that accrued within the 180 days prior to the Petition Date exceed the sum of $17,150 allowable as a priority claim under §§ 507(a)(4) and (5) for any individual Employee or member of the

16

Supplemental Workforce, the Debtors are not requesting authority by this Motion, on an interim basis, to pay any such excess amounts, unless required to do so by other, applicable law (PTO upon termination).

B.    Payment of Certain Employee Compensation & Benefits Is Required by Law

57.    The Debtors seek authority to pay the applicable Deductions to the appropriate third parties. These amounts principally represent wages that governments, Employees, or judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Deductions are not property of the Debtors' estates, because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541(b)(1), (d); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Deductions may not be property of the Debtors' estates, the Debtors request authorization to transmit the full amount of the Deductions on account of the Employees to the proper parties in the ordinary course of business. Failure to remit such Deductions could subject the Debtors to disputes or collection efforts from governmental authorities or third parties that may not respect the automatic stay.

C.    Payment of the Employee Compensation & Benefits is Proper Pursuant to Section 363(b) and the "Doctrine of Necessity"

1.    Section 363 and the Debtors' Ordinary Course of Business

58.    Section 363(c)(1) expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estates in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Therefore, the Debtors

17

believe they are permitted to pay all postpetition amounts due pursuant to the Employee Compensation & Benefits, as such actions are in the ordinary course of the Debtors' business. *See*, *e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787 (Bankr. D. Del. 2007) (concluding the ordinary course employee bonus compensation program is in the ordinary course of the debtors' business). For the avoidance of doubt, the Debtors do not require Court approval to pay any payroll accruals following the Petition Date.

59.    In addition, the Court may grant authority to pay amounts arising prepetition pursuant to §§ 363(b) and 105(a). Section 363 provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under § 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that the debtor show a "sound business purpose" to justify its actions under § 363) (internal citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

60.    Notably, the reasonable use of incentives and bonuses are considered the proper exercise of a debtor's business judgment. *See In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citing *In re U.S. Airways, Inc.*, 329 B.R. 793, 795 (Bankr. E.D. Va. 2005)). Here, the Debtors have determined in their business judgment, that they must pay and incentivize

18

their Employees to perform and remain through the Employee Compensation & Benefits. Therefore, the Court may approve such payments under § 363.

### 2. Section 105(a) and the Necessity of Payment Doctrine

61. The Court may also authorize payment of prepetition claims in appropriate circumstances under § 105(a), which codifies the inherent equitable powers of a bankruptcy court and empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Specifically, the Court may use its power under § 105(a) to authorize the payment and continuation of the Employee Compensation & Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

62. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* at 581 (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). Moreover, in 2017, the U.S. Supreme Court, in *Czyzewski v. Jevic Holding Corp.*, recognized that courts "approve[] interim distributions that violate ordinary priority rules," generally when there are "significant Code-related objectives that the priority-violating distributions serve," including "***payment of employees' prepetition wages***." 137 S. Ct. 973, 985 (2017) (emphasis added).

63. This is because the necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet,*

*Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process").

### 3. The Need for Approval of Payment of the Employee Compensation & Benefits

64. The majority of the Employees rely exclusively on the Employee Compensation & Benefits to satisfy their daily living expenses and to provide security and assurance for themselves and their families regarding reacting to and planning for major life-events. Consequently, the Employees will be exposed to financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation & Benefits. Additionally, continuing ordinary course compensation and benefits will help maintain Employee morale, avoid Employee flight that could cripple the Debtors' bankruptcy efforts and endanger creditor recoveries.

65. Moreover, the Employees provide the Debtors with services necessary to conduct the Debtors' remaining business and winddown, and the Debtors believe that absent the payment of the Employee Compensation & Benefits, the Debtors may experience turnover and instability at this critical time in their efforts to exit Chapter 11. Given the pre-petition reductions, the Employees remain employed with the Debtors because they are vital, and the Debtors will face extreme difficulty in replacing them, let alone timely replacing them.

66.     Enterprise/going-concern value may be materially impaired to the detriment of all stakeholders in such a scenario.  The Debtors therefore believe that payment and honoring of their Employee Compensation & Benefits is a necessary and critical element of the Debtors' efforts to preserve value during the operation of their business during this case.  Retention and motivation of the Employees is essential for Debtors to preserve value of their assets and keep the company stable during these cases.

67.     This Court has previously approved payment to employees under comparable circumstances.  *See In re Lucira Health, Inc.*, Case No. 23-10242-MFW, Docket No. 139 (Bankr. D. Del. Mar. 21, 2023); *In re FTX Trading Ltd.*, Case No. 22-11068-JTD, Docket No. 426 (Bankr. D. Del. Jan. 1, 2023); *In re First Guaranty Mortgage Corporation*, Case No. 22-10584-CTG, Docket No. 64 (Bankr. D. Del. Jul. 1, 2022).

## VI.     COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

68.     The Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and (h) is appropriate.  Bankruptcy Rule 6003 provides, in relevant part:

> Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to:. . . (2) use, sell, or lease, property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed; [or] (3) incur any other obligation regarding the property of the estate.

Fed. R. Bankr. P. 6003(a)(2), (a)(3).

69.     The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.,*

*Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See*, *e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

70. As described in the Motion and supported by the First Day Declaration, the Debtors need to retain and incentivize their Employees, and immediately paying these Employees their compensation and benefits in the ordinary course is essential to accomplish this goal. As a result, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

71. The Debtors further seek a waiver of any stay of the effectiveness of the Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors submit that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtors and their estates.

72. Accordingly, the Debtors respectfully submit that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

73. Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VII. NOTICE

74. Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtors' prepetition and postpetition lenders; and (c) the Debtors' thirty largest unsecured creditors on a consolidated basis, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief,

22

within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.   CONCLUSION

75.   WHEREFORE, the Debtors respectfully request entry of an order: (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: April 26, 2026
        Wilmington, DE

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/      *Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:    (302) 652-4100
Email: ljones@pszjlaw.com
        debertenthal@pszjlaw.com
        tcairns@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:    (213) 623-9300
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Tel:    (212) 768-6700
Email: john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

24

**EXHIBIT A**
(Proposed Interim Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>             Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Jointly Administered) |

**INTERIM ORDER GRANTING MOTION OF THE DEBTORS FOR APPROVAL TO (A) PAY EMPLOYEE OBLIGATIONS, (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS, AND (C) RELATED RELIEF**

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (the "Interim Order"): (i) authorizing, but not directing, the Debtors, on an interim basis, to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

2

and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2026, at __:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2026, and shall be served on, no later than seven (7) days prior to the commencement of the Final Hearing: (a) the Debtors; (b) proposed counsel to the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, #2500, Los Angeles, CA 90017, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com), Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Geoffrey Miller (geoffrey.miller@dentons.com), and (ii) proposed local counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com) and Timothy Cairns (tcairns@pszjlaw.com); (c) counsel to the official committee of unsecured creditors, if one is appointed; and (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE

3

19801. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.  The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation & Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law.

4.  The Debtors are authorized, but not directed, to pay amounts related to the Employee Compensation & Benefits programs and related incidental costs absent further order of this Court; *provided, however*, that, unless otherwise required by applicable law, including without limitation, any PTO amounts due to an Employee upon termination of that Employee or ordered by this Court, including, without limitation, in the Final Order, (i) no payment to any individual Employee or member of the Supplemental Workforce of prepetition Employee Compensation & Benefits shall exceed, in the aggregate for that individual Employee, the US$17,150 statutory cap provided for under § 507(a)(4) of the Bankruptcy Code, and (ii) the maximum aggregate amount of all payments of pre-petition amounts shall be $100,000.

5.  Nothing herein shall be deemed to authorize the payment of any amounts to insiders that are subject to § 503(c) of the Bankruptcy Code. The Debtors will seek approval of any insider bonus or incentive programs, if any, under separate motion under § 503(c) and nothing herein shall prejudice the Debtors' ability to seek such relief pursuant to § 503(c) at a later time.

6.  Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim

4

is of a type specified or defined in this Order, or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

7. The Debtors' banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

8. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

9. Nothing in this Order shall be construed to authorize any payment not provided for in any budget approved pursuant to any interim or final order authorizing the use of cash collateral and/or debtor-in-possession financing.

10. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

5

11.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity, or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

13.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**EXHIBIT B**
(Proposed Final Order)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[3]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Jointly Administered) |

**FINAL ORDER GRANTING MOTION OF THE DEBTORS FOR APPROVAL TO (A)
PAY EMPLOYEE OBLIGATIONS, (B) CONTINUE EMPLOYEE BENEFIT
PROGRAMS, AND (C) RELATED RELIEF**

Upon consideration of the Motion[4] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (the "Order"): (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and that this Court may enter a final order consistent with

---

[3] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation & Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law.

3.      The Debtors are authorized, but not directed, to pay or honor amounts related to the Employee Compensation & Benefits programs and related incidental costs, *provided that* the maximum aggregate amount of all payments of prepetition amounts shall be $100,000, unless otherwise required by applicable law, including without limitation, any PTO amounts due to an Employee upon termination of that Employee or ordered by this Court.

4.      Nothing herein shall be deemed to authorize the payment of any amounts to insiders which are subject to § 503(c) of the Bankruptcy Code. The Debtors will seek approval of any insider bonus or incentive programs, if any, under separate motion under § 503(c) and nothing herein shall prejudice the Debtors' ability to seek such relief pursuant to § 503(c) at a later time.

9

5.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order, or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

6.      The Debtors' banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.      Nothing in this Order shall be construed to authorize any payment not provided for in any budget approved pursuant to any interim or final order authorizing the use of cash collateral and/or debtor-in-possession financing.

9.      Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

10.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity, or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

12.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.